PHILIP R. SELLINGER
United States Attorney
JOHN F. BASIAK JR.
ANGELA E. JUNEAU
SAMANTHA R. D'AVERSA
Assistant United States Attorneys
402 East State Street, Room 430
Trenton, NJ 08608
John.basiak@usdoj.gov
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| B.Y.C.C. on behalf of herself and on behalf of her minor child, M.S.C.C., | Hon. Michael A. Shipp, U.S.D.J. |
| *Plaintiffs,* | Civil Action No. 22-06586 (MAS) (DEA) |
| v. | |
| UNITED STATES OF AMERICA, | **Return Date: April 3, 2023** |
| *Defendant.* | |

## UNITED STATES' BRIEF IN SUPPORT OF
## A MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)
## OF THE FEDERAL RULES OF CIVIL PROCEDURE

On the Brief:

JOHN F. BASIAK JR.
ANGELA E. JUNEAU
SAMANTHA R. D'AVERSA
Assistant United States Attorneys

# **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ........................................................................ 1

II. STATEMENT OF FACTS............................................................................... 2

   A.  Statutory Framework of Noncitizens Entering the United States ................... 2

   B.  Statutory Framework for Immigration Custody Relating to Noncitizen
      Minors.......................................................................................................... 3

   C.  *Flores* Agreement Requirements.................................................................. 4

   D.  Executive Branch Directives Regarding Immigration Enforcement ............... 5

   E.  Allegations in Plaintiffs' Complaint ............................................................. 6

III. STANDARD OF REVIEW ............................................................................. 9

   A.  Rule 12(b)(1) .............................................................................................. 9

   B.  Rule 12(b)(6) ............................................................................................ 10

IV. LEGAL ARGUMENT.................................................................................... 11

   A.  Plaintiffs' Claims Are Barred by the Discretionary Function Exception. ...... 11

      1.  The Decision to Detain B.Y.C.C. Involved an Element of Judgment or
          Choice Susceptible to Policy Analysis............................................... 14

      2.  The Decision to Transfer M.S.C.C. Involved an Element of Judgment or
          Choice Susceptible to Policy Analysis............................................... 18

      3.  Decisions Relating to the Conditions of B.Y.C.C.'s Confinement Involved
          an Element of Judgment or Choice Susceptible to Policy Analysis........... 20

      4.  Plaintiffs' Allegations of Unconstitutional Treatment Do Not Defeat the
          Discretionary Function Exception ..................................................... 21

      5.  The TVPRA, *Flores* Agreement, and Safety-Related Policies Do Not Defeat
          the Discretionary Function Exception ................................................ 23

   B.  Plaintiffs' Claims Are Barred by the FTCA's "Due Care" Exception.............. 26

   C.  Plaintiffs' Claims Are Not Actionable Under the FTCA Because There Is No
      Private Person Analog. ................................................................................ 28

   D.  Plaintiffs' Claims Are Barred Because the FTCA Does Not Authorize
      Recovery for Constitutional Torts. .............................................................. 32

   E.  Plaintiffs' Claims Are Barred Because the FTCA Does Not Authorize
      Systemic Tort Claims Against the Government. ........................................... 34

   F.  All FTCA Claims Relating to M.S.C.C.'s Placement at Abbott House are
      Barred by the Independent Contractor Exception. ....................................... 36

G.  Plaintiffs Fail to State a Claim Upon Which Relief Can be Granted Under Applicable State Law. .................................................................... 37

   1.  All of Plaintiffs' FTCA Claims Fail Under Texas Law Because They Challenge Privileged Conduct ....................................................... 38

   2.  Plaintiffs Fail to State a Claim Under Applicable State Law. .................. 40

     i.  Intentional Infliction of Emotional Distress ............................................. 40

     ii.  Negligence and Negligent Undertaking .................................................... 41

     iii.  Negligent Supervision ............................................................................... 43

     iv.  Tortious Interference with the Parent-Child Relationship ...................... 48

     v.  Abuse of Process ........................................................................................ 49

     vi.  Assault and Battery .................................................................................... 53

     vii.  Breach of Fiduciary Duty .......................................................................... 55

V.  CONCLUSION ................................................................................................ 57

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*A.E.S.E. v. United States,*
No. 21-569, 2022 WL 4289930 (D.N.M. Sept. 16, 2022) ...................... 26, 28, 32, 34

*A.P.F. v. United States,*
492 F. Supp. 3d 989 (D. Ariz. 2020)..................................................... 26, 28, 32, 37

*Accardi v. United States,*
435 F.2d 1239 (3d Cir. 1970)............................................................................ 26

*Adam v. Marcos,*
620 S.W.3d 488 (Tex. App. 2021)..................................................................... 55

*Adams v. United States,*
420 F.3d 1049 (9th Cir. 2005) .......................................................................... 34

*Air Shuttle Corp. v. United States,*
112 F.3d 532 (1st Cir. 1997).............................................................................. 29

*Akutowicz v. United States,*
859 F.2d 1122 (2d Cir. 1988)...................................................................... 30, 31

*Alinsky v. United States,*
415 F.3d 639 (7th Cir. 2005) ............................................................................ 45

*Almanzar v. Eaglestar,*
No. 20-117, 2021 WL 7184209 (W.D. Tex. Dec. 21, 2021) .............................. 43, 46

*Antonelli v. Crow,*
No. 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012) ...................................... 20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................... 10, 11

*B.A.D.J. v. United States,*
No. 21-215, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022)............................. passim

*Baer v. United States,*
722 F.3d 168 (3d Cir. 2013)............................................................................. 12

*Bailor v. Salvation Army,*
51 F.3d 678 (7th Cir. 1995) .......................................................................... 16, 18

*Baires v. United States,*
   Civil Action No. C 09-05171, 2011 WL 1743224 (N.D. Cal. May 6, 2011) ............ 16

*Barnett v. United States,*
   640 F. App'x 201 (3d Cir. 2016) ................................................................... 29

*Barton v. Barr,*
   140 S. Ct. 1442 (2020) ................................................................................ 1

*Baubles & Beads v. Louis Vuitton, S.A.,*
   766 S.W. 2d 377 (Tex. App. 1989) .............................................................. 52

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................. 10

*Berardi v. Swanson Mem'l Lodge No. 48,*
   920 F.2d 198 (3d Cir. 1990)......................................................................... 9

*Berkovitz v. United States,*
   486 U.S. 531 (1988) ............................................................................ 16, 22

*Bernitsky v. United States,*
   620 F.2d 948 (3d Cir. 1980)....................................................................... 16

*Bhuiyan v. United States,*
   772 F. App'x 564 (9th Cir. 2019).................................................................. 30

*Bivens v. Six Unknown Fed. Narcotics Agents,*
   403 U.S. 388 (1971) .................................................................................. 33

*Blackstock v. Tatum,*
   396 S.W.2d 463 (Tex. App. 1965)................................................................ 52

*Blanco Ayala v. United States,*
   982 F.3d 209 (4th Cir. 2020) ...................................................................... 14

*Borquez v. United States,*
   773 F.2d 1050 (9th Cir. 1985) .................................................................... 27

*Bossin v. Towber,*
   894 S.W.2d 25 (Tex. App. 1994)............................................................ 49, 51

*Brackin v. United States,*
   913 F.2d 858 (11th Cir. 1990) .................................................................... 25

*Brown v. United States,*
   No. 17-1551, 2018 WL 741731 (E.D. Pa. Feb. 7, 2018).......................................... 45

*Bryan v. United States,*
    913 F.3d 356 (3d Cir. 2019) ................................................................... 22

*Bultema v. United States,*
    359 F.3d 379 (6th Cir. 2004) ................................................................. 20

*Bunikyte v. Chertoff,*
    Nos. 07-164, 07-165, 07-166, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) .. 5, 19, 24

*Butz v. Economou,*
    438 U.S. 478 (1978) ............................................................................... 22

*Buzzanca v. D.C.,*
    Civil Action No. 18-2893, 2021 WL 796275 (D.D.C. Mar. 2, 2021) ...................... 31

*C.M. v. United States,*
    19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ............. 26, 28, 32

*Caban v. United States,*
    728 F.2d 68 (2d Cir. 1984) ...................................................................... 39

*Campos v. United States,*
    888 F.3d 724 (5th Cir. 2018) .................................................................. 20

*Carter v. Diamond URS Huntsville, LLC,*
    175 F.Supp.3d 711 (S.D. Tex. 2016) ................................................ 53, 54

*Castillo v. Gared, Inc.,*
    1 S.W.3d 781 (Tex. App. 1999) ............................................................... 45

*Chapa v. Traciers & Assocs.,*
    267 S.W.3d 386 (Tex. App. 2008) .......................................................... 43

*Chapman v. United States,*
    480 F. Supp.3d 601 (M.D. Pa. 2020) ...................................................... 45

*City of Watauga v. Gordon,*
    434 S.W.3d 586 (Tex. 2014) ............................................................ 53, 54

*CNA v. United States,*
    535 F.3d 132 (3d Cir. 2008) ................................................................ 9, 29

*Cohen v. Kurtzman,*
    45 F. Supp. 2d 423 (D.N.J. 1999) ............................................................. 9

*Cohen v. United States,*
    151 F.3d 1338 (11th Cir. 1998) ........................................................ 16, 17

*Comm. Of Cent. Am. Refugees v. I.N.S.,*
   795 F.2d 1434 (9th Cir. 1986) ........................................................................ 15

*Common Cause of Pa. v. Pennsylvania,*
   558 F.3d 249 (3d Cir. 2009) ............................................................................. 9

*Cosby v. Marshals Service,*
   520 F. App'x 819 (11th Cir. 2013) ................................................................. 20

*Courts v. United States,*
   No. 15-7303-MLC, 2016 WL 4521687  (D.N.J. Aug. 29, 2016) ........................ 37

*Cudjoe v. Dep't of Veterans' Affairs,*
   426 F.3d 241 (3d Cir. 2005) ............................................................................. 6

*Culver v. Culver,*
   360 S.W.3d 526 (Tex. App. 2011) ................................................................... 53

*D. Houston, Inc. v. Love,*
   92 S.W.3d 450 (Tex. 2002) ............................................................................. 41

*D.B. v. Poston,*
   119 F. Supp. 3d 472 (E.D. Va. 2015) ............................................................. 19

*D.J.C.V. v. United States,*
   605 F.Supp.3d 571 (S.D.N.Y. 2022) ................................................... 26, 28, 32

*Dalehite v. United States,*
   346 U.S. 15 (1953) ......................................................................................... 27

*Daniels v. United States,*
   No. 20-3893, 2021 U.S. Dist. LEXIS 108492 (E.D. Pa. June 1, 2021) .................. 34

*Davila v. United States,*
   713 F.3d 248 (5th Cir. 2013) .......................................................................... 54

*Davis v. Carlson,*
   837 F.2d 1318 (5th Cir. 1988) ........................................................................ 42

*Doe v. Holy See,*
   557 F.3d 1066 (9th Cir. 2009) ........................................................................ 12

*Doe v. YUM! Brands, Inc.,*
   639 S.W.3d 214, 225 (Tex. App. 2021) ........................................................... 44

*Doughty v. United States Postal Serv.,*
   359 F. Supp. 2d 361 (D.N.J. 2005) ................................................................... 9

*Douglas v. United States,*
    796 F. Supp. 2d 1354 (M.D. Fla. 2011) ................................................................ 16

*Dupree v. United States,*
    247 F.2d 819 (3d Cir. 1957)................................................................................... 26

*E.L.A. v. United States,*
    Civil Action No. 20-1524, 2022 WL 2046135 (W.D. Wash. June 3, 2022).............. 51

*E.S.M. v. United States,*
    No. 21-29, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022) ........................ 26, 28, 32, 36

*Egbert v. Boule,*
    142 S. Ct. 1793 (2022) ........................................................................................... 33

*Elgamal v. Bernacke,*
    714 F. App'x 741 (9th Cir. 2018)............................................................................ 30

*Elgamal v. United States,*
    Civil Action No. 13-0867, 2015 WL 13648070 (D. Ariz. July 8, 2015) ................... 30

*Estate v. Grogan,*
    595 S.W.3d 807 (Tex. App. 2020).......................................................................... 56

*F.R. v. United States,*
    No. 21-00339, 2022 WL 2905040 (D. Ariz. July 22, 2022).................... 26, 28, 32, 36

*FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.,*
    592 F.2d 364 (7th Cir. 1979) ................................................................................. 27

*FDIC v. Meyer,*
    510 U.S. 471 (1994) ........................................................................... 11, 21, 32, 33

*Feres v. United States,*
    340 U.S. 135 (1950) ............................................................................................... 29

*Fitzpatrick v. Copeland,*
    80 S.W.3d 297 (Tex. App. 2002)............................................................................ 48

*Flores v. Lynch,*
    828 F.3d 898 (9th Cir. 2016) .................................................................. 4, 5, 19, 24

*Flores v. Rosen,*
    984 F.3d 720 (9th Cir. 2020) .................................................................................... 5

*Fuentes-Ortega v. United States,*
    No. 22-449, 2022 WL 16924223 (D. Ariz. Nov. 14, 2022) .................... 26, 28, 32, 36

*Gandarillas- Zambrana v. BIA,*
   44 F.3d 1251 (4th Cir. 1995) ....................................................... 15

*Garrett v. Great W. Distrib. Co. of Amarillo,*
   129 S.W.3d 797 (Tex. App. 2004) ............................................. 44

*Gaubert v. United States,*
   499 U.S. 315 (1991) ............................................................. 12, 13

*Gould Elecs. Inc. v. United States,*
   220 F.3d 169 (3d Cir. 2000) ................................................. 10, 38

*Gray v. Sangrey,*
   428 S.W.3d 311 (Tex. App. 2014) ............................................. 56

*Gulf C. & S.F. Ry. Co. v. Redeker,*
   2 S.W. 527 (Tex. 1886) .............................................................. 48

*Hajdusek v. United States,*
   Civil Action No. 16-340, 2017 WL 4250510 (D.N.H. Sept. 21, 2017) .................... 25

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) .................................................................. 21

*Helena Labs Corp. v. Snyder,*
   886 S.W.2d 767 (Tex. 1994) ....................................................... 48

*Hernandez v. United States,*
   No. 1:17-CV-00087, 2018 WL 4103015 (S.D. Tex. July 2, 2018) ........................... 39

*Hinojosa v. City of Terrell,* Tex.,
   834 F.2d 1223 (5th Cir. 1988) ................................................... 38

*Hinote v. Rio Grande Surgery Ctr. Assocs., L.L.P.,*
   No. 13-99-489, 2000 WL 35729677 (Tex. App. 2000) ........................................ 48

*Holcombe v. United States,*
   38 F. Supp. 3d 777 (W.D. Tex. 2019) .......................................... 44, 45, 47

*Holcombe v. United States,*
   516 F. Supp. 3d 660 (W.D. Tex. 2021) ...................................... 42

*Houston v. Gonzales,*
   No. 16-986, 2016 WL 7335683 (W.D. Tex. Dec. 16, 2016) ...................... 44

*Hunt v. Baldwin,*
   68 S.W. 3d 117 (Tex. App. 2001) ........................................... 49-52

*In re Wilson*,
   610 B.R. 255 (Bankr. N.D. Tex. 2019) ................................................................. 50

*J.P. v. Sessions*,
   No. 18-6081, 2019 WL 6723686 (C.D. Cal. Nov. 5, 2019) ..................................... 26

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) ............................................................................................... 3

*Johnson v. Merrell Dow Pharm., Inc.*,
   965 F.2d 31 (5th Cir. 1992) ................................................................................... 40

*Johnson v. Sawyer*,
   760 F.Supp. 1216 (S.D. Tex. 1991) ....................................................................... 56

*Jones v. Hyman*,
   107 S.W.3d 830 (Tex. App. 2003) .......................................................................... 41

*K.O. v. United States*,
   No. 20-12015, 2023 WL 131411 (D. Mass. Jan. 9, 2023) ............................... 18, 24

*Kjellvander v. Citicorp*,
   156 F.R.D. 138 (S.D. Tex. 1994)...................................................................... 49, 50

*Knight v. City Streets, L.L.C.*,
   167 S.Wd.3d 580, 584 (Tex. App. 2005) ............................................................... 44

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993)....................................................................................... 10

*Kristensen v. United States*,
   993 F.3d 363 (5th Cir. 2021) ................................................................................. 41

*Lee v. United States*,
   Civil Action No. 19-08051, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) .......... 35, 36

*Lehman v. Nakshian*,
   453 U.S. 156 (1981) ............................................................................................... 11

*Lichtman v. United States*,
   316 F. App'x 116 (3d Cir. 2008) ............................................................................ 34

*Lightfoot v. United States*,
   564 F.3d 625 (3d Cir. 2009)..................................................................................... 9

*Lineberry v. United States*,
   No. 3:08-cv-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) ............................ 20

*Lipsey v. United States,*
  879 F.3d 249 (7th Cir. 2018) ............................................................... 16, 17

*Logue v. United States,*
  412 U.S. 521 (1973) ................................................................................ 37

*Lomando v. United States,*
  667 F.3d 363 (3d Cir. 2011) ............................................................... 28, 29

*M.D.C.G. v. United States,*
  956 F.3d 762 (5th Cir. 2020) ................................................................... 45

*Maliandi v. Montclair State Univ.,*
  845 F.3d 77 (3d Cir. 2016) ...................................................................... 10

*Maliek-Ali v. United States Dep't of State,*
  Civil Action No. 18-102, 2019 U.S. Dist. LEXIS 55105 (W.D. Pa. Apr. 1, 2019) ... 30

*Mazur v. United States,*
  957 F. Supp. 1041 (N.D. Ill. 1997) .......................................................... 30

*McElroy v. United States,*
  861 F. Supp. 585 (W.D. Tex. 1994) .......................................................... 38

*McGowan v. United States,*
  825 F.3d 118 (2d Cir. 2016) ..................................................................... 31

*Mejia-Mejia v. ICE,*
  2019 WL 4707150 (D.D.C. Sept. 26, 2019) .............................................. 16

*Mendez v. Poitevent,*
  823 F.3d 326 (5th Cir. 2016) ................................................................... 54

*Merando v. United States,*
  517 F.3d 160 (3d Cir. 2008) ................................................................ 12-14

*Mirmehdi v. United States,*
  662 F.3d 1073 (9th Cir. 2011) ................................................................. 17

*Mitchell v. United States,*
  225 F.3d 361 (3d Cir. 2000) ..................................................................... 14

*Molchatsky v. United States,*
  778 F. Supp. 2d 421 (S.D.N.Y. 2011) ....................................................... 46

*Molzof v. United States,*
  502 U.S. 301 (1992) ................................................................................ 11

*Motor Exp., Inc. v. Rodriguez,*
    925 S.W.2d 638 (Tex. 1996) ................................................................................ 48

*Muhammad v. United States,*
    884 F. Supp. 2d 306 (E.D. Pa. 2012) .................................................................... 30

*Muick v. Reno,*
    83 F. App'x 851 (8th Cir. 2003) ............................................................................ 16

*Nall v. Plunket,*
    404 S.W. 3d 552 (Tex. 2013) ................................................................................ 42

*Newbrough v. Piedmont Reg'l Jail Auth.,*
    Civil Action No. 3:10CV867, 2012 WL 169988 (E.D. Va. Jan. 19, 2012) .............. 16

*Norman v United States,*
    111 F.3d 356 (3d Cir. 1997) .................................................................................. 36

*Nunez Euceda v. United States,*
    20-10793, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) ........................ 26, 28, 32, 34

*Ochran v. United States,*
    117 F.3d 495 (11th Cir. 1997) .............................................................................. 35

*Omoniyi v. Dep't of Homeland Sec.,*
    Civil Action No. 10-1344, 2012 WL 892197 (S.D.N.Y. Mar. 13, 2012) .................. 30

*Patel v. Att'y Gen. of the United States,*
    523 F. App'x 121 (3d Cir. April 18, 2013) .............................................................. 14

*Patel v. United States,*
    398 F. App'x 22 (5th Cir. 2010) ............................................................................ 20

*Pelayo v. 24 Hour Fitness USA, Inc.,*
    No. 19-1747, 2019 WL 6686702 (S.D. Tex. Nov. 21, 2019) .............................. 42, 43

*Peña Arita v. United States,*
    470 F. Supp. 3d 663 (S.D. Tex. 2020) ........................................................ 16, 18, 33

*Portillo v. United States,*
    Civil Action No. 17-0394, 2018 WL 523363 (D. Nev. Jan. 22, 2018) .................... 31

*Powell v. United States,*
    233 F.2d 851 (10th Cir. 1956) .............................................................................. 27

*Powers v. United States,*
    996 F.2d 1121 (11th Cir. 1993) ............................................................................ 25

*Rayonier Inc. v. United States*,
    352 U.S. 215 (1957) ................................................................... 34

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ................................................................... 16

*Reyna as next friend of J.F.G. v. Hott*,
    921 F.3d 204 (4th Cir. 2019) .................................................... 23

*Richards v. United States*,
    369 U.S. 1 (1962) ....................................................................... 38

*Roe v. United States*,
    839 F. App'x 836 (5th Cir. 2020) .............................................. 51

*Rogers v. Peeler*,
    146 S.W.3d 765 (Tex. App. 2004) ............................................ 53

*Rosell v. Cent. W. Motor Stages, Inc.*,
    89 S.W.3d 643 (Tex. App. 2002) .............................................. 46

*Roundtree v. United States*,
    40 F.3d 1036 (9th Cir. 1994) .................................................... 33

*RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*,
    957 S.W.2d 121 (Tex. App. 1997) ........................................ 50-52

*S.E.B.M. v. United States*,
    Civil Action No. 21-0095, ECF No. 62, 26-28 (D.N.M. Mar. 6, 2023) ............. 13, 28

*Sanford v. United States*,
    Civil Action No. 21-2552, 2022 WL 1210717 (D.S.C. Apr. 25, 2022) .................... 25

*Santana-Rosa v. United States*,
    335 F.3d 39 (1st Cir. 2003) .................................................. 16, 17

*Sasso v. Milhollan*,
    735 F. Supp. 1045 (S.D. Fla. 1990) ......................................... 15

*Scout Energy Mgmt., LLC v. Indian Springs Cattle Co., LLC*,
    Civil Action No. 07-21-00031, 2021 WL 5150995 (Tex. App. Nov. 5, 2021) ........... 50

*Silcott v. Oglesby*,
    721 S.W.2d 290 (Tex. 1986) ..................................................... 48

*Smith v. Deneve*,
    285 S.W.3d 904 (Tex. App. 2009) ............................................ 56

*Smith v. Sneed,*
   938 S.W.2d 181 (Tex. App. 1997) ............................................................. 40

*Snyder v. Byrne,*
   770 S.W.2d 65 (Tex. App. 1989) ............................................................... 49

*Surratt v. McClaran,*
   234 F. Supp. 3d 815 (E.D. Tex. 2016 ) ................................................... 56

*Temple-Inland Forest Prods Corp. v. Carter,*
   993 S.W.2d 88 (Tex. 1999) ............................................................... 42, 48

*Tex. Dep't of Pub. Safety v. Petta,*
   44 S.W. 3d 575 (Tex. 2001) ..................................................................... 54

*Thrower v. United States,*
   528 F. App'x 108 (3d Cir. 2013) ............................................................. 25

*Tonelli v. United States,*
   60 F.3d 492 (8th Cir. 1995) ..................................................................... 45

*Torrington v. Stutz,*
   46 S.W.3d 829 (Tex. 2000) ..................................................................... 42

*Tovar v. United States,*
   Civil Action No. 98-1682, 2000 U.S. Dist. LEXIS 5044
   (N.D. Tex. Apr. 18, 2000) ................................................................. 39, 40

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.,*
   839 F.3d 242 (3d Cir. 2016) ..................................................................... 9

*United States v. Bein,*
   214 F.3d 408 (3rd Cir. 2000) ................................................................... 11

*United States v. Dominguez-Portillo,*
   Nos. 17-4409, 17-4455, 17-4461, 17-4462, 17-4499, 2018 WL 315759
   (W.D. Tex. Jan. 5, 2018) ............................................................. 5, 19, 24

*United States v. Mitchell,*
   463 U.S. 206 (1983) ................................................................................. 11

*United States v. Olson,*
   546 U.S. 43 (2005) ................................................................................... 29

*United States v. Orleans,*
   425 U.S. 807 (1976) ................................................................................. 37

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
  467 U.S. 797 (1984) .................................................................................... 45

*United States v. Sherwood*,
  312 U.S. 584 (1941) .................................................................................... 11

*United States v. Testan*,
  424 U.S. 392 (1976) .................................................................................... 11

*Van Dinh v. Reno*,
  197 F.3d 427 (10th Cir. 1999) ................................................................... 15

*Vance v. Hurst Joint Venture LP*,
  657 S.W. 3d 141 (Tex. App. 2022) ............................................................ 42

*Verinakis v. Medical Profiles, Inc.*,
  987 S.W.2d 90 (Tex. App. 1998) ............................................................... 47

*Villafranca v. United States*,
  587 F.3d 257 (5th Cir. 2009) ..................................................................... 38

*Villafuerte v. United States*,
  No. 7:16-CV-619, 2017 WL 8793751 (S.D. Tex. Oct. 11, 2017) ............... 43

*Walding v. United States*,
  955 F. Supp. 2d 759 (W.D. Tex. 2013) ...................................................... 19

*Welch v. United States*,
  409 F.3d 646 (4th Cir. 2005) ..................................................................... 26

*Westbay Steel, Inc. v. United States*,
  970 F.2d 648 (9th Cir. 1992) ..................................................................... 29

*Westfall v. Erwin*,
  484 U.S. 292 (1988) .................................................................................... 22

*Whisnant v. United States*,
  400 F.3d 1177 (9th Cir. 2005) ................................................................... 13

*Wilbur P.G. v. United States*,
  No. 21-04457, 2022 WL 3024319 (N.D. Cal. May 10, 2022) ......... 26, 28, 36

*Wilson v. Layne*,
  526 U.S. 603 (1999) .................................................................................... 21

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017) ................................................................................ 33

**Statutes**

6 U.S.C. § 279 ..................................................................................... 3

6 U.S.C. § 279(a) ................................................................................. 4

6 U.S.C. § 279(b)(1)(A) ....................................................................... 4

6 U.S.C. § 279(b)(1)(C) ....................................................................... 4

6 U.S.C. § 279(g)(2) ............................................................................ 4

6 U.S.C. § 279(g)(2)(C)(ii) ................................................................ 24

8 U.S.C. § 1101(a)(3) ........................................................................... 1

8 U.S.C. § 1103(a) ............................................................................. 14

8 U.S.C. § 1182(a)(6)(A)(i) ................................................................. 2

8 U.S.C. § 1182(d)(5) .......................................................................... 3

8 U.S.C. § 1225(a)(1) .......................................................................... 3

8 U.S.C. § 1225(a)(3) .......................................................................... 3

8 U.S.C. § 1225(b) ......................................................................... 3, 39

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ........................................................ 3

8 U.S.C. § 1225(b)(2)(A) ..................................................................... 3

8 U.S.C. § 1231(g)(1) ..................................................................... 3, 15

8 U.S.C. § 1232 .................................................................................... 3

8 U.S.C. § 1232(b)(1) .......................................................................... 4

8 U.S.C. § 1232(b)(3) .................................................... 4, 18, 24, 27

8 U.S.C. § 1232(c)(2)(A) ..................................................................... 4

8 U.S.C. § 1325 ............................................................................ 1, 3, 6

8 U.S.C. § 1325(a) .......................................................................... 6, 14

8 U.S.C. § 1326 .................................................................................... 6

8 U.S.C. § 1357 ...................................................................................... 54

18 U.S.C. § 4042(a)(2) .......................................................................... 25

28 U.S.C. § 1346(b) .................................................... 33, 34, 36, 38

28 U.S.C. § 1346(b)(1) .......................................................................... 28

28 U.S.C. § 2671 .................................................................................. 36

28 U.S.C. § 2674 .................................................................................. 28

28 U.S.C. § 2680 .......................................................................... 11, 53

28 U.S.C. § 2680(a) .................................................................. 1, 12, 26

Texas Penal Code § 9.51(a) .............................................................. 54

Texas Penal Code § 22.01(a) ............................................................ 53

## Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................... 10

## Regulations

8 C.F.R. § 212.5(b) ................................................................................ 3

8 C.F.R. § 235.3(b)(2)(iii) ................................................................ 3

8 C.F.R. § 235.3(b)(4)(ii) ................................................................ 3

86 Fed. Reg. 8273 (Feb. 2, 2021) ................................................ 1

## Other Authorities

H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 .................. 12

Restatement Case 5:21-cv-00469-EGS Document 52-1 Filed 03/28/22 Page 37 of 55 (Second) of Torts § 10, and W. Keeton, Prosser and Keeton on Torts 16 (5th ed. 1984) ...................................................................................... 38

U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 ("Zero Tolerance Memorandum") .......................................................... 6

## I.   <u>PRELIMINARY STATEMENT</u>

This case effectively seeks to challenge in tort the prior administration's policy of strictly enforcing immigration laws at the southern border of the United States. The policy resulted in the detention of adult noncitizens[1] apprehended for illegally crossing the border in violation of 8 U.S.C. § 1325 or other statutory provisions authorizing criminal prosecution and necessitated the separation of minor children accompanying those adults for placement in residential programs contracted for by the Department of Health and Human Services. Plaintiffs characterize the policy as "deliberately inhumane," and the current administration has rescinded and "condemn[ed]" the policy. *See* Executive Order 14011, 86 Fed. Reg. 8273 (Feb. 2, 2021). But the government's policy decisions are not actionable in tort. The Court should dismiss the Complaint.

First, the Court lacks subject matter jurisdiction over Plaintiffs' claims because the United States has not waived its sovereign immunity under the Federal Tort Claims Act ("FTCA"). The United States is immune from suit except insofar as it has expressly consented to be sued. The United States has immunity from Plaintiffs' claims because the complained of conduct is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This is called the "discretionary function

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

exception" to the FTCA. The United States also has sovereign immunity under the "due care" and independent contractor exceptions to the FTCA, and because there is no private-party analog in state tort law to challenge federal immigration policy, among other reasons. Lastly, to the extent Plaintiffs are alleging constitutional violations, which appears to be the gravamen of their Complaint, Plaintiffs cannot recover against the United States (the only named defendant) because it is well-established that the FTCA's waiver of sovereign immunity does not encompass constitutional claims, and suits seeking damages for constitutional violations can only be brought against federal officials through other means. Thus, the Court should dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction under Rule 12(b)(1).

Even if the Court had subject matter jurisdiction—which it does not—Plaintiffs fail to state a claim upon which relief can be granted. FTCA claims against the United States are governed by state tort law, and federal officials have privileges protecting their right to enforce federal immigration law and no duty to not enforce those laws, no matter how Plaintiffs' style or label their tort claims. Thus, the Court should alternatively dismiss Plaintiffs' Complaint under Rule 12(b)(6).

## II.   __STATEMENT OF FACTS__

### A. Statutory Framework of Noncitizens Entering the United States

Under the Immigration and Nationality Act ("INA"), any noncitizen present in the United States without being admitted or paroled is inadmissible and subject to removal. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Such individuals may also be subject to prosecution for criminal immigration violations, including entering the United States

"at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325. Noncitizens present in the United States without being admitted are considered "applicant[s] for admission" and are "inspected by immigration officers" to assess the validity of their claims. *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). The INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). Individuals who are issued expedited removal orders pursuant to 8 U.S.C. § 1225(b)(1)(A)(i) "shall be detained pending a final determination of credible fear of persecution and, if found not to have such fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and (b)(2)(A). The United States Department of Homeland Security ("DHS") may in its "discretion" grant parole and release such individuals only under prescribed circumstances on a "case-by-case basis." 8 U.S.C.§ 1182(d)(5); 8 C.F.R. §§ 212.5(b), 235.3(b)(2)(iii) and (b)(4)(ii). The federal government further possesses statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1).

## B. Statutory Framework for Immigration Custody Relating to Noncitizen Minors

Federal immigration law authorizes the United States to provide for the custody and care of noncitizen minor children entering the United States. *See* 6 U.S.C. § 279; 8 U.S.C. § 1232. The United States Department of Health and Human Services' ("HHS") Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason

of their immigration status." 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." ORR seeks to place unaccompanied noncitizen children "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

### C. *Flores* Agreement Requirements

In 1996, the federal government entered into a settlement agreement referred to as the *Flores* Agreement[2] enforced in the United States District Court for the Central District of California that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9). The *Flores* Agreement applies both to unaccompanied minors and to minors who are encountered together with their parents or legal guardians. *Id.* at 901. Under the *Flores* Agreement, DHS must expeditiously transfer any minor who cannot be

---

[2] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF No. 101).

released from custody to a non-secure, licensed facility.  *Id.* at 902-03 (citing *Flores* Agreement ¶ 12). The government must also "make and record the prompt and continuous efforts on its part toward . . . release of the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting *Flores* Agreement ¶ 14).

Notably, the *Flores* Agreement applies only to minors. *See Flores*, 828 F.3d at 901. It "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children," and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id.* at 906; *see also United States v. Dominguez-Portillo*, Nos. 17-4409, 17-4455, 17-4461, 17-4462, 17-4499, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]"). Nor does the *Flores* Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, Nos. 07-164, 07-165, 07-166, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). Although the *Flores* Agreement gives preference to release of minors to a parent, this "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

**D. Executive Branch Directives Regarding Immigration Enforcement**

On April 11, 2017, the Department of Justice issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement and directed that federal law enforcement prioritize the prosecution of several

immigration offenses, including illegal entry under 8 U.S.C. § 1325 and illegal reentry of individuals who had been removed previously under 8 U.S.C. § 1326.

On April 6, 2018, the former Attorney General of the United States issued a "Memorandum for Federal Prosecutors along the Southwest Border." U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 ("Zero Tolerance Memorandum"). The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS-to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id*. In addition, on May 4, 2018, the DHS Secretary directed officers and agents to ensure that all adults deemed prosecutable for improper entry in violation of 8 U.S.C. § 1325(a) were referred to DOJ for criminal prosecution. This initiative applied to all amenable adults, including parents or legal guardians traveling with minor children. Consistent with the Zero Tolerance Memorandum, DHS referred for prosecution adult noncitizens—including those traveling with children—who unlawfully entered the United States along the Southwest border in violation of § 1325 or other statutory provisions authorizing criminal prosecution. Minor children of those adults were transferred to ORR custody as unaccompanied noncitizen children, as required by the TVPRA.

### E. Allegations in Plaintiffs' Complaint[3]

_____

[3] The following allegations are taken directly from the Complaint and accepted as true for the limited purpose of this motion to dismiss. *Cudjoe v. Dep't of Veterans' Affairs*, 426 F.3d 241, 244 (3d Cir. 2005). The United States does not concede that the allegations in the Complaint are supported by an adequate factual basis.

Plaintiffs B.Y.C.C. and M.S.C.C. are nationals of El Salvador who currently reside in Ocean County, New Jersey. Compl. ¶¶ 9-10, 17. On or about May 28, 2018, B.Y.C.C. unlawfully crossed the United States border in Rio Grande City, Texas, with her then three-year-old son, M.S.C.C. *Id.* ¶ 91. Plaintiffs allege that they approached U.S. Customs and Border Protection ("CBP") Border Patrol agents at the Rio Grande City Port of Entry intending to seek asylum in the United States. *Id.* ¶ 92. The CBP agents took Plaintiffs into custody, and they were detained at the Rio Grande Port of Entry for approximately three days, awaiting B.Y.C.C.'s referral for prosecution. *Id.* ¶¶ 92-97.

On or about May 30, 2018, B.Y.C.C. and M.S.C.C. were separated at the Port Isabel Detention Center. *Id.* ¶¶ 98, 100-101, 108. M.S.C.C. was first transferred to the Ursula Central Processing Station in McAllen, Texas, and then to "an ORR contractor"—Abbott House in the Bronx, New York. *See id.* ¶ 115; *see also* Declaration of James De La Cruz ("De La Cruz Decl.") ¶¶ 6-9 and Ex. A. B.Y.C.C. was detained at the Port Isabel Detention Center, and eventually was able to speak with M.S.C.C. by phone multiple times. *Id.* ¶¶ 108; 126-128. M.S.C.C. was also able to speak with his grandparents via video. *Id.* ¶ 129.

B.Y.C.C. and M.S.C.C. were reunited in New York on or about July 11, 2018, after approximately six weeks apart, and released together into the United States. *Id.* ¶¶ 135-144. B.Y.C.C. states that she is currently seeking asylum, withholding of removal and protection under the Convention Against Torture, with M.S.C.C. as a derivative on her application. *Id.* ¶¶ 9-10.

Plaintiffs allege that their separation caused them to suffer severe emotional distress and "physical trauma." *Id*. ¶ 147. B.Y.C.C. claims to have experienced "depression, headaches, stomachaches, and heart palpitations; feelings of panic, tenseness, and worry; and an inability to sleep and loss of appetite" while separated from her son. *Id*. ¶ 156. B.Y.C.C. alleges that symptoms such as lack of appetite, insomnia, headaches, and fainting episodes have persisted since reunification. *Id*. ¶¶ 157-58. M.S.C.C. claims to have suffered "extreme emotional distress," including feelings of fear, confusion, and anger while separated from his mother. *Id*. ¶¶ 148-50. M.S.C.C. claims that after reunification with his mother, he exhibited "distrust and defensive behavior towards his mother" and "was often irritable and angry." *Id*. ¶¶ 150-51. M.S.C.C. also alleges that he "exhibited additional signs of anxiety and fear," with difficulty sleeping and fear of law enforcement. *Id*. ¶ 152. M.S.C.C. alleges that he "continues to demonstrate fear, worry, and sadness when he is apart from his mother." *Id*. ¶ 154.

After submitting administrative tort claims to DHS, the U.S. Immigration and Customs Enforcement ("ICE"), CBP, and HHS on May 5, 2020, Plaintiffs initiated this civil action under the FTCA on November 14, 2022. *Id*. ¶ 16. Plaintiffs assert eight tort claims in the Complaint: intentional infliction of emotional distress (Count I); negligence (Count II); negligent supervision (Count III); negligent undertaking (Count IV); tortious interference with the parent-child relationship (Count V); abuse of process (Count VI); assault and battery (Count VII); and breach of fiduciary duty

(Count VIII). *Id.* ¶¶ 213-262. As compensation for their claims, Plaintiffs each seek damages in the amount of $3,000,000.

For the following reasons, the Court should dismiss Plaintiffs' Complaint.

## III.   <u>STANDARD OF REVIEW</u>

### A.  Rule 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "attacks the right of a plaintiff to be heard in Federal Court." *Doughty v. United States Postal Serv.*, 359 F. Supp. 2d 361, 364 (D.N.J. 2005) (quoting *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999)). The court may dismiss for lack of subject-matter jurisdiction at any time regardless of whether an answer to the complaint has been filed or the parties have conducted discovery. *CNA v. United States*, 535 F.3d 132, 145-46 (3d Cir. 2008). The burden is on a plaintiff to establish the court's jurisdiction. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).

"Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (cleaned up). In considering a factual challenge to subject-matter jurisdiction, the Court is not bound by the allegations in the complaint and "may consider evidence outside the pleadings." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 251 (3d Cir. 2016); *see also Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198, 200 (3d Cir. 1990) ("[T]he Supreme Court made clear that a facially sufficient complaint may be dismissed before an answer is served if it can be shown by affidavits that subject matter jurisdiction is lacking.") (Alito, J.).

In a facial challenge, "the court must only consider the allegations of the

complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). However, even when a facial challenge to jurisdiction is brought, the Court may still consider public documents and websites. *See, e.g.*, *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 89 n.10 (3d Cir. 2016) ("Although these documents were not part of the record before the District Court, we may take judicial notice of them because they are 'public documents' . . . and because [the plaintiff] does not object to their consideration.").

To the extent Plaintiffs' claims are based on the allegedly tortious conduct of an ORR contractor, the United States is making a factual attack to the Court's jurisdiction under the independent contractor exception to the FTCA. In all other respects, the United States' is making a facial attack to the Court's jurisdiction.

## B. Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Court need not consider "legal conclusions" contained within a complaint, and "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."

*Id.* at 678.

## IV.   **LEGAL ARGUMENT**

### A. Plaintiffs' Claims Are Barred by the Discretionary Function Exception.

The Court lacks subject matter jurisdiction over this action because the United States has not waived its sovereign immunity for Plaintiffs' claims under the FTCA. The United States, as a sovereign entity, is immune from suit except insofar as it has specifically and expressly consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). Absent a specific, express waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

Congress enacted the FTCA as a limited waiver of the government's sovereign immunity in order to provide remedies to certain individuals harmed by government negligence. There are numerous exceptions to the FTCA's limited waiver of sovereign immunity. *See* 28 U.S.C. § 2680; *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983). Any waiver is strictly construed in favor of the United States. *United States v. Bein*, 214 F.3d 408, 412 (3rd Cir. 2000). Where there is no waiver, the Court lacks subject matter jurisdiction to entertain a claim. *United States v. Sherwood*, 312 U.S. 584, 590-91 (1941).

Although the FTCA waives sovereign immunity for certain common-law tort claims, the statute contains express exceptions that "are designed to protect certain important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992). One such exception is the "discretionary

function" exception, which bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also Gaubert v. United States*, 499 U.S. 315, 325 (1991); *Baer v. United States*, 722 F.3d 168, 175 (3d Cir. 2013). As the statute's legislative history explains, the FTCA was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

The United States Supreme Court has set forth a two-part test to determine if the discretionary function exception applies. *Gaubert*, 499 U.S. at 328-32. If both prongs of the test are met, the exception applies, the United States retains its sovereign immunity, and the court must dismiss the FTCA claims for lack of subject matter jurisdiction. *See Baer*, 722 F.3d at 175.

First, courts must ask whether the conduct "involves an 'element of judgment or choice.'" *Merando v. United States*, 517 F.3d 160 (3d Cir. 2008) (quoting *Gaubert*, 499 U.S. at 322). "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Id.* (quotation marks omitted); *see also Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (to survive a motion to dismiss, the plaintiff must identify a statute, regulation

12

or policy that is both "*specific and mandatory*," as well as conduct that violates the statute, regulation, or policy (emphasis in original)).

Second, after a court finds the challenged conduct involved an element of judgment, the court must also find that "the judgment is of the kind that the discretionary function exception was designed to shield." *Merando*, 517 F.3d at 165 (quotation marks omitted). The purpose of the exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," and, "when properly construed, the exception protects only governmental actions and decisions based on consideration of public policy." *Gaubert*, 499 U.S. at 322-23. The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325. Moreover, "Government actions can be classified along a spectrum, ranging from those totally divorced from the sphere of policy analysis, such as driving a car, to those fully grounded in regulatory policy, such as the regulation and oversight of a bank." *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) (quotations omitted).

All of the alleged conduct at issue in the Complaint—the conditions of B.Y.C.C.'s confinement as well as the decision to detain B.Y.C.C. and, consequently, to separate B.Y.C.C. and M.S.C.C.—was subject to an element of judgment or choice, and the government's decision-making was the kind that the discretionary function exception is designed to shield. *See S.E.B.M. v. United States*, Civil Action No. 21-

0095, ECF No. 62, 26-28 (D.N.M. Mar. 6, 2023) (finding that "the government's prosecution of [the plaintiff]'s father, which immediately caused her to be separated from him, was a discretionary decision that violated no federal law cited by the parties and which was protected from liability by the discretionary function exception to the FTCA."). Thus, the Court should dismiss the Complaint for lack of jurisdiction under the discretionary function exception. *See Mitchell v. United States*, 225 F.3d 361, 366 (3d Cir. 2000) (affirming dismissal where agent acted pursuant to statutory discretion); *Merando*, 517 F.3d at 172 (same). The application of the discretionary function exception to each of Plaintiffs' allegations is discussed further below.

### 1. The Decision to Detain B.Y.C.C. Involved an Element of Judgment or Choice Susceptible to Policy Analysis.

B.Y.C.C. was subject to prosecution under 8 U.S.C. § 1325(a). On May 28, 2018, B.Y.C.C. and her son M.S.C.C. were detained at the border after crossing into the United States. *See* Compl. ¶ 91. DHS detained B.Y.C.C. in a secure adult detention facility while DHS determined whether to prosecute her, and M.S.C.C., rendered unaccompanied due to his mother's detainment, was placed in the care and custody of ORR. *See id.* ¶¶ 108, 115, 126-128.

DHS was exercising an element of judgment or choice when it decided to detain B.Y.C.C. for violations of criminal law. "The authority to exercise prosecutorial discretion in immigration cases lies solely with DHS as the federal agency responsible for the administration and enforcement of the immigration laws." *Patel v. Att'y Gen. of the U.S.*, 523 F. App'x 121, 124 (3d Cir. 2013) (citing 8 U.S.C. § 1103(a)); *see Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020) ("Discretion lies at the heart

14

of the DHS law enforcement function."). The federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[4]

B.Y.C.C.'s detainment arose from enforcement of federal immigration statutes. Although the Complaint mischaracterizes the Zero Tolerance Memorandum as "directing the USAOs along the Southern Border to prosecute all persons who commit or attempt to commit unlawful entry," Compl. ¶ 46, the Memorandum itself lacks that mandatory language. Instead, the Policy directed "each United States Attorney's Office along the Southwest Border—*to the extent practicable, and in consultation with DHS*—to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Memorandum for Federal Prosecutors Along the Southwest Border*, OFFICE OF THE ATT'Y GEN. (Apr. 6, 2018) (emphasis added), https://www.justice.gov/opa/press-release/file/1049751/download.

As other courts have recognized, the decisions related to the secure immigration custody of adults as well as the Zero Tolerance Memorandum—which was subsequently revoked—"amount[] to exercise of the prosecutorial discretion that

---

[4] "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary]." *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986); *see also Gandarillas- Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita v. United States*, 470 F. Supp. 3d 663, 686-87 (S.D. Tex. 2020). Moreover, the executive branch's decision to strictly enforce immigration laws, or any federal law for that matter, is itself a matter of discretion and, therefore, a policy judgment. Thus, the first prong of the discretionary function exception is satisfied, precluding Plaintiffs from "second-guessing" or inquiring into government actors' intent in exercising that prosecutorial discretion. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999) (discussing "magnified" concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" in the immigration context); *see also Bernitsky v. United States*, 620 F.2d 948, 952 (3d Cir. 1980) (collecting cases).[5]

---

[5] *See also Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions regarding where to place prisoners are policy-based decisions protected by the discretionary function exception); *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir. 1995) (decisions regarding whether to detain or release are policy-based decisions protected by the discretionary function exception); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("[A]ssignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception[.]"); *Muick v. Reno*, 83 F. App'x 851, 853 (8th Cir. 2003) (holding claim based on "classification and placement of inmates" barred by discretionary function exception); *Baires v. United States*, Civil Action No. C 09-05171, 2011 WL 1743224, at *7 (N.D. Cal. May 6, 2011) (decision "to send detainees to one facility or another" is "precisely the kind of conduct protected by the [discretionary function] exception"); *Newbrough v. Piedmont Reg'l Jail Auth.*, Civil Action No. 3:10CV867, 2012 WL 169988, at *4 (E.D. Va. Jan. 19, 2012) (holding "detainee designation and classification decisions . . . fall squarely within the discretionary function exception"); *Douglas v. United States*, 796 F. Supp. 2d 1354, 1369 (M.D. Fla. 2011) ("ICE must weigh various policy considerations in deciding which suspected aliens to detain" and "how to detain them").

Regarding the second prong of the discretionary function exception—in which a court must examine the nature of the actions taken and whether they are susceptible to policy analysis—the government's decisions were not merely "susceptible to" policy analysis. There actually was a policy, which was analyzed. In fact, the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives. Thus, both prongs of the discretionary function exception are satisfied regarding B.Y.C.C..'s detention claims.

While the United States Court of Appeals for the Third Circuit has not yet addressed the issue of whether detention in the immigration context is a discretionary function, several other circuits have concluded that it is. As the United States Court of Appeals for the Ninth Circuit has explained, "[b]ecause the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, it falls within this [FTCA] exception." *Mirmehdi v. United States*, 662 F.3d 1073, 1081-82 (9th Cir. 2011); *see also Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception to the FTCA"); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions where to place prisoners are policy-based decisions protected by discretionary function exception); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995)

(decisions whether to detain or release are policy-based decisions protected by discretionary function exception). This Court should adhere to those decisions.

### 2.    The Decision to Transfer M.S.C.C. Involved an Element of Judgment or Choice Susceptible to Policy Analysis.

The discretion to detain B.Y.C.C. necessarily extends to DHS's decision not to detain M.S.C.C., then three years old, with B.Y.C.C. in an ICE family residential facility. *See Peña Arita*, 470 F. Supp. 3d at 691-92 (decisions by DHS to separate family members are protected by the discretionary function exception).

Here, B.Y.C.C. was detained pending potential prosecution. The United States District Court for the District of Massachusetts has explicitly held that the TVPRA granted the government the discretion to separate families detained at the border. *See K.O. v. United States*, No. 20-12015, 2023 WL 131411, at *7 (D. Mass. Jan. 9, 2023) ("Even though the TVPRA does not *mandate* family separation, as discussed above in the DCE analysis, it does not *forbid* family separation, at least after the government has taken some separate action against a parent and there is no available non-detained parent in the country." (emphasis in original)). Further, no policy, settlement agreement, or statute mandated the particular time and manner in which DHS identified M.S.C.C. as an unaccompanied noncitizen minor. Once DHS, in its discretion, identified M.S.C.C. as such, DHS was required within 72 hours to transfer M.S.C.C. to ORR custody under the TVPRA. *See* 8 U.S.C. § 1232(b)(3). But even then, ORR was vested with the discretion to determine where M.S.C.C. should be placed. "It is clear that the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations." *Walding v. United States*,

955 F. Supp. 2d 759, 771-72 (W.D. Tex. 2013). Thus, both prongs of the discretionary function exception are satisfied regarding Plaintiffs' transfer claims.

Although the *Flores* Agreement contains some requirements concerning the detention of minors, it did not specifically prescribe a course of action and, thus, does not remove the government's discretion. The *Flores* Agreement states that "[w]here INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS shall release a minor from its custody without unnecessary delay." *Flores*, 828 F.3d 898, 903. The agreement then sets forth an order of preference beginning with a parent and moving on to "a licensed program willing to accept legal custody." *Id.*; *see also Bunikyte*, 2007 WL 1074070, at *16 (to comply with the *Flores* Agreement, DHS must "releas[e] the children to adult relatives not in custody, adult friends designated by their parents, or even state-operated foster care"). There is nothing in the *Flores* Agreement that requires release of a parent or mandates that parents be housed with their children. *Flores*, 828 F.3d at 908; see also *Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte*, 2007 WL 1074070, at *16. Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children"), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016).

### 3. Decisions Relating to the Conditions of B.Y.C.C.'s Confinement Involved an Element of Judgment or Choice Susceptible to Policy Analysis.

Courts have repeatedly held that the discretionary function exception applies to claims based on acts or omissions relating to "conditions of confinement" because the manner in which the government manages and operates its detention facilities involves discretionary decisions susceptible to policy considerations. *See, e.g., Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainment decisions involve "several policy considerations . . . including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (discretionary function exception applied to decision to transfer prisoner); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by discretionary function exception); *Lineberry v. United States*, No. 3:08-cv-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"). Accordingly, the Court should dismiss all claims that are based on the alleged conditions of B.Y.C.C.'s confinement because of the discretionary function exception. *See* Compl. ¶¶ 66-80, 94, 97, 108-109, 113-114, 123, 128.

## 4. Plaintiffs' Allegations of Unconstitutional Treatment Do Not Defeat the Discretionary Function Exception

Plaintiffs cannot avoid dismissal of their FTCA claims under the discretionary function exception based on the constitutional violations they have alleged. *See id.* ¶¶ 183-197. Congress did not create the FTCA to address constitutional violations, but rather to address violations of state tort law committed by federal employees. *See Meyer*, 510 U.S. at 477 (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim").

The Supreme Court has long recognized that conduct may be discretionary even if it is later determined to have violated the Constitution. The common law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when the alleged tortious conduct violated the Constitution, so long as the constitutional right was not defined with sufficient specificity that the official should have known the act was prohibited. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see also, e.g., Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (applying the "discretionary function[]" formulation and holding that officers were entitled to qualified immunity because, although their conduct violated the Fourth Amendment, the law was not clearly established at the time).

The same rationale applies to the FTCA's discretionary function exception. Thus, when the Supreme Court in *Berkovitz* held that a federal mandate must

21

"specifically prescribe[]" conduct in order to overcome the discretionary function exception, it referred to official immunity precedent, underscoring that the two standards operate in tandem. 486 U.S. at 536 (citing *Westfall v. Erwin*, 484 U.S. 292, 296-97 (1988)); *see, e.g., Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate *clearly established* constitutional rights, the FTCA claims also fail" under the discretionary function exception (emphasis added)).

Indeed, even before it specifically addressed the qualified immunity standards applicable to federal employees, the Supreme Court, in *Butz v. Economou*, explicitly recognized that the discretionary function exception would apply even if alleged conduct might later be held unconstitutional. 438 U.S. 478 (1978). The court in that case held that officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity. As relevant here, the court noted that "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id*. at 505.

The Third Circuit has not stated the level of specificity with which a plaintiff must plausibly allege a constitutional violation to overcome the discretionary function exception. But at the time of Plaintiffs' detention, there was no clearly established standard for whether enforcement of discretionary policies violated the constitution. And Plaintiffs point to none.

Indeed, Plaintiffs do not even allege violation of any recognized constitutional right. Plaintiffs claim that they had a "constitutional right to remain together as a family, and both the separation itself and the way it was effectuated violated the Due Process Clause of the Fifth Amendment." Compl. ¶ 171. They further allege that the Fifth Amendment's Due Process Clause protects the right to family integrity, and the government had no legitimate reason to separate B.Y.C.C. and M.S.C.C., especially without notice and a hearing. *See id.* ¶¶ 172-178. No such right exists, however. However, as the United States Court of Appeals for the Fourth Circuit observed, "we . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019).[6] Moreover, Plaintiffs' characterization of the alleged constitutional right—the right to "remain together as a family"—is very broad. So even if some constitutional right relating to family integrity exists, Plaintiffs have not defined the right with the appropriate level of specificity necessary to defeat the discretionary function exception.

### 5. The TVPRA, *Flores* Agreement, and Safety-Related Policies Do Not Defeat the Discretionary Function Exception

Plaintiffs' final effort to overcome the discretionary function exception—by arguing that the United States violated specific and mandatory directives of the

---

[6] Plaintiffs also suggest that the government violated Plaintiffs' equal protection rights under the Fifth Amendment because unnamed officials were "motivated by a racially discriminatory intent or purpose." *See* Compl. ¶ 179. But there are no plausible factual allegations to support that conclusory statement, and the policies at issue do not expressly discriminate against any protected category of individuals.

TVPRA, the *Flores* Agreement, or DHS safety-related policies—also fails. *See* Compl. ¶¶ 184-211. The government did not violate the TVPRA because nothing in the TVPRA forbids family separation. Once the government, in its discretion, detained B.Y.C.C. for possible prosecution, it made the determination that B.Y.C.C. was unable to "provide care and physical custody" to M.S.C.C., and M.S.C.C. became an unaccompanied noncitizen child. *See* 6 U.S.C. § 279(g)(2)(C)(ii). Thus, the TVPRA, as Plaintiffs note, required, absent exceptional circumstances, that M.S.C.C. be transferred to ORR custody, which is what happened here. *See* Compl. ¶ 184; 8 U.S.C. § 1232(b)(3). Indeed, the United States District Court for the District of Massachusetts explicitly held that the TVPRA granted the government the discretion to separate families and that plaintiffs could not rely on it to overcome the discretionary function exception. *See K.O.*, 2023 WL 131411, at *7.

The *Flores* Agreement also cannot be used to overcome the discretionary function exception. As noted above, although the *Flores* Agreement contains some general requirements concerning the detention of minors, it does not specifically prescribe a course of action for DHS agents to take and, thus, does not remove the government's discretion. *See Flores*, 828 F.3d at 903; *Bunikyte*, 2007 WL 1074070, at *16. There is nothing in the *Flores* Agreement that requires release of a parent or mandates that parents be housed with their children. *See Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15.

Finally, Plaintiffs' reliance on safety-related policies is misplaced. Not every mandatory-sounding requirement in a policy amounts to a loss of agency discretion

and avoidance of the discretionary function exception. *See* Comp. ¶¶ 195-211. Rather, the discretionary function exception can apply to an alleged failure to adopt safety protocols when officials are faced with exigent circumstances or the weighing of limited resources. *See Sanford v. United States,* Civil Action No. 21-2552, 2022 WL 1210717, at *3 (D.S.C. Apr. 25, 2022) ("discretionary function exception to the FTCA . . . applies to . . . prison officials' failure to adhere to statutory authority" and BOP's alleged failure to adopt CDC guidance on "social distancing, mask wearing and quarantining").

Moreover, in analyzing the discretionary function exception, courts should avoid cherry-picking mandatory-sounding terms such as "shall" and "must" from policies and instead focus on the overall type of regulation or policy. *See Thrower v. United States*, 528 F. App'x 108, 111 (3d Cir. 2013) ("While the BOP's conduct at issue is governed by a federal statute requiring the BOP to provide for the 'protection' and 'safekeeping' of inmates, *see* 18 U.S.C. § 4042(a)(2), the statute leaves the implementation of these duties to BOP officials' discretion."); *Powers v. United States*, 996 F.2d 1121, 1125 (11th Cir. 1993); *Brackin v. United States*, 913 F.2d 858, 860 (11th Cir. 1990) ("While the language of these guidelines often includes the word shall, it is clear that the decision to use one method as opposed to another is based upon numerous factors including a consideration of a method that the parties can agree on."); *Hajdusek v. United States*, Civil Action No. 16-340, 2017 WL 4250510, at *5 (D.N.H. Sept. 21, 2017), *aff'd*, 895 F.3d 146 (1st Cir. 2018). Thus, Plaintiffs'

claims are barred by the discretionary function exception.[7]

**B.  Plaintiffs' Claims Are Barred by the FTCA's "Due Care" Exception.**

Plaintiffs' claims related to the decision to transfer M.S.C.C. to the custody of ORR are independently precluded because the FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (holding claim arising out of "the enforcement of 'rules and regulations'" barred by the exception); *Welch v. United States*, 409 F.3d 646, 652-53 (4th Cir. 2005) (affirming dismissal of FTCA claims based on enforcement of statute under due care exception).

---

[7] The United States believes that dismissal of Plaintiffs' FTCA claims is warranted based on the discretionary function exception but notes that other lower courts have issued non-binding decisions to the contrary. *See D.J.C.V. v. United States*, 605 F.Supp.3d 571, 588 (S.D.N.Y. 2022) (rejecting the government's argument that the discretionary function exception applies to families separated as a result of the Zero Tolerance Memorandum); *J.P. v. Sessions*, No. 18-6081, 2019 WL 6723686, at *4-5 (C.D. Cal. Nov. 5, 2019) (same); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996-97 (D. Ariz. 2020) (same); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) (same); *Nunez Euceda v. United States*, 20-10793, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021) (same); *Wilbur P.G. v. United States*, No. 21-04457, 2022 WL 3024319, at *4 (N.D. Cal. May 10, 2022) (same); *F.R. v. United States*, No. 21-00339, 2022 WL 2905040, at *3 (D. Ariz. July 22, 2022) (same); *B.A.D.J. v. United States*, No. 21-215, 2022 WL 11631016, at *3 (D. Ariz. Sept. 30, 2022) (same); *E.S.M. v. United States*, No. 21-29, 2022 WL 11729644, at *4-5 (D. Ariz. Oct. 20, 2022) (same); *A.E.S.E. v. United States,* No. 21-569, 2022 WL 4289930, at *11 (D.N.M. Sept. 16, 2022) (same); *Fuentes-Ortega v. United States*, No. 22-449, 2022 WL 16924223, at *2-3 (D. Ariz. Nov. 14, 2022) (same).

Among other things, the purpose of this "due care" exception is to prevent the testing "of the legality of statutes and regulations" through a tort action. *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective"). Accordingly, where a government employee's actions are authorized by statute or regulation, the exception for actions taken while reasonably executing the law applies, and a court lacks subject matter jurisdiction. *See Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979).

Here, the United States is required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody, absent "exceptional circumstances." 8 U.S.C. § 1232(b)(3). The government made the determination that B.Y.C.C. was unable to provide care and physical custody for M.S.C.C. The government made the discretionary decision to detain B.Y.C.C. for potential criminal prosecution in a secure immigration detention facility separate from M.S.C.C. *See* Compl. ¶¶ 38-55, 81-90. Once those protected discretionary determinations had been made, the government further made the discretionary decision that M.S.C.C. was an unaccompanied noncitizen minor, requiring, absent exceptional circumstances, that M.S.C.C. be transferred to ORR custody under the TVPRA. The enforcement of that statutory command cannot form the basis of an FTCA claim by Plaintiffs against the

27

United States. *See S.E.B.M. v. United States*, Civil Action No. 21-0095, ECF No. 62, 28-32 (D.N.M. Mar. 6, 2023) (finding that the due care exception applied to the following conduct: "[the plaintiff's] physical separation from her father"; (2) "her limited contact with her father while in government custody"; (3) "her placement in ORR custody"; and (4) "being made to wait 160 days before she was placed in her grandmother's care").[8]

### C. Plaintiffs' Claims Are Not Actionable Under the FTCA Because There Is No Private Person Analog.

Plaintiffs' claims are further barred because the challenged conduct has no private person analog.  The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Lomando v. United States*, 667 F.3d 363, 372 (3d Cir. 2011). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.

---

[8] The United States believes that dismissal of Plaintiffs' FTCA claims is warranted based on the due care exception but notes that other lower courts have issued non-binding decisions to the contrary. *See D.J.C.V.*, 605 F.Supp.3d at 598 (rejecting the government's argument that the due care exception applies to families separated as a result of the Zero Tolerance Memorandum); *A.P.F.*, 492 F. Supp. 3d at 995-96 (same); *C.M.*, 2020 WL 1698191, at *3 (same); *Nunez Euceda*, 2021 WL 4895748, at *3-4 (C.D. Cal. Apr. 27, 2021) (same); *Wilbur P.G. v. United States*, 2022 WL 3024319, at *5 (same); *F.R.*, 2022 WL 2905040, at *4 (same); *B.A.D.J.*, 2022 WL 11631016, at *4 (same); *E.S.M.*, 2022 WL 11729644, at *5 (same); *A.E.S.E.*, 2022 WL 4289930, at *13-14 (D.N.M. Sept. 16, 2022) (same); *Fuentes-Ortega*, 2022 WL 16924223, at *3-4.

In other words, the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 45 (2005) (internal quotations omitted); *see also Barnett v. United States*, 640 F. App'x 201, 204 (3d Cir. 2016); *Lomando*, 667 F.3d at 373. "It is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a federal statutory duty in the conduct of its own affairs." *Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997). This is often referred to as the "private-person" or "state-law" analogue. *Id.*; *accord Olson*, 546 U.S. at 47. The plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law as if he or she were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992); *see also CNA v. United States*, 535 F.3d 132, 138 (3d Cir. 2008).

The alleged harms here stem from the government's decision to exercise its lawful authority and enforce federal immigration laws, criminally prosecute certain individuals, and hold parents in custody pending immigration proceedings or prosecution, resulting in their children's placement in the care and custody of ORR. There is no private-person counterpart to this scenario. *Feres v. United States*, 340 U.S. 135, 141-42 (1950) (describing lack of "like circumstances" for miliary activities); *see also Maliek-Ali v. United States Dep't of State*, Civil Action No. 18-102, 2019 U.S.

Dist. LEXIS 55105, at *3 (W.D. Pa. Apr. 1, 2019); *Muhammad v. United States*, 884 F. Supp. 2d 306 (E.D. Pa. 2012).

Indeed, courts have repeatedly held that governmental decisions concerning immigration have no private-party analog and thus cannot serve as the basis for a claim under the FTCA. *See, e.g.*, *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, Civil Action No. 13-0867, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing "immigration matters" are "an inherently governmental function"); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (holding, in matters relating to naturalization of noncitizens, "only the United States has the power to act" and thus "there is no private analog under state law"); *Omoniyi v. Dep't of Homeland Sec.*, Civil Action No. 10-1344, 2012 WL 892197, at *9 (S.D.N.Y. Mar. 13, 2012) ("[T]he alleged misconduct of CIS in initially denying Plaintiffs [sic] naturalization application has no private analog . . . .").

The United States Court of Appeals for the Second Circuit's decision in *Akutowicz v. United States*, 859 F.2d 1122 (2d Cir. 1988) is instructive. In that case, the Second Circuit rejected the plaintiff's FTCA suit challenging the Department of State's wrongful revocation of his U.S. citizenship, holding that the plaintiff failed to

"satisf[y] the private analogue requirements." *Id.* at 1126. In so holding, the court observed: "[Q]uasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law." *Id.* at 1125 (internal quotations and citation omitted). Thus, the court determined, "the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists," since, "[w]ithout doubt, no private citizen is empowered to certify the loss of American nationality." *Id.* at 1125-26.

The same is true here—the federal government's prosecution and detention decisions are, without doubt, decisions that no private actor is empowered to make: "Private persons cannot establish facilities to detain other persons—only the government can, either on its own or through a government contractor." *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016); *see also, e.g.*, *Buzzanca v. D.C.*, Civil Action No. 18-2893, 2021 WL 796275, at *4 (D.D.C. Mar. 2, 2021) (dismissing FTCA claims, holding "[p]laintiff's claim rests on his wrongful detention, and only the government has the authority to detain"); *Portillo v. United States*, Civil Action No. 17-0394, 2018 WL 523363, at *3 (D. Nev. Jan. 22, 2018) (dismissing FTCA claims, holding authority to "detain other persons" is "a uniquely governmental function that has no private analogue"), *aff'd*, 741 F. App'x 415 (9th Cir. 2018). Accordingly, the Court should dismiss Plaintiffs' claims because of the lack of a private-party analog.[9]

---

[9] The United States believes that dismissal of Plaintiffs' FTCA claims is warranted

### D. Plaintiffs' Claims Are Barred Because the FTCA Does Not Authorize Recovery for Constitutional Torts.

To avoid the discretionary function exception, Plaintiffs go to great lengths to allege the government violated their constitutional rights:

> **Defendant's separation and treatment of [Plaintiffs] violated the Constitution . . .**
>
> 171. [Plaintiffs] had a constitutional right to remain together as a family, and both the separation itself and the way it was effectuated violated the Due Process Clause of the Fifth Amendment. . . .
>
> 179. The separation and treatment of [B.Y.C.C.] and [M.S.C.C.] violated their constitutional right to equal protection because the Government's actions were motivated by discriminatory animus towards Central American migrants.

*See* Compl. ¶¶ 169-183. In doing so, Plaintiffs suggest that the gravamen of their Complaint is alleged constitutional violations, not tort claims.

However, the FTCA does not authorize constitutional tort claims. *Meyer*, 510 U.S. at 477-78. As the Supreme Court explained in *Meyer*, a claim is actionable under the FTCA only if the United States would be liable as a "'private person' 'in accordance with the law of the place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)). "A constitutional tort claim . . . could not contain such an

---

based on the lack of a private-person analog but notes that other lower courts have issued non-binding decisions to the contrary. *See D.J.C.V.*, 605 F.Supp.3d at 598-99 (rejecting the government's argument that the private person analogue requirement prevents recovery under the FTCA for families separated as a result of the Zero Tolerance Memorandum); *A.P.F.*, 492 F. Supp. 3d at 994-95 (same); *C.M.,* 2020 WL 1698191, at *2 (same); *Nunez Euceda,* 2021 WL 4895748, at *5 (C.D. Cal. Apr. 27, 2021) (same); *F.R.*, 2022 WL 2905040, at *3 (same); *B.A.D.J.*, 2022 WL 11631016, at *4-5 (same); *E.S.M.*, 2022 WL 11729644, at *2-3 (same); *A.E.S.E.*, 2022 WL 4289930, at *14 (D.N.M. Sept. 16, 2022) (same); *Fuentes-Ortega*, 2022 WL 16924223, at *4-5.

allegation." *Id.* at 477. Accordingly, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Id.* at 478; *Roundtree v. United States,* 40 F.3d 1036, 1038 (9th Cir. 1994) ("United States cannot be sued on the theory that there has been a violation of [plaintiffs'] constitutional rights."). The only possible means to obtain money damages against federal officials for constitutional violations is under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), but Plaintiffs have not alleged such claims here. Moreover, it is doubtful that Plaintiffs even have a cognizable *Bivens* action in this context because of the Supreme Court's recent decisions in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) and *Egbert v. Boule*, 142 S. Ct. 1793 (2022).

Notably, one court has recognized in this context that an alleged constitutional violation did not defeat application of the FTCA's discretionary function exception. *See Peña Arita*, 470 F. Supp. 3d at 688 (dismissing FTCA claims based on "family separation," holding, in part, "to the extent Plaintiffs . . . assert that the Constitution itself furnishes a nondiscretionary standard . . . such claim is jurisdictionally barred"). Thus, the Court should dismiss Plaintiffs' tort claims to the extent that it views them as constitutional claims. *See B.A.D.J.*, 2022 WL 11631016, at *5 (holding "family separation" claims based on due process violations are precluded because plaintiffs "should not be able to evade the FTCA's exclusion of constitutional torts by labeling them negligence, IIED, and loss of consortium").[10]

---

[10] The United States believes that dismissal of Plaintiffs' FTCA claims is warranted to the extent that they seek recovery for constitutional harms but notes that other lower courts have issued non-binding decisions to the contrary. *See Nunez Euceda,*

### E. Plaintiffs' Claims Are Barred Because the FTCA Does Not Authorize Systemic Tort Claims Against the Government.

Plaintiffs' FTCA claims are barred because they allege systemic claims rather than claims based on direct liability. The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain torts committed by federal employees acting within the scope of their employment. *Lichtman v. United States*, 316 F. App'x 116, 120 (3d Cir. 2008) (citing 28 U.S.C. § 1346(b)). The plain language of 28 U.S.C. § 1346(b) requires a plaintiff to establish that the conduct of individual government employee(s) caused harm:

> [D]istrict courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of *any employee of the Government while acting within the scope of his office or employment . . .*

(emphasis added).

The terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Daniels v. United States*, No. 20-3893, 2021 U.S. Dist. LEXIS 108492, at *6 (E.D. Pa. June 1, 2021) (citing *Rayonier Inc. v. United States*, 352 U.S. 215 (1957)); *see also Adams v. United States*, 420 F.3d 1049, 1052-55 (9th Cir. 2005); *Ochran v. United States*, 117 F.3d 495, 506 (11th Cir. 1997). Hence, a plaintiff cannot assert "systemic" claims or seek to hold the United States directly liable under the FTCA but must instead allege

---

2021 WL 4895748, at *3-*4 (C.D. Cal. Apr. 27, 2021) (rejecting the government's argument that "family separation" FTCA claims should be dismissed because FTCA does not authorize recovery for constitutional torts); *A.E.S.E.*, 2022 WL 4289930, at *14 (D.N.M. Sept. 16, 2022) (same).

34

tortious conduct by individual federal employees, acting within the scope of their employment, for whom the United States has assumed liability under the FTCA. *See, e.g., Lee v. United States*, Civil Action No. 19-08051, 2020 WL 6573258, at \*6 (D. Ariz. Sept. 18, 2020) (applying *Adams* and dismissing claims of "generalized negligence" asserted against staff and employees of federal institutions "as a whole" for lack of jurisdiction).

Recently, in *Lee v. United States*, Civil Action No. 19-8051, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020), the court applied *Adams* in an FTCA action based on the "generalized negligence" of various government employees, contractors, and agents responsible for operating a prison facility. *Id.* at \*6. Applying *Adams*, the court dismissed plaintiff's FTCA claims, holding that the "FTCA applies only to 'the negligent or wrongful act or omission of *any employee of the United States* while acting within the scope of his office or employment,' not to generalized theories of negligence asserted against the staff and employees of federal institutions as a whole." *Id.* (emphasis in original).

Here, as in *Lee*, Plaintiffs broad-brush allegations amount to systemic and institutional tort claims against the United States. Throughout the Complaint, Plaintiffs attribute the alleged tortious conduct to the government as a whole, rather than specific tortious conduct on the part of specific federal employees for whom the United States must assume liability. *See, e.g.*, Compl. ¶¶ 1-8, 21, 52, 56-58, 60, 66-67, 71, 73-74, 80, 96, 147, 185-186, 189, 193, 200. The FTCA's limited waiver of sovereign immunity does not encompass such "systemic," institutional tort claims or

"generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Lee*, 2020 WL 6573258, at *6. Thus, the Court should dismiss Plaintiffs' FTCA claims based on systemic liability. *See F.R.*, 2022 WL 2905040, at *4 (holding court lacks subject matter jurisdiction over "family separation" claims based on "the alleged tortious misconduct of the relevant agencies writ large" and only allowing claims based on alleged tortious misconduct of individual employees to proceed); *B.A.D.J.*, 2022 WL 11631016, at *5 (same); *E.S.M.*, 2022 WL 11729644, at *2 (same); *Fuentes-Ortega*, 2022 WL 16924223, at *5 (same).[11]

### F. All FTCA Claims Relating to M.S.C.C.'s Placement at Abbott House are Barred by the Independent Contractor Exception.

Under the FTCA, the United States may only be liable for the unlawful conduct of government employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b). The United States is not liable for the acts of an independent contractor. *See* 28 U.S.C. § 2671; *see also Norman v United States*, 111 F.3d 356, 357 (3d Cir. 1997) ("'Federal agency' and 'Employee of the government' do not include any contractor with the United States."). This exception to the government's liability applies unless the United States "controls the physical conduct of the contractor in performance of the contract." *See Logue v. United States*, 412 U.S. 521, 527 (1973). In other words, "the question here is . . . whether [the contractor's] day-to-day operations are supervised by the Federal Government." *United States v. Orleans*, 425 U.S. 807,

---

[11] The United States believes that dismissal of Plaintiffs' FTCA claims based on systemic liability is warranted but notes that another lower court has issued a non-binding decision to the contrary. *See Wilbur P.G. v. United States*, 2022 WL 3024319, at *6 (rejecting government's argument that claims based on family separations were general, systemic tort claims prohibited under the FTCA).

815 (1976). "Only convincing proof that a federal employee exercised supervisory control over an independent contractor's daily operations will subject the Government to liability for the negligence of its contractor." *Courts v. United States*, No. 15-7303-MLC, 2016 WL 4521687, at *3 (D.N.J. Aug. 29, 2016).

Here, as Plaintiffs acknowledge, M.S.C.C. was placed at a residential facility, Abbott House, run by contractors, not by the federal government. *See* Compl. ¶ 115; *see also* De La Cruz Decl. ¶¶ 6-9 and Ex. A. The day-to-day operation of this facility was managed by Abbott House, acting as a contractor. All allegations regarding the conditions that M.S.C.C. experienced while placed at Abbott House criticize the actions of contractors. Plaintiffs have pleaded no federal government actor directing these actions, and indeed there is none. Thus, Plaintiffs' allegations concerning M.S.C.C.'s care at Abbott House (and any other facilities run by contractors[12]) are barred by the independent contractor exception, and the Court should dismiss any claims related to those allegations.[13]

### G. Plaintiffs Fail to State a Claim Upon Which Relief Can be Granted Under Applicable State Law.

In analyzing FTCA claims, the Court must first determine what state law

---

[12] Additionally, to the extent that Plaintiffs bring claims based on B.Y.C.C.'s treatment at facilities run by contractors, and not the federal government, the independent contractor exception bars those claims, and the Court must dismiss them.

[13] The United States believes that dismissal is warranted based on the independent contractor exception to the FTCA but notes that another lower court has issued a decision to the contrary. *See A.P.F.*, 492 F.Supp.3d at 998 (holding independent contractor exception did not apply because plaintiffs' causes of action arose from the government's separation of plaintiff families).

applies to those claims. *See, e.g., Gould Elecs., Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000) (applying a choice of law analysis). Generally, the applicable law is the law of the place where the alleged tortious act or omission occurred. 28 U.S.C. § 1346(b). The court uses the choice-of-law provisions from that state to determine what substantive law applies. *See Richards v. United States*, 369 U.S. 1, 8-10 (1962).

Here, the parties do not dispute that Texas law applies to Plaintiffs' claims. *See* Compl. ¶ 212.

### 1. All of Plaintiffs' FTCA Claims Fail Under Texas Law Because They Challenge Privileged Conduct

Under Texas law, conduct that may otherwise give rise to liability is not considered tortious if the conduct is privileged. *See Hinojosa v. City of Terrell*, Tex., 834 F.2d 1223, 1231 (5th Cir. 1988) (citing Restatement Case 5:21-cv-00469-EGS Document 52-1 Filed 03/28/22 Page 37 of 55 (Second) of Torts § 10, and W. Keeton, Prosser and Keeton on Torts 16 (5th ed. 1984)). This principle applies here because the challenged conduct— the detention and separation of B.Y.C.C. from her son while she was assessed for potential prosecution—was privileged under Texas law and federal immigration statutes.

It is well established that in FTCA cases, the United States is entitled to invoke state law privileges. *See Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009) (finding that Texas' civil privilege defense statute applied in FTCA action alleging assault by federal officer); *McElroy v. United States*, 861 F. Supp. 585 (W.D. Tex. 1994) ("[T]he United States may invoke any defenses available to individual law enforcement officers under Texas law."); *Hernandez v. United States*, No. 1:17-CV-

00087, 2018 WL 4103015, at \*3-4 (S.D. Tex. July 2, 2018) ("[T]he Government may look to state law privileges as a defense to FTCA claims").

A leading case on this point is *Caban v. United States*, where the INS detained the plaintiff when he arrived at JFK airport from the Dominican Republic because he was not able to satisfactorily show that he was an American citizen. 728 F.2d 68 (2d Cir. 1984). The INS ultimately determined that the plaintiff was an American citizen, and he was released after being detained for six days. He sued under the FTCA for, *inter alia*, false imprisonment. New York's statutory definition of false imprisonment provided that false imprisonment does not occur if "the confinement was . . . otherwise privileged." *Caban*, 728 F.2d at 72. The Second Circuit held that the INS agents' conduct was "otherwise privileged" because a federal immigration statute provided that a person entering the United States who cannot clearly show his right to entry "'shall be detained for further inquiry.'" *See* id. at 71 (quoting 8 U.S.C. § 1225(b) (1976)).

Privileges apply to public officials performing their official functions with legal authority and courts have applied these privileges in FTCA cases. In a case affirmed by the United States Court of Appeals for the Fifth Circuit, the district court in *Tovar v. United States* considered the United States' liability under the FTCA for false imprisonment claims raised in an immigration context. Civil Action No. 3:98-cv-1682, 2000 U.S. Dist. LEXIS 5044, at \*23 (N.D. Tex. Apr. 18, 2000), *aff'd* 244 F.3d 135 (5th Cir. 2000). Citing *Caban*, the district court looked to federal law to determine whether the INS agents acted with legal authority. *Id.* at \*18. The district court then held that

the "INS acted under authority of law" because federal immigration statutes authorized the challenged government conduct. *Id.* at *22. Therefore, the privilege applied. *Id.*

Here, the challenged conduct—the detention and separation of B.Y.C.C. from her son while she was assessed for potential prosecution—was authorized by federal law. Accordingly, under *Tovar* and its progeny, the conduct was privileged under Texas law and the United States cannot now be held liable in tort for claims arising from the separation.

### 2. Plaintiffs Fail to State a Claim Under Applicable State Law.

#### i. Intentional Infliction of Emotional Distress

Applicable state law bars Plaintiffs' claims for intentional infliction of emotional distress. Texas has adopted the Restatement (Second) of Torts' definition of this tort, which requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Johnson v. Merrell Dow Pharm., Inc.*, 965 F.2d 31, 33 (5th Cir. 1992).

The separations here, which were caused by lawful detention for potential criminal prosecution, do not meet this definition. Texas courts have long recognized a strong public policy in favor of protecting lawful prosecutions. *See Smith v. Sneed,* 938 S.W.2d 181, 184 (Tex. App. 1997) (collecting cases). In accordance with that public policy, Texas "prohibits a person convicted of a crime from suing another for damages

caused by conviction," including for claims of intentional infliction of emotional distress. *See Jones v. Hyman*, 107 S.W.3d 830, 831-32 (Tex. App. 2003).

Plaintiffs' claim for intentional infliction of emotional distress fails because it is based on law enforcement authorities separating a parent from her child due to the parent's criminal detention for potential prosecution. As a matter of Texas law, the decision to separate and the circumstances surrounding that separation do not meet the level of extreme or outrageous conduct required for intentional infliction of emotional distress. This is especially true where, as here, the separation was consistent with DHS policy and permitted by federal law. Plaintiffs fail to state a claim for intentional infliction of emotional distress under Texas law. Thus, the Court should dismiss this claim.

### ii.   Negligence and Negligent Undertaking

Applicable state law bars Plaintiffs' claims for negligence and negligent undertaking. Negligence arises from a defendant's failure to take necessary care. To state a claim for negligence under Texas law, a plaintiff must plead "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021); *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). To prevail on a negligent undertaking claim under Texas law, the plaintiff must prove that (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; (3) the defendant's performance increased the plaintiff's risk of harm; and (4) the defendant's failure to exercise reasonable care caused physical harm. *See*

41

*Holcombe v. United States*, 516 F. Supp. 3d 660, 668 (W.D. Tex. 2021) (citing *Torrington v. Stutz*, 46 S.W.3d 829, 838-839 (Tex. 2000)). "The critical inquiry in a negligent-undertaking theory is whether the defendant undertook to protect another individual, which 'requires the imposition of a duty where one otherwise would not exist.'" *See Vance v. Hurst Joint Venture LP*, 657 S.W. 3d 141, 156 (Tex. App. 2022); *see also Nall v. Plunket*, 404 S.W. 3d 552, 555-556 (Tex. 2013).

Here, Plaintiffs fail to identify a duty that was breached. Their negligence and negligent undertaking claims are grounded in Plaintiffs' separation. But no state, including Texas, requires that law enforcement officials house children with parents that are being detained for potential criminal prosecution. *Cf., Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988) (denying mandamus and holding that the Federal Bureau of Prisons has "no clear duty—nor, indeed, any duty" to transfer a prisoner to a facility near his wife).

Federal law enforcement officials detained B.Y.C.C. for potential criminal prosecution because she had entered the country without authorization. That detention was consistent with DHS policy and federal law and necessitated separation of B.Y.C.C. from M.S.C.C. The federal government has no duty to refrain from enforcing federal law and, thus, cannot breach any state-law duty by doing so.

Plaintiffs' negligence and negligent undertaking claims suffer from an additional deficiency under Texas law. Texas law requires that a plaintiff show physical injury to succeed on such claims. *See Temple-Inland Forest Prods Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999); *see also Pelayo v. 24 Hour Fitness USA, Inc.*,

42

No. 19-1747, 2019 WL 6686702, at *4 (S.D. Tex. Nov. 21, 2019) ("[A] plaintiff may only succeed on its negligent undertaking claim in situations where bodily injury or physical injury to property belonging to the party is involved."). And Texas law distinguishes between physical injuries (cognizable) and physical manifestations of emotional distress (not cognizable). *See Chapa v. Traciers & Assocs.*, 267 S.W.3d 386, 397 (Tex. App. 2008). In *Villafuerte*, the district court held that the detainee's alleged pain from prolonged exposure to extremely low temperatures, sleep deprivation, hunger, stomach aches, headaches, weakness, dizziness, and symptoms of trauma, depression, and anxiety were not physical injuries. *See Villafuerte v. United States*, No. 7:16-CV-619, 2017 WL 8793751, at *10-11 (S.D. Tex. Oct. 11, 2017). Rather, the court held that these were mental and emotional harms insufficient to support a negligence claim. *See id.*; *see also Pelayo*, 2019 WL 6686702, at *4 (dismissing the plaintiff's negligent undertaking claim because her injuries "involve[d] only mental anguish").

Here, Plaintiffs allege no physical injuries. Rather, they allege emotional distress and "physical manifestations" of that emotional distress similar to what the court rejected in *Villafuerte*. *See* Compl. ¶¶ 147-162. These alleged injuries are insufficient to state a claim under Texas law, and the Court should, therefore, dismiss Plaintiffs' negligence and negligent undertaking claims.

### iii.    Negligent Supervision

Although the Supreme Court of Texas has not defined the elements of a negligent supervision claim, "Texas courts have generally treated them as ordinary negligence claims." *Almanzar v. Eaglestar*, No. 20-117, 2021 WL 7184209, at *10

(W.D. Tex. Dec. 21, 2021). Therefore, like their other negligence claims, Plaintiffs' negligent supervision claim similarly fails.

To establish a claim of negligent supervision, a plaintiff must show that "(1) the defendant owed him a legal duty to supervise its employees, (2) defendant breached that duty, and (3) that breach proximately caused his injuries." *See, e.g.*, *Houston v. Gonzales*, No. 16-986, 2016 WL 7335683, at *6 (W.D. Tex. Dec. 16, 2016); *see also Knight v. City Streets, L.L.C.*, 167 S.Wd.3d 580, 584 (Tex. App. 2005). "Negligent hiring, training, supervision, and retention claims are 'simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *See Doe v. YUM! Brands, Inc.*, 639 S.W.3d 214, 225 (Tex. App. 2021). A negligent supervision claim "is not dependent upon a finding that the employee was acting within the scope of his employment." *See Garrett v. Great W. Distrib. Co. of Amarillo*, 129 S.W.3d 797, 803-804 (Tex. App. 2004). That is, the basis for liability rests on the employer's "own negligence in omitting to supervise an incompetent employee whom the [employer] knows or should have known through the exercise of reasonable care was incompetent and thereby created an unreasonable risk of harm to others." *See id.*; *Holcombe v. United States*, 38 F. Supp. 3d 777, 806 (W.D. Tex. 2019) ("An employer has a duty to adequately hire, train, and supervise employees and [t]he negligent performance of those duties may impose liability on an employer if the complainant's injuries are the result of the employer's failure to take reasonable precautions to protect the complainant from misconduct of its employees." (internal quotation marks omitted)). Relatedly, "[t]o prevail on a claim for negligent hiring or

44

supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." *See Holcombe*, 38 F. Supp. 3d at 806.[14]

The Court should dismiss Plaintiffs' negligent supervision claim for several reasons. First, as discussed above, multiple courts have specifically held that decisions relating to the hiring, training, and supervision of employees inherently involve the kind of judgment that the discretionary function exception was meant to protect. *See M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020) (collecting cases); *see also Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception."); *Brown v. United States*, No. 17-1551, 2018 WL 741731, at *4 (E.D. Pa. Feb. 7, 2018); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 819-20, (1984) ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."); *Chapman v. United States*, 480 F. Supp.3d 601, 611 (M.D. Pa. 2020) (supervision of postal employee involves discretion and policy considerations); *see also Alinsky v. United States*, 415 F.3d 639, 647-48 (7th Cir. 2005)

---

[14] It is unclear whether Texas recognizes a separate cause of action for "negligent supervision." *See Castillo v. Gared, Inc.*, 1 S.W.3d 781, 784-785 (Tex. App. 1999) (noting that a claim for negligent supervision is often linked with a claim for negligent hiring and refusing to recognize a separate cause of action for negligent supervision).

(indicating that for FTCA claims alleging negligent supervision, a plaintiff must identify a specific and mandatory policy governing the manner of supervision and training); *Molchatsky v. United States*, 778 F. Supp. 2d 421, 435 (S.D.N.Y. 2011) ("In the absence of allegations demonstrating relevant mandatory obligations, the Court presumes that the challenged acts and omissions are discretionary and not amenable to suit.").

Second, the Court should dismiss Plaintiffs' negligent supervision claim because "Texas law does not allow an employer to be held both vicariously liable for an employee's negligence and directly liable for negligent . . . supervision." *See Almanzar*, 2021 WL 7184209, at *7. "Texas courts generally hold that a plaintiff cannot recover from an employer for the same incident of employee misconduct under theories of both vicarious liability and negligent entrustment or hiring." *See id.* at *8 (citing *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 654 (Tex. App. 2002)). Federal courts have applied this rule to "causes of action similar to negligent entrustment, such as . . . negligent supervision." *See id.* (collecting cases).[15] Therefore, Plaintiffs negligent supervision claim, which is a claim based on an employer's own alleged negligence and not an employee's negligent conduct, is duplicative and should be dismissed.

Third, in order to establish that the United States was negligent in supervising its employees, Plaintiffs must prove that those employees committed an actionable

---

[15] If a plaintiff alleges that an employer was grossly negligent, the negligent supervision cause of action would be an "independent and separate ground of recovery." *See Almanzar*, 2021 WL 7184209, at *7.

tort against them. *See Holcombe*, 38 F. Supp. 3d at 806. For the reasons discussed in this Brief, Plaintiffs have failed to do so, and their negligent supervision claim should, likewise, be dismissed.

Fourth, like a claim for negligence, Texas law requires Plaintiffs to plead a physical injury caused by an alleged breach of duty to establish a negligent supervision claim. *See Verinakis v. Medical Profiles, Inc.*, 987 S.W.2d 90, 97-98 (Tex. App. 1998) (dismissing the plaintiff's negligent supervision and negligent hiring claims because he pleaded only "physical and mental ailments resulting from his emotional distress" and no physical injury). Because Plaintiffs have only pleaded physical and mental ailments resulting from their alleged emotional distress, they cannot support a negligent supervision claim.

Finally, Plaintiffs allege in a conclusory fashion that the United States "negligently supervised" its employees because it "knew or should have known" that its failure to "appropriately" do so "would likely result in harm to Plaintiffs." *See* Compl. ¶¶ 225-230. Plaintiffs fail to allege specific facts to plausibly support that the United States breached any duty to supervise its employees, especially when federal law and DHS policy permitted the separation of Plaintiffs. Indeed, other than the "cause of action" section of their complaint containing conclusory allegations, there are no allegations concerning any federal employee's "supervision" of subordinate employees. *See id.* Plaintiffs' allegations do not pass muster under *Twombly*. Thus, the Court should dismiss Plaintiffs' negligent supervision claim.

### iv.    Tortious Interference with the Parent-Child Relationship

Texas law does not recognize a cause of action for tortious interference with the parent-child relationship. *See Helena Labs Corp. v. Snyder*, 886 S.W.2d 767, 768 (Tex. 1994) ("This Court has never recognized an independent cause of action for negligent interference with the familial relationship.").

The Texas Supreme Court recognized a cause of action for child abduction, but only in cases tried before September 1, 1983. *See also Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986); *see also Gulf C. & S.F. Ry. Co. v. Redeker*, 2 S.W. 527, 528 (Tex. 1886) (holding that a father has a tort cause of action when someone entices away or harbors his minor child). The *Silcott* court held that while plaintiffs after September 1, 1983 lack a cause of action for child abduction, they could pursue the statutory claim of interference with child custody, but that statute has since been repealed. *See id.*[16]

This Court need not, and should not, expand Texas law to create a claim for tortious interference with the parent-child relationship when no such claim exists. Accordingly, the Court should dismiss Plaintiffs' claim for tortious interference with the parent-child relationship.

---

[16] There are a few instances in which Texas courts have made a passing reference to the "tort of child abduction," but none of those cases involve claims regarding child abduction. *See Temple-Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999); *Motor Exp., Inc. v. Rodriguez*, 925 S.W.2d 638, 639 (Tex. 1996); *Fitzpatrick v. Copeland*, 80 S.W.3d 297, 302 n.2 (Tex. App. 2002); *Hinote v. Rio Grande Surgery Ctr. Assocs., L.L.P.*, No. 13-99-489, 2000 WL 35729677, at *9 (Tex. App. 2000).

### v.    Abuse of Process

Applicable state law bars Plaintiffs' claim for abuse of process. Without specifying the legal process in question, Plaintiffs allege that "federal officers, officials, and employees . . . abused legal process when they wielded their authority under the Immigration and Nationality Act, TVPRA, and *Flores* Agreement against Plaintiffs to improperly, perversely, and illegally separate them for 42 days." Compl. ¶ 246. They further allege that government actors "abused legal process when they designated [M.S.C.C.] as an 'Unaccompanied Alien Child' ('UAC') in order to effectuate his unlawful separation and separate detention from his mother." *Id.* Plaintiffs do not plead facts sufficient to support the elements of their abuse of process claim and the Court should dismiss it.

Abuse of process is the malicious use or misapplication of process to accomplish an ulterior purpose. *Hunt v. Baldwin*, 68 S.W. 3d 117, 129 (Tex. App. 2001). To state a claim for abuse of process under Texas law, one must allege: 1) the defendant made an illegal, improper, or perverted use of process, a use neither warranted nor authorized by the process; 2) the defendant had an ulterior motive or purpose in exercising the illegal, perverted, or improper use of the process; and 3) the plaintiff was damaged as a result. *Id.*; *Bossin v. Towber,* 894 S.W.2d 25, 33 (Tex. App. 1994). "'Process' is traditionally defined as the writ, summons, mandate, or other process which is used to inform the defendant of the beginning of judicial proceedings against him and to compel his appearance in court." *Kjellvander v. Citicorp*, 156 F.R.D. 138, 142 (S.D. Tex. 1994) (citing *Snyder v. Byrne*, 770 S.W.2d 65, 69 (Tex. App. 1989)). "In

a narrow sense, process refers to individual writs issued by the court during or after judicial proceedings." *Kjellvander*, 156 F.R.D. at 142.

Plaintiffs have not pled facts demonstrating that any federal employee "made an illegal, improper, or perverted use of [] process, a use neither warranted nor authorized by the process." *Hunt*, 68 S.W.3d at 129. Plaintiffs do not even allege what legal process was purportedly abused and thus their claim fails to satisfy the first element. *RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121, 133-34 (Tex. App. 1997) (plaintiffs were not a party to an original action and could not meet the first element for the claim). Plaintiffs concede that B.Y.C.C. was not referred for prosecution. Compl. ¶ 54. *See RRR Farms*, 957 S.W. 2d at 133 ("in every decision examining an abuse of process claim, the plaintiff bringing the claim was the defendant in the original proceeding").

To the extent Plaintiffs claim that B.Y.C.C. was wrongfully separated from M.S.C.C. by designating him an "Unaccompanied Minor," this does not sufficiently allege that there was a legal process that was abused. Compl. ¶ 54-55. "Process" relates to an issuance "under judicial imprimatur mandating action or inaction." *Scout Energy Mgmt., LLC v. Indian Springs Cattle Co., LLC*, Civil Action No. 07-21-00031, 2021 WL 5150995, at *5 (Tex. App. Nov. 5, 2021) (affirming dismissal of suit where there was no "process" as the alleged action did not involve a court-issued directive); *see also In re Wilson*, 610 B.R. 255, 274 (Bankr. N.D. Tex. 2019) (dismissing abuse of process claim in part because "no 'process' is identified"); *Kjellvander*, 156 F.R.D. at 142 (where criminal proceedings were not instituted against plaintiffs after

their arrest and release, there was an "inadequate factual basis for an abuse of process claim under Texas law"). Plaintiffs allege no such judicial mandate here and, thus, they do not meet the first element for an abuse of process claim. *See E.L.A. v. United States*, Civil Action No. 20-1524, 2022 WL 2046135, at *6 (W.D. Wash. June 3, 2022) (dismissing claim for abuse of process under Texas law in family separation case because plaintiffs failed to state the first element because alleged wrongful purpose to designate the minor as unaccompanied did not constitute improper use of process).

Plaintiffs also fail to state a claim because they allege that the government "deliberately designed and administered" a policy for an improper purpose—not that any process was improperly used. Compl. ¶ 1. Implicit in an abuse of process claim is that the process in question must have been improperly used *after* it was issued—not that "wrongful intent or malice caused the process to be issued initially." *Bossin*, 894 S.W.2d at 33; *see also RRR Farms*, 957 S.W.2d at 133 ("The critical aspect of this tort is the improper use of the process after it has been issued."). In other words, the original issuance of legal process was justified, but the process itself was subsequently used for a purpose for which it was not intended. *Hunt*, 68 S.W.3d at 130 (concluding that use of a false affidavit and false writ of execution did not support a claim for abuse of process). The tort is characterized by a misuse of the power of the judiciary by a litigant with a malicious motive that results in damages. *See Roe v. United States*, 839 F. App'x 836, 846-47 (5th Cir. 2020). When the process is used for the intended purpose, even though allegedly accomplished for an ulterior motive,

there is not an abuse of process. *Hunt*, 68 S.W.3d at 130. Here, as discussed above, Plaintiffs have not alleged any specific process was issued, but even if they have, they have not alleged that it was improperly used *after* it was issued where their allegations are that the government deliberately issued its policy.

Nor do Plaintiffs allege that there was coercive use of any process sufficient to state a claim for abuse of process under Texas law. "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. App. 1965). "There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." *Id.* The process is used to "compel[] a *party* to do a collateral thing which he would not otherwise be compelled to do." *RRR Farms*, 957 S.W.2d at 133 (quoting *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W. 2d 377, 379 (Tex. App. 1989)) (emphasis in original).

Plaintiffs do not allege any "coercive use" of process. *See RRR Farms*, 957 S.W. 2d at 134. Indeed, they allege that the separation was the government's intent—not that it was used to obtain some collateral advantage, such as surrender of property or payment of money. Compl. ¶ 1. Plaintiffs fail to state a claim for abuse of process under Texas law and the Court should dismiss the claim.

### vi.    Assault and Battery

Plaintiffs fail to state a claim for assault and battery under Texas law.[17] Plaintiffs allege the United States "intended to cause a reasonable apprehension of imminent and harmful contact and made intentional and harmful or offensive contact" with them. *See id*. ¶ 252. Specifically, Plaintiffs allege that "investigative or law enforcement officers" committed assault and battery when they detained B.Y.C.C. and separated M.S.C.C., which caused them to injury. *Id.* ¶ 255-56.

Battery under Texas common law requires: 1) a harmful or offensive contact and 2) with a plaintiff's person. *Carter v. Diamond URS Huntsville, LLC*, 175 F.Supp.3d 711, 741 (S.D. Tex. 2016). The elements of assault are 1) apprehension and 2) an immediate battery. *Id.* The Texas Penal Code § 22.01(a) "joins the two common law torts under its definition of 'assault.'" *Carter*, 175 F. Supp. 3d at 741 (quoting *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014). "A person commits assault under the Texas Penal Code if the person intentionally, knowingly, or recklessly causes bodily injury to another, intentionally or knowingly threatens another with imminent bodily injury, or intentionally or knowingly causes physical contact when the person knows or should reasonably believe the other will regard such contact as offensive or provocative." *Culver v. Culver*, 360 S.W.3d 526, 533 (Tex. App. 2011) (citing Tex. Penal Code Ann. § 22.01). And under Texas law, "[t]he definition of assault is the same, whether in a civil or criminal" action. *Rogers v. Peeler*, 146 S.W.3d

---

[17]  To the extent that Plaintiffs' assault and battery claims are asserted against non-law-enforcement personnel, the Court lacks subject matter jurisdiction over those claims, as they are excepted from the United States' waiver of sovereign immunity under the FTCA. *See* 28 U.S.C. § 2680.

765, 769 (Tex. App. 2004). "As a result, a number of civil courts mix [assault and battery] together under the term 'assault.'" *Carter*, 175 F. Supp. 3d at 741. However, though related, they are "conceptually distinct." *Id.* (quoting *Gordon*, 434 S.W. 3d at 589).

However, Texas courts recognize that, while the actions when detaining someone "necessarily involve a battery," a claim for battery "may not be actionable because of privilege." *Carter*, 175 F. Supp. 3d at 741 (citing *Gordon*, 434 S.W.3d at 594). Texas law specifically authorizes the use of force by peace officers. *Id.* (citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W. 3d 575, 579 (Tex. 2001)). Texas Penal Code § 9.51(a) provides that: "[a] peace officer . . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest . . . if: (1) the actor reasonably believes the arrest or search is lawful . . . ; and (2) before using force, the actor manifests his purpose to arrest or search and identifies himself as a peace officer . . . unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested." DHS agents are considered "peace officers" for purposes of § 9.51. *See Mendez v. Poitevent*, 823 F.3d 326, 335 (5th Cir. 2016) (citing *Davila v. United States*, 713 F.3d 248, 261 (5th Cir. 2013)). And DHS agents are authorized to detain non-citizens who enter or attempt to enter the United States in violation of law. *See* 8 U.S.C. § 1357.

Here, Plaintiffs' claims of assault and battery rest upon the purported actions of law enforcement during their detention and separation. Plaintiffs concede that

they entered the United States illegally, that CBP officials detained B.Y.C.C. as a result, and that they separated her from M.S.C.C. Compl. ¶¶ 92, 96, 101, 108. The alleged harm stems from the federal government's decision to enforce federal immigration laws and hold B.Y.C.C. in custody pending immigration proceedings, resulting in M.S.C.C.'s placement in the care and custody of ORR. The detention of B.Y.C.C. and resulting separation from M.S.C.C. was authorized, and Plaintiffs do not allege unreasonable use of physical force by law enforcement. As DHS agents were authorized by federal law to detain noncitizens in this circumstance and, moreover, in view of the privilege afforded peace officers under Texas law to execute lawful detentions, Plaintiffs do not state an actionable claim for assault or battery. The Court should dismiss the claim.

### vii.   Breach of Fiduciary Duty

The Court should dismiss Plaintiffs' breach of fiduciary duty claim because they, again, have failed to plausibly plead the breach of any duty. To state a claim for breach of fiduciary duty, a plaintiff must plausibly plead (1) a fiduciary relationship between the plaintiff and the defendant; (2) the defendant breached his or her fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in an injury to the plaintiff or a benefit to the defendant. *See Adam v. Marcos*, 620 S.W.3d 488, 507 (Tex. App. 2021). Plaintiffs can establish neither a fiduciary relationship nor a breach of a fiduciary duty.

A fiduciary relationship takes "two forms":

(1) a formal fiduciary relationship arising as a matter of law, such as between partners or an attorney and a client; and (2) an informal or confidential fiduciary relationship arising from a moral, social,

55

domestic, or merely personal relationship where one person trusts in
and relies on another.

*Estate v. Grogan*, 595 S.W.3d 807, 817 (Tex. App. 2020). A "confidential fiduciary
relationship" may exist where "influence has been acquired and abused or where
confidence has been reposed and betrayed." *See id.* (citing *Gray v. Sangrey*, 428
S.W.3d 311, 316 (Tex. App. 2014). "Whether a confidential relationship exists is
determined from the actualities of the relationship between the persons involved."
*See id.* (internal quotation marks omitted). There are no "hard and fast lines" in
determining the circumstances that give rise to a "confidential fiduciary
relationship," and factors may include "whether the plaintiff relied on the defendant
for support, the plaintiff's advanced age or health, and evidence of the plaintiff's
trust." *See id.* (internal quotation marks and citations omitted). "But a fiduciary
relationship is an extraordinary one and will not be created lightly." *See Smith v.
Deneve*, 285 S.W.3d 904, 911 (Tex. App. 2009).

Here, Plaintiffs assert that as detainees, they "trusted and relied on Defendant
to provide for their safety and well-being while they were in custody, giving rise to a
fiduciary relationship between Plaintiffs and Defendant." Compl. ¶ 258. No Texas
court or court interpreting Texas law has found a fiduciary relationship to exist in
the context presented by this case. Indeed, the United States District Court for the
Eastern District of Texas, applying Texas law, declined to recognize a fiduciary
relationship between law enforcement officers and a pretrial detainee who died after
swallowing a plastic bag of cocaine. *See Surratt v. McClaran*, 234 F. Supp. 3d 815,
833 (E.D. Tex. 2016 ); *Johnson v. Sawyer*, 760 F.Supp. 1216, 1233 (S.D. Tex. 1991)

56

("We have seen no case law to suggest that the concept embraces relations between a citizen and his government . . . ."). Likewise, the Court should not expand Texas law to recognize such a relationship here.

Even if the Court were to find that a confidential fiduciary relationship existed between Plaintiffs and the United States, Plaintiffs have failed to plausibly plead a breach of the United States' duty. Again, the detention of B.Y.C.C. necessitated separation of her from M.S.C.C. The temporary separation of B.Y.C.C. and M.S.C.C. was legal, and the United States did not breach any duty by doing so. Accordingly, the Court should dismiss Plaintiffs' breach of fiduciary duty claim.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By:   /s/ John F. Basiak Jr.
JOHN F. BASIAK JR.
ANGELA E. JUNEAU
SAMANTHA R. D'AVERSA
Assistant United States Attorneys
*Attorneys for the United States*

Dated: March 6, 2023