PHILIP R. SELLINGER
United States Attorney
JOHN F. BASIAK JR.
ANGELA E. JUNEAU
SAMANTHA R. D'AVERSA
Assistant United States Attorneys
402 East State Street, Room 430
Trenton, NJ 08608
John.basiak@usdoj.gov
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| B.Y.C.C. on behalf of herself and on behalf of her minor child, M.S.C.C., <br><br> J.A.L.C. on behalf of himself and on behalf of his minor child, L.L.G., <br><br> R.J.P. on behalf of himself and on behalf of his minor child, O.R.J.J., <br><br><div align="center">*Plaintiffs,*</div><br><div align="center">v.</div><br> UNITED STATES OF AMERICA, <br><br><div align="center">*Defendant.*</div> | Hon. Michael A. Shipp, U.S.D.J. <br><br> Civil Action Nos. 22-06586 (MAS) (DEA) <br> 22-06587 (MAS) (DEA) <br> 22-06588 (MAS) (DEA) <br><br> **Return Date: July 3, 2023** |

---

## UNITED STATES' CONSOLIDATED REPLY BRIEF
## IN FURTHER SUPPORT OF ITS MOTIONS TO DISMISS UNDER RULES
## 12(b)(1) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

---

On the Brief:

ANGELA E. JUNEAU
SAMANTHA R. D'AVERSA
Assistant United States Attorneys

**TABLE OF CONTENTS**

I.      THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS.......... 1

   A.   Plaintiffs' Systemic Tort Claims Are Barred Under the Federal Tort Claims
        Act.......................................................................................................... 1

   B.   The Lack of a Private Person Analog Bars Plaintiffs' Claims ........................ 2

   C.   Plaintiffs' Constitutional Claims Are Barred Under the FTCA....................... 3

   D.   The Discretionary Function Exception Bars Plaintiffs' Claims. ...................... 4

   E.   Plaintiffs' Independent Contractor Claims Fall Outside the FTCA .............. 12

II.     PLAINTIFFS HAVE FAILED TO SUFFICIENTLY PLEAD THEIR TORT
CLAIMS UNDER TEXAS STATE LAW.................................................................... 13

   A.   Texas Law Governs Plaintiffs' Tort Claims .................................................... 13

   B.   Texas Law Enforcement Privileges Shield Defendant from Plaintiffs' Claims
        .................................................................................................................. 14

   C.   Plaintiffs Fail to State a Claim Under Texas Law. ...................................... 18

        1.   Intentional Infliction of Emotional Distress................................. 18

        2.   Negligence, Negligent Undertaking, and Negligent Supervision.............. 19

        3.   Negligent Infliction of Emotional Distress ................................. 25

        4.   Breach of Fiduciary Duty ........................................................... 26

        5.   Child Abduction and Tortious Interference with the Parent-Child
             Relationship ............................................................................ 26

        6.   Abuse of Process ....................................................................... 27

        7.   Assault and Battery.................................................................... 28

        8.   Loss of Consortium ................................................................... 29

III.    CONCLUSION .................................................................................... 30

i

## <u>TABLE OF AUTHORITIES</u>

***Cases***

*A.E.S.E. v. United States,*
    No. 21-0569, 2022 WL 4289930 (D.N.M. Sept. 16, 2022) ...................................... 11

*A.F.P. v. United States,*
    No. 21-780, 2022 WL 2704570 (E.D. Cal. July 12, 2022)................................. 19, 20

*Antonelli v. Crow,*
    No. 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012) ..................................... 11

*Applebaum v. Nemon,*
    678 S.W.2d 533 (Tex. App. 1984)........................................................................... 20

*B.A.D.J. v. United States,*
    No. 21-00215, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022)............................... 1, 3

*Baer v. United States,*
    722 F.3d 168 (3d Cir. 2013).................................................................................... 4

*Berger v. Weber,*
    303 N.W.2d 424 (Mich. 1981)................................................................................ 30

*Brown v. Brown,*
    61 N.W.2d 656 (Mich. 1953)................................................................................. 27

*Bultema v. United States,*
    359 F.3d 379 (5th Cir. 2004) ................................................................................. 11

*C.D.A. v. United States,*
    No. 21-469, 2023 WL 2666064 (E.D. Pa. Mar. 28, 2023) ............................... passim

*Caban v. United States,*
    728 F.2d 68 (2d Cir. 1984)..................................................................................... 16

*Carter v. Diamond URS Huntsville, LLC,*
    175 F. Supp. 3d 711 (S.D. Tex. 2016) ................................................................... 17

*City of Tyler v. Likes,*
    962 S.W.2d 489 (Tex. 1997) ................................................................ 21, 22, 23, 24

*D.A. v. United States,*
    No. 22-00295, 2023 WL 2619167 (W.D. Tx. Mar. 23, 2023) ........................... 5, 6, 26

*Dalehite v. United States,*
    346 U.S. 15 (1953) ................................................................................ 5

*Davila v. United States,*
    713 F.3d 248 (5th Cir. 2013) .............................................................. 29

*Department of Homeland Security v. Regents of the University of California,*
    140 S. Ct. 1891 (2020) ........................................................................ 9

*E.L.A. v. United States,*
    No. 20-1524, 2022 WL 2046135 (W.D. Wash. June 3, 2022) ..................... 21, 27, 28

*E.S.M. v. United States,*
    No. 21-00029, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022) ...................... 2

*F.R. v. United States,*
    No. 21-339, 2022 WL 2905040 (D. Ariz. July 22, 2022) ........................... 1

*Fed. Deposit Ins. Corp. v. Meyer,*
    510 U.S. 471 (1994) ............................................................................ 3

*Fitzpatrick v. Copeland,*
    80 S.W.3d 297 (Tex. App. 2002) ........................................................ 22, 24

*Fuentes-Ortega v. United States,*
    No. 22-00449, 2022 WL 16924223 (D. Ariz. Nov. 14, 2022) .................... 2

*Garza v. United States,*
    881 F. Supp. 1103 (S.D. Tex. 1995) .................................................... 25

*Gaubert v. United States,*
    499 U.S. 315 (1991) ............................................................................ 4

*Hanson v. United States,*
    712 F. Supp. 2d 321 (D.N.J. 2010) .................................................... 15

*Hart v. Danak,*
    No. 280975, 2010 WL 1404431 (Mich. Ct. App. Apr. 8, 2010) ............... 29

*Hassan v. City of N.Y.,*
    804 F.3d 277 (3d Cir. 2015) ................................................................ 8

*Helbing v. Hunt,*
    402 S.W.3d 699 (Tex. App. 2012) ...................................................... 20

*Hernandez v. United States,*
    No. 17- 00087, 2018 WL 4103015 (S.D. Tex. July 2, 2018) ................... 15

*Hill v. Kimball,*
    76 Tex. 210, 13 S.W. 59 (1890) .................................................................. 22

*Hoffman-La Roche, Inc. v. Zeltwanger,*
    144 S.W.3d 438 (Tex. 2004) .................................................................. 18

*Hoskin v. Detroit Med. Ctr.,*
    No. 357265, 2022 WL 4391027 (Mich. App. Sept. 22, 2022) .................................. 25

*Houston Elec. Co. v. Dorsett,*
    145 Tex. 95, 194 S.W.2d 546 (1946) .................................................................. 22

*Huff v. Neal,*
    555 F. App'x 289 (5th Cir. 2014) .................................................................. 11

*Hunt v. Baldwin,*
    68 S.W. 3d 117 (Tex. App. 2001) .................................................................. 17

*K.O. v. United States,*
    No. 20-12015, 2023 WL 131411 (D. Mass. Jan. 9, 2023) .................................. 6, 29

*Lee v. United States,*
    No. 19-08051, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) .................................. 1

*Lineberry v. United States,*
    No. 08-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) .................................. 11

*Martinez v. English,*
    267 S.W.3d 521 (Tex. App. 2008) .................................................................. 18

*McCurdy v. Dodd,*
    352 F.3d 820 (3d Cir. 2003) .................................................................. 6, 7

*McElroy v. United States,*
    861 F. Supp. 585 (W.D. Tex. 1994) .................................................................. 15

*McGowan v. United States,*
    825 F.3d 118 (2d Cir. 2016) .................................................................. 2

*Mendez v. Poitevent,*
    823 F.3d 326 (5th Cir. 2016) .................................................................. 29

*Merando v. United States,*
    517 F.3d 160 (3d Cir. 2008) .................................................................. 4

*Ms. L. v. ICE,*
    415 F. Supp. 3d 980 (S.D. Cal. 2020) .................................................................. 7

v

*Odom v. Wayne Cnty.*,
   760 N.W.2d 217 (Mich. 2008).......................................................................... 19

*Oversmith v. Lake*,
   295 N.W. 339 (Mich. 1940).............................................................................. 27

*Parkway Co. v. Woodruff*,
   901 S.W.2d 434, 443 (Tex. 1995) ................................................................... 22

*Patel v. United States*,
   398 F. App'x 22 (5th Cir. 2010) ...................................................................... 11

*Peña Arita v. United States*,
   470 F. Supp. 3d 663 (S.D. Tex. 2020) ....................................................... 3, 11

*Pers. Adm'r of Mass. v. Feeney*,
   442 U.S. 256 (1979) ........................................................................................... 8

*Powell v. United States*,
   233 F.2d 851 (10th Cir. 1956) ........................................................................... 5

*Rodriguez v. United States*,
   415 F. App'x 143 (11th Cir. 2011).................................................................. 11

*Rodriguez v. United States*,
   No. 22-2845, 2022 WL 19237182 (C.D. Cal. Dec. 22, 2022)......................... 14

*S.E.B.M. v. United States*,
   2023 WL 2383784 (D.N.M. Mar. 6, 2023)............................................ 3, 4, 12, 13

*Salazar v. Collins*,
   255 S.W.3d 191 (Tex. App. 2008)................................................................... 20

*Silcott v. Oglesby*,
   721 S.W.2d 290 (Tex. 1986) ........................................................................... 26

*Simon v. United States*,
   341 F.3d 193 (3d Cir. 2003)............................................................................. 13

*Smith v. Deneve*,
   285 S.W.3d 904 (Tex. App. 2009)................................................................... 26

*Teadt v. Lutheran Church Missouri Synod*,
   603 N.W.2d 816 (Mich. Ct. App. 1999).......................................................... 25

*Tekle v. United States*,
   511 F.3d 839 (9th Cir. 2007) ........................................................................... 15

*TigerSwan, Inc. v. United States,*
   110 Fed. Cl. 336 (Fed. Cl. 2013) ........................................................................ 17

*Tovar v. United States,*
   No. 98-1682, 2000 U.S. Dist. LEXIS 5044 (N.D. Tex. Apr. 18, 2000) .................... 16

*United States v. Barrera-Vasquez,*
   617 F. Supp. 3d 400 (E.D. Va. 2022) .................................................................... 8

*United States v. Lucas-Hernandez,*
   No. 19-24522, 2020 WL 6161150 (S.D. Cal. Oct. 21, 2020) ..................................... 9

*United States v. Olson,*
   546 U.S. 43 (2005) ...................................................................................... 2, 15

*Verinakis v. Medical Profiles, Inc.,*
   987 S.W.2d 90 (Tex. App. 1998)..................................................................... 23, 29

*Villafranca v. United States,*
   587 F.3d 257 (5th Cir. 2009) ........................................................................ 15, 16

*Villafuerte v. United States,*
   No. 16-619, 2017 WL 8793751 (S.D. Tex. Oct. 11, 2017)................................... 23, 24

*Village of Arlington Heights v. Metro. Hous. Develop. Corp.,*
   429 U.S. 252 (1977) ........................................................................................ 9

*Wargelin v. Sisters of Mercy Health Corp.,*
   385 N.W.2d 732 (Mich. Ct. App. 1986) .................................................................. 25

*Washington v. Davis,*
   426 U.S. 229 (1976) ........................................................................................ 8

*Xi v. Haugen,*
   68 F.4th 824 (3d Cir. 2023) ............................................................................... 5

*Statutes*

6 U.S.C. § 279(g)(2) ................................................................................ 5

8 U.S.C. § 1232(b)(3) .............................................................................. 5

28 U.S.C. § 1346(b)(1) ............................................................................ 2

28 U.S.C. § 2680(a) ............................................................................. 4, 5

Tex. Fam. Code § 42.002(a) ................................................................. 26

Texas Penal Code § 9.51(a)................................................................... 28

Texas Penal Code § 22.01(a) ................................................................ 17

## I.   THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS

### A.  Plaintiffs' Systemic Tort Claims Are Barred Under the Federal Tort Claims Act

The United States may not be held liable in tort based on "generalized theories" of tortious conduct asserted against a whole federal institution. *See Lee v. United States*, No. 19-08051, 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020). Yet, Plaintiffs' Complaints do just that, setting forth broad allegations against government agencies as a whole. *See* Def. *J.A.L.C.* Br. at 34-36; Def. *B.Y.C.C.* Br. at 34-36; Def. *R.J.P.* Br. at 34-36. But the Federal Tort Claims Act ("FTCA") does not permit liability based on the creation and adoption of DHS policies because such conduct is not the allegedly negligent or wrongful act of an *individual* employee or employees—as is required under the FTCA—but of the *agency* itself. No court has held the United States liable under the FTCA for the adoption of an agency-wide policy.

In *F.R. v. United States*, which arose on similar facts, the court explained that the plaintiffs' family separation claims, like those asserted here, could "plausibly be read as alleging claims against the United States based either on tortious misconduct of entire agencies or based on tortious misconduct by individual employees working for those agencies." No. 21-339, 2022 WL 2905040, at *4 (D. Ariz. July 22, 2022). The court then held that "[t]o the extent Plaintiffs intend to sue the United States for the alleged tortious misconduct of the relevant agencies writ large, the Court lacks subject-matter jurisdiction." *Id.*

The Court should likewise dismiss Plaintiffs' claims to the extent they arise from the adoption of DHS-wide policies. *See B.A.D.J. v. United States*, No. 21-00215,

2022 WL 11631016, at *5 (D. Ariz. Sept. 30, 2022) (dismissing claims based on alleged tortious misconduct of relevant agencies writ large); *E.S.M. v. United States*, No. 21-00029, 2022 WL 11729644, at *2 (D. Ariz. Oct. 20, 2022) (same); *Fuentes-Ortega v. United States*, No. 22-00449, 2022 WL 16924223, at *5 (D. Ariz. Nov. 14, 2022) (same).

### B.  The Lack of a Private Person Analog Bars Plaintiffs' Claims

Plaintiffs' claims are also barred because there is no private person analog for the challenged conduct. The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Known as the private-person analog requirement of the FTCA, it "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the government's liability under the FTCA in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 45 (2005) (internal quotation marks omitted).

Plaintiffs argue that the private person analog does not apply to these claims, *see* Pls. Opp. at 62 n.91, but the Court should reject that argument. Several courts have relied on the private person analog requirement to bar FTCA claims in the immigration and detainment contexts because the claims involve decisions that no private actor is empowered to make. *See, e.g., McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016) ("Private persons cannot establish facilities to detain other

2

persons—only the government can, either on its own or through a government contractor"); *see also, e.g.*, Def. *J.A.L.C.* Br. at 30-31 (detailing cases).

In *S.E.B.M. v, United States*, for instance, the court dismissed a negligence claim based on facts similar to those alleged here "because a private person in the same circumstances would not be held liable in negligence." No. 21-00095, 2023 WL 2383784, at *8-9 (D.N.M. Mar. 6, 2023). The court also found that there was no state law analog for the plaintiff's intentional infliction of emotional distress ("IIED") claim because a private person in the same circumstances would be acting act pursuant to his discretion to prosecute the plaintiff's father, which rendered plaintiff a UAC and required her separation from her father. *See id.* The Court should follow suit and similarly dismiss Plaintiffs' claims for lack of a private-person analog.

### C.  Plaintiffs' Constitutional Claims Are Barred Under the FTCA

The FTCA does not authorize constitutional tort claims. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477-478 (1994). Yet Plaintiffs' pleadings focus on how the government allegedly violated their constitutional rights. *See, e.g.*, Def. *J.A.L.C.* Br. at 32-33. Plaintiffs concede that "constitutional violations are not cognizable under the FTCA" and urge that their claims arise under state tort law. Nevertheless, to the extent Plaintiffs' tort claims are understood as constitutional claims, the Court should dismiss them. *See B.A.D.J.*, 2022 WL 11631016, at *5 (holding family separation claims based on due process violations are precluded because plaintiffs "should not be able to evade the FTCA's exclusion of constitutional torts by labeling them negligence, IIED, and loss of consortium"); *Peña Arita v. United States*, 470 F. Supp. 3d 663, 688 (S.D. Tex. 2020) (dismissing FTCA claims based on "family

separation," holding, in part, "to the extent Plaintiffs . . . assert that the Constitution itself furnishes a nondiscretionary standard . . . such claim is jurisdictionally barred").

**D. The Discretionary Function Exception Bars Plaintiffs' Claims.**

The FTCA excepts from the United States' waiver of sovereign immunity "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also Gaubert v. United States*, 499 U.S. 315, 325 (1991); *Baer v. United States*, 722 F.3d 168, 175 (3d Cir. 2013). The discretionary function exception ("DFE") bars a claim when (1) the conduct "involves an 'element of judgment or choice,'" and (2) that "the judgment is of the kind that the discretionary function exception was designed to shield." *Merando v. United States*, 517 F.3d 160, 164-165 (3d Cir. 2008) (quoting *Gaubert*, 499 U.S. at 322).

The conduct at issue in this case plainly satisfies *Gaubert*'s two-part test. *See, e.g.*, Def. *J.A.L.C.* Br. at 12-21. The decisions to detain the adult Plaintiffs for potential prosecution rather than releasing them upon apprehension, the determination that the minor Plaintiffs were unaccompanied within the meaning of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), and the decision to detain the adults in secure immigration detention during the pendency of their immigration proceedings rather than releasing them all were discretionary determinations susceptible to policy considerations. *See S.E.B.M.*, 2023 WL 2383784,

4

at *14-17 (finding that the DFE applied to decision to detain parent and separate child).[1]

Nevertheless, Plaintiffs assert that they have overcome the DFE by alleging a violation of a constitutional right. *See* Pls. Opp. at 42-45. Although Defendant maintains that only the violation of a constitutional right that was clearly established at the time of the violation falls outside the DFE, *see, e.g.*, Def. *J.A.L.C.* Br. at 21-22, Defendant acknowledges that since it filed its moving briefs, the United States Court of Appeals for the Third Circuit has held that a plaintiff need not plead a violation of a clearly established constitutional right to overcome the DFE. *See Xi v. Haugen*, 68 F.4th 824, 839-40 (3d Cir. 2023). While Defendant respectfully submits that *Xi* was wrongly decided and reserves its right to appeal an adverse decision on this issue, it acknowledges that *Xi* is binding on this Court. Accordingly, Defendant recognizes

---

[1] The FTCA also shields the United States from liability for "[a]ny claim based upon an act or omission of an employee of the government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). This exception for actions taken while reasonably executing the law was designed in part to prevent the testing "of the legality of statutes and regulations" through a tort action. *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective"). Here, once the discretionary determination to detain the adult Plaintiffs for potential prosecution was made, the children were "unaccompanied," and thus Border Patrol was required to transfer the minors to the custody of the Department of Health and Human Services' Office of Refugee Resettlement ("ORR"). *See* 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b)(3); *see also, e.g.*, Def. *J.A.L.C.* Br. at 18-19. Accordingly, the exception bars any claim based on the act of transferring the minors to ORR custody. *See D.A. v. United States*, No. 22-00295, 2023 WL 2619167, at *11 (W.D. Tx. Mar. 23, 2023) (holding that due care exception applied to Government transferring children to ORR pursuant to 8 U.S.C. § 1232).

that in light of *Xi*, Plaintiffs' claims cannot be dismissed under the DFE, given their allegations that their substantive due process rights were violated.

However, Plaintiffs have not plausibly alleged the violation of any procedural due process or equal protection rights sufficient to overcome the DFE. Moreover, Plaintiffs' claims related to their conditions of confinement are also barred by the DFE.[2]

### 1. Plaintiffs Have Not Plausibly Alleged a Procedural Due Process or Equal Protection Violation.

Plaintiffs fail to plausibly allege a violation of their rights to procedural due process or equal protection sufficient to overcome the DFE.

Plaintiffs argue that their procedural due process rights were violated because they were afforded no opportunity to contest the separation before or after it occurred. *See* Pls. Opp. at 38. Plaintiffs rely on *McCurdy v. Dodd*, 352 F.3d 820, 822 (3d Cir.

---

[2] The Court should also dismiss Plaintiffs' negligent supervision claims because it lacks subject matter jurisdiction over them. *See K.O. v. United States*, No. 20-12015, 2023 WL 131411, at *12 (D. Mass. Jan. 9, 2023); *see also D.A.*, 2023 WL 2619167, at *15-16. Plaintiffs argue that the United States is liable under the FTCA for the distinct torts of both "line employees and their supervisors." *See* Pls. Opp. at 84. But Plaintiffs cannot support such a claim based on the conduct alleged. Plaintiffs center their claims on their separation. As the court reasoned in *K.O.*, to argue that their separations were due to negligent supervision "borders on incoherent" because the separations were pursuant to official policy, and a claim of negligence based on the theory that the "United States was generally negligent for allowing families to be separated" is not cognizable under the FTCA. *See K.O.*, 2023 WL 131411, at *12. Furthermore, Plaintiffs, like the plaintiffs in *D.A.*, have not identified "any mandatory policy that directs precisely how to supervise federal officers and to oversee their treatment of migrants in their custody." *See D.A.*, 2023 WL 2619167, at *15. And, like the court in *D.A.*, this Court should dismiss Plaintiffs' negligent supervision claims as barred by the DFE. *See id.* at *16 ("[S]upervision of subordinates involves the kind of judgment the discretionary function exception was meant to protect." (internal quotation marks omitted)).

2003), for the proposition that parents have a due process right in the alteration, termination, or suspension of a child's custody, but that case is inapposite. Not only did *McCurdy* arise in the context of a father who was excluded from recovering his decedent adult son's wrongful death proceeds, a context that bears little resemblance to the one at bar, but the Third Circuit also declined to recognize a due process right in that familial context. *See id.* at 828-830. After noting that "the Due Process Clause protects certain narrowly defined fundamental rights of parents in their relationships with their children," the Third Circuit pointed out that the Due Process Clause is "not implicated by a *negligent* act of an official" but rather "only protects against deliberate violations of a parent's fundamental rights." *Id.* at 826-828 (emphasis in original). The court ultimately concluded that it would "stretch the concept of due process too far if we were to recognize a constitutional violation based on official actions that were not directed at the parent-child relationship." *Id.* at 830.

Plaintiffs have cited no authority holding that a parent has a procedural due process right to a court hearing prior to their family's separation in the immigration context. *See Ms. L. v. ICE*, 415 F. Supp. 3d 980, 988 (S.D. Cal. 2020) (holding that an approach "based on the context of state child welfare investigations" is not proper in the context of a border setting where the government's "interests extend to securing the Nation's borders and enforcing the Nation's criminal and immigration laws, and all that those interests entail, including detention and parole determinations for migrants taken into custody").

Plaintiffs' argument that the government violated their Fifth Amendment right to equal protection because the policies at issue were directed at the southern border and not at other points of entry, *see* Pls. Opp. at 38, fares no better. "To state an equal-protection claim, Plaintiffs must allege (and ultimately prove) 'intentional discrimination.'" *Hassan v. City of N.Y.*, 804 F.3d 277, 293 (3d Cir. 2015) (quoting *Washington v. Davis*, 426 U.S. 229, 241 (1976)). It is not enough for a plaintiff to allege that they were affected more than members of another race. *See id.* Instead, a plaintiff's race "must have been a substantial factor in that different treatment." *See id.; see also Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("Discriminatory purpose . . . implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.")

Here, Plaintiffs offer nothing but speculation to establish intentional discrimination. They allege that the policies were designed to affect, and did affect, Central American families, because they applied only to the southern border, and they point to "public statements by officials" purportedly evidencing an intent to deter "the migration of Central American families." Pls. Opp. at 40-41. None of these allegations plausibly demonstrates that any differing approach to the southern border was motivated by racial animus, rather than the differing circumstances of migration patterns on the United States' borders. That the policies allegedly disproportionately affected Central American families is an insufficient basis for an equal protection claim. *See United States v. Barrera-Vasquez*, 617 F. Supp. 3d 400,

407 (E.D. Va. 2022) ("'[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact . . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" (quoting *Village of Arlington Heights v. Metro. Hous. Develop. Corp.*, 429 U.S. 252, 264-65 (1977))).

Indeed, Plaintiffs' equal protection theory has been rejected by the Supreme Court. In *Department of Homeland Security v. Regents of the University of California*, the Supreme Court held that plaintiffs failed to state an equal protection claim arising from the rescission of the Deferred Action for Childhood Arrivals program because they did not adequately allege that an "'invidious discriminatory purpose was a motivating factor' in the relevant decision." 140 S. Ct. 1891, 1915 (2020). The Court rejected the plaintiffs' argument that animus was evidenced by the rescission's disparate impact on Latinos from Mexico, and explained that, because Latinos make up a large share of unauthorized noncitizens, it would not be surprising if they were affected in greater proportion. *See id.* at 1915-16. Critically, the Court added that "[w]ere this fact sufficient to state a claim, virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Id.*; *see also United States v. Lucas-Hernandez*, No. 19-24522, 2020 WL 6161150, at *3 (S.D. Cal. Oct. 21, 2020) (rejecting equal protection claim where plaintiff attempted to show racial animus by pointing to disparate impact on Latinos because "[t]he disparate impact is more readily explained by the geographic proximity of the border to Mexico

and Latin America than by animus") (citing *Regents*). *Regents* is squarely applicable here, and the Court should reject Plaintiffs' equal protection theory.

**2. Plaintiffs' Conditions of Confinement Claims Are Barred by the DFE.**

In addition, Plaintiffs' claims arising from their conditions of confinement are also barred by the DFE. *See, e.g.*, Def. *J.A.L.C.* Br. at 20-21.

Plaintiffs do not plausibly allege that the conditions of their confinement violated any of their constitutional rights. Instead, they point to agency standards that the government allegedly violated. *See* Pls. Opp. at 52-56. As an initial matter, the National Standards on Transport, Escort, Detention, and Search ("TEDS") standards is a Border Patrol policy that sets forth agency goals while acknowledging operational realities. *See, e.g.*, TEDS § 2.6 ("Using an unsecured vehicle to transport detainees should be avoided; however, *operational circumstances* may require officers/agents to use an unsecured vehicle to transport a detainee." (emphasis added)); TEDS § 4.12 ("*When available*, clean blankets must be provided to adult detainees upon request." (emphasis added)); TEDS § 5.4 ("All juveniles must be transported as safely as possible *given the circumstances*, which must include the use of child safety restraints *when available*." (emphasis added)); TEDS § 5.6 ("*When available*, juveniles will be provided clean and dry clothing." (emphasis added)).

In addition, courts have repeatedly held that claims based on acts or omissions relating to "conditions of confinement" are barred by the DFE because the manner in which the government manages and operates its detention facilities involves

10

discretionary decisions susceptible to policy considerations.[3] *See Huff v. Neal*, 555 F. App'x 289, 298-99 (5th Cir. 2014) (per curiam) (applying the DFE to placement of inmates and internal prison security); *Rodriguez v. United States*, 415 F. App'x 143, 146-47 (11th Cir. 2011) (per curiam) (applying DFE to negligence claim regarding exercising equipment provided to detainees); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (per curiam) (applying the DFE to decision to transfer prisoner); *Bultema v. United States*, 359 F.3d 379, 384 (5th Cir. 2004) (applying DFE to negligence claim based on decision not to provide bed rails); *Lineberry v. United States*, No. 08-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) (applying the DFE to allegation of overcrowding in prison); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, were barred by the DFE); *see also Peña Arita*, 470 F. Supp. 3d at 686-692 (rejecting the plaintiffs' contention that determinations regarding conditions of confinement such as transfer decisions, where and how to house detainees, or appropriate medical care were "nondiscretionary" in nature because government decision-making regarding conditions of confinement was "susceptible to policy analysis").

Plaintiffs next argue that the *Flores* Agreement mandates safe and sanitary conditions that the government failed to provide. *See* Pls. Opp. at 49-50. Plaintiffs do

---

[3] *But see A.E.S.E. v. United States*, No. 21-0569, 2022 WL 4289930, at *10-11 (D.N.M. Sept. 16, 2022) (holding that the DFE does not apply to violations of certain provisions of the TEDS standards).

not dispute, however, that they were generally provided access to facilities and conditions required by the *Flores* Agreement, including toilets and sinks, drinking water and food, and contact with family members. In *S.E.B.M.*, the court rejected the plaintiff's claim that the government violated the *Flores* agreement by failing to maintain contact with her family members. 2023 WL 2383784 at *16. The court reasoned that while "[t]hese conditions were less than ideal," "it is not clear what the government could have done better." *See id.* This Court should similarly reject Plaintiffs' claims that the conditions of their confinement violated the *Flores* Agreement and thus abrogated the DFE.[4]

### E.  Plaintiffs' Independent Contractor Claims Fall Outside the FTCA

Plaintiffs' claims related to M.S.C.C.'s and O.R.J.J.'s care at contractor-run facilities fail because the FTCA provides no cause of action for torts committed by the government's independent contractors. *See* Def. *B.Y.C.C.* Br. at 36-37; Def. *R.J.P.* Br. at 36-37. Plaintiffs admit that "Defendant is correct that the United States is generally not liable under the FTCA for the acts of a contractor," and they concede that although staff at facilities contracted by ORR "may have engaged" in misconduct, they are not asserting claims against those facilities or their staff members. *See* Pls. Opp. at 67-68. Accordingly, all claims related to the care M.S.C.C. and O.R.J.J. received at contractor-run facilities should be dismissed.

---

[4] Even if the Court were to find that Plaintiffs had plausibly pled a violation of mandatory policies regarding Plaintiffs' conditions of confinement, in which case the DFE would not apply, the Court should nevertheless dismiss those claims because (1) the private-person analog exception to the FTCA prohibits them, *see supra* Section I.B., and (2) Plaintiffs have not adequately pled their tort claims under applicable state law, *see infra* Section II.C.2.

II.   **PLAINTIFFS HAVE FAILED TO SUFFICIENTLY PLEAD THEIR TORT CLAIMS UNDER TEXAS STATE LAW.**

    A. **Texas Law Governs Plaintiffs' Tort Claims**

As a threshold matter, the Court must determine the state law that applies to Plaintiffs' claims. Plaintiffs in the *B.Y.C.C.* and *R.J.P.* cases concede that Texas law applies. The Court should also apply Texas law to the claims in the *J.A.L.C.* matter.

The *J.A.L.C.* Plaintiffs agree that the Court should apply the choice-of-law regime of the "jurisdiction in which the last significant act or omission occurred." *See Simon v. United States*, 341 F.3d 193, 204 (3d Cir. 2003). That jurisdiction is Texas because Plaintiffs' claims in *J.A.L.C.* are born from Plaintiffs' separation, which occurred in Texas. The *J.A.L.C.* Plaintiffs assert that Michigan choice-of-law rules govern their claims because, they argue, the last significant act giving rise to those claims was the reunification of J.A.L.C. and L.L.G. in Michigan. But they do not explain why the *reunification* would be a significant act in the alleged torts. Moreover, they allege nothing more regarding that reunification than that J.A.L.C. was transferred to Michigan on July 8, 2018, and two days later was reunified with L.L.G. *See J.A.L.C.* Compl. ¶¶ 117-127. Plaintiffs fail to identify how any of these acts in Michigan form a legal basis for their tort claims.

Plaintiffs rely on *S.E.B.M.*, but that case is distinguishable. There, the court applied Texas' choice-of-law rules because the court determined that a significant part of that child's claim was "based on her continued separation from family while in [foster care] in Texas." *See S.E.B.M.*, 2023 WL 2383784, at *5. But, as Plaintiffs acknowledge, L.L.G.'s care in Michigan does not form the primary basis for their

claims. Indeed, Plaintiffs characterize the conduct at the "center" of their cases as "the forcible separation of children from their parents," *see* Pls. Opp. at 67, which occurred in Texas.

Furthermore, Plaintiffs attribute "*much* of th[e] tortious conduct [at issue] to federal employees at the facilities housing the separated parents . . . and to federal employees responsible for reunifying separated families." *See* Pls. Opp. at 1, 67 (emphasis added). Here, the allegedly tortious conduct pled as to the adult Plaintiff, J.A.L.C., while he was separately detained, also occurred in Texas, *see J.A.L.C.* Compl. ¶¶ 93-103. Accordingly, the Court should apply Texas choice-of-law rules to J.A.L.C. and L.L.G.'s claims. *See Rodriguez v. United States*, No. 22-2845, 2022 WL 19237182, at *5 (C.D. Cal. Dec. 22, 2022) (finding that Texas choice-of-law rules applied to the plaintiffs' family separation claims because the separation of the plaintiffs occurred in Texas and "[a]lthough the Complaint alleges that [the minor plaintiff] suffered injury in California [where she was released to her mother], the relevant acts which prevented [the plaintiffs] from reuniting took place in Texas, where they were separated, and Georgia, where [the adult plaintiff] was held and eventually deported"). And, for the reasons discussed in Defendant's moving briefs, Texas' choice-of-law analysis points to the application of Texas law in *J.A.L.C. See* Def. *J.A.L.C.* Br. at 38-39.

### B. Texas Law Enforcement Privileges Shield Defendant from Plaintiffs' Claims

Plaintiffs' claims fail as a matter of Texas law because they stem from conduct that is privileged. *See, e.g.*, Def. *J.A.L.C.* Br. at 39-41. In opposition, Plaintiffs point

to *Olson*, which held that the United States is liable under circumstances where local law would make a private person liable in tort, not a state or municipal entity. *See* 546 U.S. at 46. But, as Plaintiffs acknowledge, the application of state law enforcement privileges was not at issue in *Olson*, and a number of courts have determined that such privileges do apply to FTCA claims. *See Hanson v. United States*, 712 F. Supp. 2d 321, 329 (D.N.J. 2010) ("The Court concludes that neither *Olson* nor its predecessors requires the Court to apply civilian rules regarding force to determine whether under the [FTCA] a law enforcement officer employed excessive force while executing his duties").[5] If applying a law enforcement privilege in an FTCA case, a court is not running afoul of *Olson* by considering whether a municipality would be liable under state law. *See Hanson*, 712 F. Supp. 2d at 329. Instead, the court is "taking into consideration the extraordinary obligations of law enforcement officers recognized by both federal and state law." *See id*. To hold otherwise would lead to the absurd result "that federal officers acting lawfully may nonetheless be held civilly liable if they do not conform their conduct to what is required of private citizens." *Tekle v. United States*, 511 F.3d 839, 858 (9th Cir. 2007)

---

[5] *See also Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009) (finding that Texas' civil privilege defense statute applied in FTCA action alleging assault by federal officer); *C.D.A. v. United States*, No. 21-469, 2023 WL 2666064, at *22 (E.D. Pa. Mar. 28, 2023) (reasoning that the government is entitled to invoke state law privileges as a defense against FTCA claims); *Hernandez v. United States*, No. 17-00087, 2018 WL 4103015, at *3-4 (S.D. Tex. July 2, 2018) ("[T]he Government may look to state law privileges as a defense to FTCA claims"); *McElroy v. United States*, 861 F. Supp. 585, 594 (W.D. Tex. 1994) ("[T]he United States may invoke any defenses available to individual law enforcement officers under Texas law.").

(Fisher, J., concurring); *see also Villafranca*, 587 F.3d at 264. Accordingly, the Court may apply Texas law enforcement privileges to the conduct at issue.

In the alternative, Plaintiffs contend that even if the United States may invoke state law enforcement privileges as a defense to their FTCA claims, the purported "forcible separation" of Plaintiffs without legal authority and for "illegitimate punitive purposes" is not privileged. *See* Pls. Opp. At 72. But the separation and detention at issue in these cases were undertaken pursuant to DHS policy and the discretion afforded under federal immigration law. And other federal courts have held that law enforcement actions authorized by federal immigration law were privileged under state law. *See Caban v. United States*, 728 F.2d 68, 71 (2d Cir. 1984); *Tovar v. United States*, No. 98-1682, 2000 U.S. Dist. LEXIS 5044, at *23 (N.D. Tex. Apr. 18, 2000), *aff'd* 244 F.3d 135 (5th Cir. 2000). The Court should do the same here.

Plaintiffs assert, based on the district court's opinion in *C.D.A. v. United States*, that the holdings of *Caban* and *Tovar* do not control here because Plaintiffs do not assert false imprisonment claims or otherwise challenge the fact of their detention. *See* Pls. Opp. at 72. However, Plaintiffs misread *C.D.A.* The court there did not hold that state law enforcement privileges could be invoked only for such claims. Rather, it concluded that Texas law enforcement privileges did not warrant dismissal of the plaintiffs' claims because those claims did not appear to contain elements that would "privilege the conduct of immigration officers acting under the authority of law." *See C.D.A. v. United States*, No. 21-469, 2023 WL 2666064, at *22 (E.D. Pa. Mar. 28, 2023).

16

The Court should decline to follow *C.D.A.* on this issue for two reasons. First, the United States disagrees that Texas law requires a plaintiff to assert claims that include a "legal authority" element in order to invoke a law enforcement privilege. For example, the elements of an assault or battery claim under Texas law do not require a finding of legal authority. *See* Texas Penal Code § 22.01(a); *see also Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 741 (S.D. Tex. 2016). Nonetheless, law enforcement officers may assert a privilege against such claims because Texas law authorizes peace officers to use force when detaining an individual for arrest or conducting a lawful search. *See Carter*, 175 F. Supp. 3d at 741.

Second, Plaintiffs' claims do, in fact, require the Court to determine the legal authority for their detention and separation in order to hold the United States liable. That requirement is explicit with respect to Plaintiffs' abuse of process claims, which require proof that the United States "made an illegal, improper, or perverted use of process, a use neither warranted nor authorized by the process." *See Hunt v. Baldwin*, 68 S.W. 3d 117, 129 (Tex. App. 2001). A finding of legal authority is also implicit in this Court's assessment of the government's breach of any duty owed. In other words, if there is legal authority for the government's actions in this context, there is no breach. *C.f. TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 346 (Fed. Cl. 2013) (finding that where a contract authorizes the government to take action that may harm the contractor, the government may exercise that right without triggering a claim for breach of the implied duty of good faith and fair dealing).

17

In sum, the lack of a case applying Texas law enforcement privileges in this precise context does not foreclose the application of such a privilege to Plaintiffs' claims. The government's actions with respect to Plaintiffs' detention and separation were privileged, and the Court should dismiss their claims.

**C. Plaintiffs Fail to State a Claim Under Texas Law.**

In addition to Texas law enforcement privilege barring Plaintiffs' claims, Plaintiffs have also to plausibly plead them under Texas law.

### 1. Intentional Infliction of Emotional Distress

Plaintiffs' allegations do not plausibly assert an IIED claim as a matter of Texas law. Federal law enforcement officers separated the adult Plaintiffs and minor Plaintiffs in these cases after detaining the adult Plaintiffs for potential criminal prosecution based on their illegal entry. The gravamen of Plaintiffs' claims is that the government had an allegedly malicious motive for their separations. *See* Pls. Opp. at 74. Such allegations point to a different tort—abuse of process. For the reasons discussed below in Section II.C.6, Plaintiffs cannot plead such a claim. Under Texas law, Plaintiffs cannot recast their allegations into an IIED claim to avoid the limits placed on an abuse of process claim. *See Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) ("Where the gravamen of a plaintiff's claim is really another tort, [IIED] should not be available.") (collecting cases); *see also Martinez v. English*, 267 S.W.3d 521, 527 (Tex. App. 2008) ("A plaintiff cannot recover on a claim for [IIED] where the risk of emotional distress is merely incidental to the commission of some other tort. Even where the plaintiff is unable to recover on his primary claim, he cannot maintain an action for [IIED] where the gravamen of his complaint may be

18

address by an existing statutory or common law remedy."). Thus, the Court should dismiss Plaintiffs' IIED claims.[6]

Plaintiffs point to *C.D.A.*, where the district court held that the plaintiffs had plausibly pled an IIED claim. 2023 WL 2666064, at *22-23. But the court focused its IIED analysis on the allegation that the plaintiffs had been allegedly coerced into signing waivers of their asylum rights before reunification. *See id.* Plaintiffs make no such allegations here. *C.D.A.*, therefore, does not govern these cases.

### 2. Negligence, Negligent Undertaking, and Negligent Supervision

All of Plaintiffs' negligence-based claims fail because Texas law did not impose a duty of care on the government in these circumstances, and because Plaintiffs cannot support a claim for damages based on mental anguish and emotional harms.

In arguing that Texas law created a duty of care, Plaintiffs rely on the district court's decision in *A.F.P. v. United States*, No. 21-780, 2022 WL 2704570, at *10 (E.D. Cal. July 12, 2022). In *A.F.P.*, another family separation case, the district court determined that the plaintiffs could bring a negligence claim against the United

---

[6] Plaintiffs' IIED claim also fails under Michigan law. Under Michigan law, a law enforcement officer is entitled to immunity for conduct related to an arrest or detention, unless he acts with "malice or wantonness or a reckless indifference to the common dictates of humanity." *See Odom v. Wayne Cnty.*, 760 N.W.2d 217, 225 (Mich. 2008). Plaintiffs assert that the "launch and execution" of the DHS Referral Policy was a "case study" in "reckless indifference to the common dictates of humanity." *See* Pls. Opp. at 93. But, again, Plaintiffs center their tort claims on their separation, which was consistent with DHS policy and permitted by federal immigration law. Plaintiffs also do not allege that the Border Patrol agents effectuating the separation and transfer of the minor Plaintiffs to ORR custody acted with malice. Therefore, law enforcement privilege also bars Plaintiffs' claims under Michigan law.

States because federal immigration officials "have a 'special relationship' with detainees in that they are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care." *See id*. In finding the existence of a special relationship under Texas law, the *A.F.P.* court relied on *Salazar v. Collins*, 255 S.W.3d 191, 198 (Tex. App. 2008), in which the Texas appellate court found a special relationship to exist between an inmate and jailor. *See id*.

However, the only district court in this Circuit to address the question of duty in the family separation context expressly rejected the existence of a special relationship in these cases based on *Salazar*. *See C.D.A.*, 2023 WL 2666064, at *24. The *C.D.A.* court held that *Salazar* is "inapplicable" because *Salazar* "discusses the duty of a prison to reasonably prevent third persons from *physically* harming inmates," and "[t]he plaintiffs do not claim that any third persons physically harmed [them] while the government detained them." *See id*. (emphasis added). Plaintiffs' claims here suffer from the same deficiency.

In urging the Court to find that Texas law imposed a duty, Plaintiffs liken the relationship between the government and Plaintiffs to a day care facility's duty to aid a child who ultimately died on playground equipment and the duty of a college mentor to prevent injury to a college freshman on a hiking trip after providing a safety briefing. *See* Pls. Opp. at 78-79 (citing *Applebaum v. Nemon*, 678 S.W.2d 533, 535-536 (Tex. App. 1984); *Helbing v. Hunt*, 402 S.W.3d 699, 701 (Tex. App. 2012)). However, the cases before this Court are plainly distinct. As with *Salazar*, the Texas cases that Plaintiffs cite involve the duty to prevent physical injury, whereas

Plaintiffs here do not allege that any negligence by the government caused them bodily harm. Plaintiffs have failed to identify any Texas case recognizing a duty of law enforcement officials to house children with parents that are being detained for immigration proceedings. *See E.L.A. v. United States*, No. 20-1524, 2022 WL 2046135, at *6 (W.D. Wash. June 3, 2022) (dismissing the plaintiffs' negligence claim for failure to allege the existence of a duty under Texas law in the context of family separation). Thus, Plaintiffs' negligence claims should be dismissed.

And in any event, Plaintiffs' negligence claims fail because they cannot recover damages for emotional harms and mental anguish. Plaintiffs, who have not alleged a serious bodily injury, contend that they are entitled to recover mental anguish damages under Texas law because their emotional harm and its physical manifestations are (1) the foreseeable result of a breach of duty arising from a special relationship, and (2) of such a shocking and disturbing nature that mental anguish is a highly foreseeable result. Plaintiffs are incorrect.

In *City of Tyler v. Likes*, the Texas Supreme Court clarified the circumstances in which mental anguish damages are recoverable for negligent conduct. 962 S.W.2d 489, 495-496 (Tex. 1997). The Court recognized that, absent physical injury, Texas has authorized recovery of mental anguish damages only in two circumstances. First, such damages may be recoverable when a defendant's negligence "causes a mental shock which produces a serious bodily injury . . . provided that injury was foreseeable," such as when a plaintiff suffered "brain deterioration" after almost being struck by a bus or a plaintiff miscarried after witnessing a "violent altercation." *See*

*id*. at 495-496 (citing *Houston Elec. Co. v. Dorsett*, 145 Tex. 95, 194 S.W.2d 546 (1946);

*Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59 (1890), *abrogated on other grounds by*

*Parkway Co. v. Woodruff*, 901 S.W.2d 434, 443 (Tex. 1995) (noting that the plaintiff

was advised by her physician "that probably it will be necessary for her to discontinue

[her] work because of her nervous disorders and brain deterioration")). Second, the

Court held that "[m]ental anguish is . . . compensable as the foreseeable result of a

breach of duty arising out of *certain* special relationships." *See id*. (emphasis added).

The Court reasoned that these *certain* special relationships include:

> the physician-patient relationship, perhaps because most
> physicians' negligence also causes bodily injury, and a very
> limited number of contracts dealing with intensely
> emotional noncommercial subjects such as preparing a
> corpse for burial, or delivering news of a family emergency.
> In an earlier era, courts found a special relationship of this
> sort between railroads and their passengers.

*See id*. (citations omitted). However, the *Likes* Court emphasized that under Texas

law, "most relationships, whether legal or personal, create no duty to avoid causing

mental anguish." *See id*.

Here, Plaintiffs cannot support a claim for mental anguish damages based on

either a serious bodily injury resulting from mental shock or a special relationship.

Citing *Fitzpatrick v. Copeland*, Plaintiffs contend that the mental shock of their

separation caused them serious bodily injuries. But the court in *Fitzpatrick*, like the

Court in *Likes*, relied on specific examples of this type of negligence case in rejecting

the plaintiff's claim for mental anguish damages. *See Fitzpatrick v. Copeland*, 80

S.W.3d 297, 303 n.4 (Tex. App. 2002) (noting that "[i]njuries of this nature include

wrongful death and bystander claims for serious injury to a close family member"); *see also Likes*, 962 S.W.2d at 495-496 (citing cases in which one plaintiff was able to recover mental anguish damages when she miscarried after witnessing a "violent altercation" and another was able to do so after almost being struck by a bus and suffering "brain deterioration"). Plaintiffs' claims do not fit the mold established by Texas courts regarding the types of negligence cases for which recovery of mental anguish damages is permitted. Indeed, Plaintiffs do not allege that they witnessed the infliction of serious bodily harm on their family member, as in the bystander context. Nor do they claim that their separation caused the death of either the separated child or parent or a serious physical decline, such as the deterioration of brain matter.

In fact, the *Villafuerte* court found the type of harm alleged here to be insufficient to support a negligence claim under Texas law. *See Villafuerte v. United States*, No. 16-619, 2017 WL 8793751, at *10-11 (S.D. Tex. Oct. 11, 2017). In *Villafuerte*, the district court held that the immigration detainee's alleged pain from prolonged exposure to extremely low temperatures, sleep deprivation, hunger, stomach aches, headaches, weakness, dizziness, and symptoms of trauma, depression, and anxiety were not physical injuries. *See id.*; *see also Verinakis v. Medical Profiles, Inc.*, 987 S.W.2d 90, 97-98 (Tex. App. 1998) (dismissing the plaintiff's negligent supervision and negligent hiring claims because he pleaded only "physical and mental ailments resulting from his emotional distress" and no physical injury). Rather, the court held that these harms, even if physical manifestations of

emotional distress, were mental and emotional injuries that could not support a negligence claim under Texas law. *See Villafuerte*, 2017 WL 8793751, at *10-11; *see also C.D.A.*, 2023 WL 2666064, at *26 (finding in the context of family separation that "plaintiffs at best plead physical manifestations of emotional and mental distress, which are not the same as physical injuries"). Plaintiffs ignore this holding in their opposition, but it is fatal to their negligence claims.

Plaintiffs likewise fail to establish a special relationship sufficient to support a claim for mental anguish damages. As the *Likes* Court made clear, Texas has recognized the existence of a special relationship in a limited number of circumstances. *See* 962 S.W.2d at 495-496. Those circumstances do not include the conduct at issue in these cases, and the Court should not expand Texas law to encompass it.

Plaintiffs argue that because they have adequately alleged the existence of a special relationship in the context of duty, they are entitled to mental anguish damages. Even if Plaintiffs have sufficiently pled the existence of a special relationship for a general duty of care, which they have not, that would not establish a special relationship sufficient for a claim for mental anguish damages. As the Court emphasized in *Likes*, only "certain" special relationships give rise to mental anguish damages. *See id*. Indeed, "most relationships, whether legal or personal, create no duty to avoid causing mental anguish." *See id*.; *see also Fitzpatrick*, 80 S.W.3d at 302 ("[T]he supreme court noted that the law does not afford recovery of mental anguish damages for many breaches of legal duties."). Because Plaintiffs cannot meet the

24

damages element of their negligence-based claims, the Court should dismiss them.[7]

### 3. Negligent Infliction of Emotional Distress

Plaintiffs do not dispute that under Texas law there is no independent cause of action for negligent infliction of emotional distress ("NIED"). *See Garza v. United States*, 881 F. Supp. 1103, 1108 (S.D. Tex. 1995) (holding that a plaintiff's layering of a general negligence claim on top of specific tort claims for assault and false arrest "does [] sound suspiciously like an impermissible claim for negligent infliction of emotional distress"); *see also C.D.A.*, 2023 WL 2666064, at *23 (dismissing the plaintiffs' NIED claim under Texas law). The Court should, therefore, dismiss this claim.[8]

---

[7] Similar to Texas law, Michigan law does not allow "a plaintiff to recover damages simply because a defendant negligently caused emotional distress." *See Hoskin v. Detroit Med. Ctr.*, No. 357265, 2022 WL 4391027, at *4 (Mich. App. Sept. 22, 2022). In addition, Plaintiffs have not pointed to a decision by a court interpreting Michigan law in which a duty of care has been recognized in this context. Plaintiffs do not identify any requirement under Michigan law for law enforcement officials to house children with parents that are being detained for potential criminal prosecution or immigration purposes.

[8] Michigan law does recognize an NIED claim, but "only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbances as a result." *See Teadt v. Lutheran Church Missouri Synod*, 603 N.W.2d 816, 823 n.6 (Mich. Ct. App. 1999). Plaintiffs bring no such claim. They argue that they can support an NIED claim based on *Wargelin v. Sisters of Mercy Health Corp.*, 385 N.W.2d 732, 735 (Mich. Ct. App. 1986). But *Wargelin* recognized such a claim in the context of bystander recovery, and Plaintiffs have not pled a serious, physical injury inflicted on or threatened against L.L.G. that caused actual physical harm to L.L.G. *See id.* Furthermore, J.A.L.C. has not adequately pled that he actually witnessed serious, physical injury to L.L.G. or suffered shock "fairly contemporaneously" with any such event. *See id.* Accordingly, the Court should dismiss their NIED claim.

#### 4. Breach of Fiduciary Duty

For the reasons discussed above in Section II.C.2 and in Defendant's moving briefs, Plaintiffs' breach of fiduciary duty claim fails under Texas law, as Plaintiffs cannot allege that any fiduciary duty existed. *See, e.g.*, Def. *J.A.L.C.* Br. at 45-47. Plaintiffs' reliance on *D.A. v. United States*, to support the survival of this claim is misplaced. The court in *D.A.* never considered, much less answered in the affirmative, whether a fiduciary relationship existed between the plaintiffs, and the government was not before the court in *D.A. See D.A. v. United States*, No. 22-00295, 2023 WL 2619167, at \*16-18 (W.D. Tx. Mar. 23, 2023). A fiduciary relationship is an "extraordinary one" that is "not [to] be created lightly." *See Smith v. Deneve*, 285 S.W.3d 904, 911 (Tex. App. 2009). Thus, the Court should not expand Texas law to create one here.[9]

#### 5. Child Abduction and Tortious Interference with the Parent-Child Relationship

Plaintiffs also cannot assert a tort claim for child abduction. The Texas Supreme Court clearly held in *Silcott* that a tort claim for child abduction was available only in "cases tried before September 1, 1983." *Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986). Texas law permits parents or guardians to pursue statutory claims for interference with their "possessory right" to a child in violation of a custody order. *See* Tex. Fam. Code § 42.002(a). But no Texas court since *Silcott* has sought to

---

[9] Michigan has never found a fiduciary relationship to exist in the immigration context, and the Court should not expand Michigan law to do so here. Furthermore, Plaintiffs have not adequately pled a breach of any such duty as Plaintiffs' illegal entry into the United States resulted in their lawful detention and separation.

apply a tort claim for child abduction. And no Texas court has addressed such a claim in this context. Plaintiffs rely on three federal family separation decisions to support the viability of their state law child abduction claims. None of those decisions is binding on this Court, and all of them improperly rely on *Silcott* in recognizing such a tort.

Even if the Court were to expand Texas law to recognize a common law tort claim for child abduction, the separation of Plaintiffs was not without legal authority. It was carried out pursuant to DHS policy and federal immigration law. Accordingly, the Court should dismiss Plaintiffs' claims for child abduction and tortious interference with the parent-child relationship.[10]

### 6. Abuse of Process

With respect to Plaintiffs' abuse of process claim, they admit that the initial process, i.e., their detention, was lawful, but point to the designation of the minor Plaintiffs as unaccompanied and the resulting separation as the relevant "abuse of process." *See* Pls. Opp. at 86-87. But the separation, which was the direct result of the detention of the adult Plaintiffs, does not constitute abuse of process under Texas law. *See E.L.A.*, 2022 WL 2046135, at *6.

---

[10] Plaintiffs cannot support a child abduction claim under Michigan law because L.L.G. was not "abducted" or improperly removed from J.A.L.C. by the United States government. *See Brown v. Brown*, 61 N.W.2d 656, 659 (Mich. 1953); *see also Oversmith v. Lake*, 295 N.W. 339, 341 (Mich. 1940). The government deemed L.L.G. unaccompanied after detaining J.A.L.C. for violating federal law by illegally entering the United States. Federal law then required the government to transfer L.L.G. to ORR custody.

In *E.L.A. v. United States*, the court reasoned that "[w]hile Plaintiffs have alleged that the government had an ulterior motive [for detaining and separating parent and child] and that damage resulted . . . they have not alleged that the government made an 'illegal, improper, or perverted use of the process.'" *See id*. In that case, the plaintiffs argued that even though the government lawfully detained and instituted the prosecution against the adult plaintiff, the government improperly used that prosecution and the judicial process to designate the minor plaintiff as unaccompanied. *See id*. The *E.L.A.* court rejected this argument, explaining that the plaintiffs' allegation of abuse of process rested on the reason for charging the adult plaintiff, not the process. *See id*.; *see also C.D.A.*, 2023 WL 2666064, at *25 (dismissing the plaintiffs' abuse of process claim under Texas law because it rested on the prosecution of the adult plaintiff). The same reasoning applies here, and the Court should, likewise, dismiss Plaintiffs' abuse of process claims.[11]

### 7.  Assault and Battery

For the reasons set forth above in Section II.B., Texas' law enforcement privilege shields the United States from liability for assault and battery. Texas Penal Code § 9.51(a) provides that: "[a] peace officer . . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest . . . if: (1) the actor reasonably believes the arrest or search is lawful . . . ; and (2) before using force, the actor

---

[11] Plaintiffs' abuse of process claim under Michigan law fails for the same reasons it fails under Texas law, and the Court should, likewise, dismiss it.

manifests his purpose to arrest or search and identifies himself as a peace officer . . . unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested." DHS agents are considered "peace officers" for purposes of § 9.51. *See Mendez v. Poitevent*, 823 F.3d 326, 335 (5th Cir. 2016) (citing *Davila v. United States*, 713 F.3d 248, 261 (5th Cir. 2013)).

DHS agents were authorized to detain the adult Plaintiffs for criminal prosecution based on their illegal entry and then separate the adult Plaintiffs and minor Plaintiffs based on that potential criminal prosecution. Accordingly, their conduct in carrying out the detention and separation is privileged under Texas law. Therefore, the Court should dismiss Plaintiffs' assault and battery claim.[12]

### 8.  Loss of Consortium

Plaintiffs do not dispute that under Texas law they are unable to recover for loss of parental consortium absent pleading a physical injury that is "serious, permanent and disabling." *See Verinakis*, 987 S.W.2d at 99. Plaintiffs have pled no such injury, and the Court should dismiss their claims. *See C.D.A.*, 2023 WL 2666064,

---

[12] Similarly, the Court should dismiss Plaintiffs' assault and battery claim under Michigan law because law enforcement officers, in the context of arrest and detention, are immune from suit for intentional torts, unless they "utilize[] wanton or malicious conduct or a demonstrate[] a reckless indifference to the common dictates of humanity." *See Hart v. Danak*, No. 280975, 2010 WL 1404431, at *5 (Mich. Ct. App. Apr. 8, 2010). Plaintiffs have not adequately pled such conduct. Plaintiffs argue that the court in *K.O.* upheld assault and battery claims under Michigan law in the context of family separation. But whether or not the plaintiffs had sufficiently pled their assault and battery claims was not an issue before the court in *K.O. See K.O.*, 2023 WL 131411, at *12. The court determined only that a private analog existed for an assault and battery claim "in every jurisdiction." *See id.*

at *26 (dismissing the plaintiffs' loss of parental consortium claims because "at best" they pled "physical manifestations of emotional and mental distress, which are not the same as physical injuries.").[13]

## III.   CONCLUSION

For the foregoing reasons and for the reasons set forth in Defendant's moving briefs, the Court should dismiss Plaintiffs' Complaints in their entirety.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By:     */s/ Angela E. Juneau*
ANGELA E. JUNEAU
Assistant United States Attorney

*/s/ Samantha R. D'Aversa*
SAMANTHA R. D'AVERSA
Assistant United States Attorney

Dated: June 23, 2023                    *Attorneys for the United States*

---

[13] L.L.G.'s loss of consortium claim under Michigan law is not actionable because, for the reasons stated above, Plaintiffs have failed to adequately plead tortious injury. *See Berger v. Weber*, 303 N.W.2d 424, 427 (Mich. 1981).