**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| B.Y.C.C. on behalf of herself and on behalf of her minor child, M.S.C.C.,<br><br>J.A.L.C. on behalf of himself and on behalf of his minor child, L.L.G.,<br><br>R.J.P. on behalf of himself and on behalf of his minor child, O.R.J.J.,<br><br><br>                   Plaintiffs,<br><br>             v.<br><br>UNITED STATES OF AMERICA,<br><br><br>                   Defendant. | Civil Action Nos. 22-6586 (MAS) (DEA)<br>22-6587 (MAS) (DEA)<br>22-6588 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

      This matter comes before the Court on several motions to dismiss. First is Defendant United States of America's ("Defendant" or "Government") Motion to Dismiss Plaintiff B.Y.C.C.'s ("B.Y.C.C.") Complaint on behalf of herself and on behalf of her minor child, M.S.C.C. ("M.S.C.C." and collectively, "*B.Y.C.C.* Plaintiffs") in the matter of *B.Y.C.C. on behalf of herself and on behalf of her minor child, M.S.C.C. v. United States of America* ("*B.Y.C.C.*"), No. 22-6586 (2023). (*B.Y.C.C.*, ECF No. 13.) The second motion is Defendant's Motion to Dismiss Plaintiff J.A.L.C.'s ("J.A.L.C.") Complaint on behalf of himself and on behalf of his minor child, L.L.G. ("L.L.G." and collectively, "*J.A.L.C.* Plaintiffs") in the matter of *J.A.L.C. on behalf of himself and on behalf of his minor child, L.L.G. v. United States of America* ("*J.A.L.C.*"), No.

22-6587 (2023). (*J.A.L.C.*, ECF No. 15.) The third and final motion is Defendant's Motion to

Dismiss Plaintiff R.J.P.'s ("R.J.P.") Complaint on behalf of himself and on behalf of his minor

child, O.R.J.J. ("O.R.J.J." and collectively, "*R.J.P.* Plaintiffs") in the matter of *R.J.P. on behalf of*

*himself and on behalf of his minor child, O.R.J.J.* ("*R.J.P.*"), No. 22-6588 (2023). (*R.J.P.*, ECF

No. 14.) *B.Y.C.C.* Plaintiffs, *J.A.L.C.* Plaintiffs, and *R.J.P.* Plaintiffs (collectively, "Plaintiffs")

opposed (*B.Y.C.C.*, ECF No. 21),[1] and Defendant replied (*B.Y.C.C.*, ECF No. 28).[2] The Court has

carefully considered the parties' submissions and decides the matter without oral argument

pursuant to Local Civil Rule 78.1.[3] For the reasons set forth below, the Court grants-in-part and

denies-in-part Defendant's Motions.

## I.    BACKGROUND[4]

In this Federal Tort Claims Act ("FTCA") case, Plaintiffs seek to challenge in tort President

Donald J. Trump's ("President Trump" or "the Trump Administration") policy (the "Policy") of

---

[1] Plaintiffs consider *B.Y.C.C.* to be the lead case of the three companion cases and cite primarily to the *B.Y.C.C.* Complaint and briefing when referring to points shared within all cases. (*See* Pls.' Opp'n Br. 5 n.1, *B.Y.C.C.*, ECF No. 21.) The Court, accordingly, primarily cites to the documents contained within *B.Y.C.C.* except where otherwise noted. The Court granted Plaintiffs leave to file one consolidated brief in opposition to all three separate motions to dismiss. (*See B.Y.C.C.*, ECF No. 20.)

[2] The Court granted Defendant leave to file one consolidated brief in reply to Plaintiffs' opposition. (*B.Y.C.C.*, ECF No. 20.) The Court now also acknowledges and grants Defendant's pending motions in all three cases for leave to file overlength briefs. (*See B.Y.C.C.*, ECF No. 27; *J.A.L.C.*, ECF Nos. 14, 24; *R.J.P.*, ECF No. 26.)

[3] Given the nature of the consolidated opposition and reply briefing and the similarity of the motions to dismiss in the three companion cases, the Court generally considers all three motions to dismiss together in this singular consolidated Memorandum Opinion.

[4] For the purpose of considering the instant motions, the Court accepts all factual allegations in the Complaints as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

detaining adult noncitizens[5] apprehended for crossing the border; Defendant concedes that this Policy resulted in the separation of minor children accompanying those adults for placement in residential programs contracted by the Department of Health and Human Services ("HHS"). (*See* Def.'s Moving Br. 1, *B.Y.C.C.*, ECF No. 13-1; *see generally Compl.*, *B.Y.C.C.*, ECF No. 1.) The Policy resulted in the taking of more than 5,600 children from their parents between July 1, 2017, and January 20, 2021. (Pls.' Opp'n Br. 3.)[6] President Joseph R. Biden's administration has since rescinded and "condemn[ed]" the Policy. (Def.'s Moving Br. 1, *B.Y.C.C.* (quoting Exec. Order 14011, 86 Fed. Reg. 8273 (Feb. 2, 2021)).)

Plaintiffs in this action are three sets of parents and children who were separated shortly after crossing the United States border in Rio Grande City, Texas. (*See* Pls.' Opp'n Br. 1-3.)

### A.   *B.Y.C.C.* Plaintiffs

*B.Y.C.C.* Plaintiffs are nationals of El Salvador who currently reside in Ocean County, New Jersey. (Compl. ¶¶ 9-10, 17, *B.Y.C.C.*) On or about May 28, 2018, B.Y.C.C. crossed the Rio Grande border with her then three-year-old son, M.S.C.C. (*Id.* ¶ 91.) *B.Y.C.C.* Plaintiffs allege that they approached U.S. Customs and Border Protection ("CBP") Border Patrol agents at the Rio Grande City Port of Entry intending to seek asylum in the United States. (*Id.* ¶ 92.) The CBP agents took *B.Y.C.C.* Plaintiffs into custody, and they were detained at the Rio Grande Port of Entry for approximately three days, awaiting B.Y.C.C.'s referral for prosecution. (*Id.* ¶¶ 92-97.)

On or about May 30, 2018, *B.Y.C.C.* Plaintiffs were separated at the Port Isabel Detention Center. (*Id.* ¶¶ 98, 100-01, 108.) M.S.C.C. was first transferred to the Ursula Central Processing

---

[5] This Memorandum Opinion uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

[6] Because Plaintiffs filed the same opposition brief in all three actions, the Court only cites to the brief filed in the *B.Y.C.C.* action.

Station in McAllen, Texas, and then to an Office of Refugee Resettlement ("ORR") shelter in New York City, New York. (*See id.* ¶ 115.) B.Y.C.C. was detained at the Port Isabel Detention Center and eventually was able to speak with M.S.C.C. by phone multiple times. (*Id.* ¶¶ 108, 126-28.) M.S.C.C. was also able to speak with his grandparents via video. (*Id.* ¶ 129.)

*B.Y.C.C.* Plaintiffs were reunited in New York on or about July 11, 2018, after approximately six weeks apart (forty-two days) and released together into the United States. (*Id.* ¶¶ 133-44.) B.Y.C.C. states that she is currently seeking asylum, withholding of removal, and protection under the Convention Against Torture, with M.S.C.C. as a derivative on her application. (*Id.* ¶¶ 9-10.)

*B.Y.C.C.* Plaintiffs allege that their separation caused them to suffer severe emotional distress and "physical trauma." (*Id.* ¶ 147.) B.Y.C.C. claims to have experienced "depression, headaches, stomachaches, and heart palpitations; feelings of panic, tenseness, and worry; and an inability to sleep and loss of appetite" while separated from her son. (*Id.* ¶ 156.) B.Y.C.C. alleges that symptoms such as lack of appetite, insomnia, headaches, and fainting episodes have persisted since reunification. (*Id.* ¶¶ 157-58.) M.S.C.C. claims to have suffered feelings of fear, confusion, and anger while separated from his mother. (*Id.* ¶¶ 148-50.) After M.S.C.C. was reunified with his mother, he exhibited "distrust and defensive behavior towards his mother" and "was often irritable and angry." (*Id.* ¶¶ 150-51.) M.S.C.C. also "exhibited additional signs of anxiety and fear," with difficulty sleeping and fear of law enforcement. (*Id.* ¶ 152.) M.S.C.C. "continues to demonstrate fear, worry, and sadness when he is apart from his mother." (*Id.* ¶ 154.)

After submitting administrative tort claims to the United States Department of Homeland Security ("DHS"), the U.S. Immigration and Customs Enforcement ("ICE"), CBP, and HHS on May 5, 2020, *B.Y.C.C.* Plaintiffs initiated this civil action under the FTCA on November 14, 2022.

4

(*See id.* ¶ 16.) *B.Y.C.C.* Plaintiffs assert eight tort claims in the Complaint: intentional infliction of emotional distress ("IIED") (Count I); negligence (Count II); negligent supervision (Count III); negligent undertaking (Count IV); tortious interference with the parent-child relationship (Count V); abuse of process (Count VI); assault and battery (Count VII); and breach of fiduciary duty (Count VIII). (*Id.* ¶¶ 213-62.) As compensation for their claims, *B.Y.C.C.* Plaintiffs each seek damages in the amount of $3,000,000. (*Id.* at 77-78.)

### B.   *J.A.L.C.* Plaintiffs

*J.A.L.C.* Plaintiffs are Honduran nationals who currently reside in New Brunswick, New Jersey. (Compl. ¶¶ 9-10, *J.A.L.C.*, ECF No. 1.) On or about April 7, 2018, J.A.L.C. crossed the United States border near Hidalgo, Texas, with his then four-year-old daughter, L.L.G. (*Id.* ¶¶ 5, 82.) Shortly after crossing the border, *J.A.L.C.* Plaintiffs allege that they walked to a port of entry and encountered CBP officers, who took them to the Rio Grande Valley Centralized Processing Center in McAllen, Texas, where they were detained. (*See id.* ¶¶ 82-83.) On the evening of their arrival, immigration officers separated *J.A.L.C.* Plaintiffs, accusing J.A.L.C. of stealing L.L.G. (*Id.* ¶¶ 5, 88.) An officer told J.A.L.C. he would never see his daughter again. (*Id.* ¶ 90.) J.A.L.C. was then transferred to the Port Isabel Service Processing Center and the Laredo Detention Center, both in Texas; one month later he was transferred to the Elizabeth Detention Center in New Jersey. (*Id.* ¶¶ 96, 100-01.) On or about April 9, 2018, L.L.G. was transferred to Grand Rapids, Michigan, where Bethany Christian Services, an ORR contractor, placed her with a woman and two children who did not speak Spanish. (*Id.* ¶¶ 104-06.)

J.A.L.C. was flown to Grand Rapids and, on July 10, 2018, *J.A.L.C.* Plaintiffs were reunited after ninety-three days of separation. (*Id.* ¶¶ 118-25.) *J.A.L.C.* Plaintiffs allege that their separation caused them to suffer "severe emotional distress, physical trauma, and impairment of their

relationship." (*Id.* ¶ 128.) L.L.G. alleges that as a result of her separation from J.A.L.C., she continues to suffer from trauma and the fear that her father will again be taken from her, and still experiences pain from the separation. (*Id.* ¶¶ 129-32.) J.A.L.C. alleges that he suffered "intense emotional distress" as a result of the separation and that he continues to suffer from "abnormal stress and worry," "flashbacks and triggers of the separation," and fear of being separated from his daughter again. (*Id.* ¶¶ 133-34.) He further alleges that he suffers "from difficulty sleeping and headaches" that "began while he was in Government detention." (*Id.* ¶ 135.)

After submitting administrative tort claims to DHS, ICE, CBP, and HHS in April 2020, (*id.* ¶ 16), *J.A.L.C.* Plaintiffs initiated this civil action under the FTCA on November 14, 2022. (*See generally id.*) *J.A.L.C.* Plaintiffs assert nine tort claims in the Complaint: IIED (Count I); negligent infliction of emotional distress ("NIED") (Count II); negligence (Count III); negligent undertaking (Count IV); breach of fiduciary duty (Count V); child abduction (Count VI); abuse of process (Count VII); assault and battery (Count VIII); and loss of consortium (Count IX). (*Id.* ¶¶ 201-49.) As compensation for their claims, *J.A.L.C.* Plaintiffs each seek damages in the amount of $3,000,000. (*Id.* at 72-73.)

**C.   *R.J.P.* Plaintiffs**

*R.J.P.* Plaintiffs are Guatemalan nationals who currently reside in Trenton, New Jersey. (Compl. ¶¶ 11-12, *R.J.P.*, ECF No. 1.) On or about June 15, 2018, R.J.P. crossed the United States border near the Bridge of Americas Port of Entry in El Paso, Texas, with his then 12-year-old son, O.R.J.J. (*See id.* ¶¶ 12, 84.) Shortly after crossing the border, *R.J.P.* Plaintiffs allege that they approached CBP officers intending to request permission to seek asylum. (*Id.* ¶ 84.) The CBP officers took *R.J.P.* Plaintiffs into custody and transported them to the El Paso Service Processing Center, where they were detained for approximately three days. (*See id.* ¶¶ 87-95.)

6

On or about June 17, 2018, *R.J.P.* Plaintiffs were separated when R.J.P. was transferred to the custody of the United States Marshals Service (the "Marshals") to be prosecuted for illegal entry, with one CBP officer telling R.J.P. that he would not see O.R.J.J. again. (*See id.* ¶¶ 96-97, 100.) The two would not hear each other's voices again for more than two weeks. (*Id.* ¶ 97.) The Marshals took R.J.P. to the El Paso County Jail, eventually transferring him to the custody of ICE. (*See id.* ¶¶ 100, 109.) ICE subsequently detained R.J.P. at the Cibola County Correctional Center ("Cibola") in Milan, New Mexico. (*See id.*) Before his transfer to Cibola, on or about June 18, 2018, R.J.P. pled guilty to illegal entry in violation of 8 U.S.C. § 1325 and was allegedly sentenced to time served. (*See id.* ¶ 105.) O.R.J.J. was first bussed to the Clint Border Patrol Station in Clint, Texas, then transferred to the Southwest Key Casa Houston shelter in Houston, Texas. (*See id.* ¶¶ 101-102, 111.) *R.J.P.* Plaintiffs were reunited in El Paso, Texas on or about July 24, 2018, after approximately five weeks apart, and released together into the United States. (*See id.* ¶¶ 146-53.) The United States granted R.J.P. and O.R.J.J. asylum in September 2021 and May 2021, respectively. (*See id.* ¶¶ 11-12.)

*R.J.P.* Plaintiffs allege that their separation caused them to suffer significant emotional distress, which has "manifested partly in physical symptoms." (*See id.* ¶¶ 154-55.) R.J.P. claims to have experienced "severe headaches, stomachaches, gastrointestinal distress, deep worry, tenseness, sadness, anxiety, difficulty sleeping, nightmares, and a loss of weight and appetite" while separated from his son. (*See id.* ¶ 156.) R.J.P. alleges that symptoms of fear, worry, preoccupation, gastritis, and insomnia have persisted since reunification. (*See id.* ¶¶ 160-62.) O.R.J.J. claims to have suffered "extreme emotional distress," including feelings of fear, sadness, mental anguish, anxiety, depression, irritability, and hopelessness, while separated from his father. (*See id.* ¶¶ 163-66.) O.R.J.J. also alleges that he experienced loss of appetite, issues with

concentration, and disrupted sleep. (*See id.* ¶ 166.) Furthermore, O.R.J.J. alleges that since reunification with his father, he still experiences "recurrent, involuntary, intrusive, and distressing memories of being separated from his father" as well as feelings of fear, sadness, anger, and isolation. (*See id.* ¶¶ 168-69.) The separation from his father has "permanently changed" his demeanor, as O.R.J.J. alleges that he is no longer as outgoing or trusting as before the separation. (*See id.* ¶¶ 170-72.)

After submitting administrative tort claims to DHS, ICE, CBP, and HHS in June 2020, *R.J.P.* Plaintiffs initiated this civil action under the FTCA on November 14, 2022. (*See id.* ¶ 18.) *R.J.P.* Plaintiffs assert six tort claims in the Complaint: IIED (Count I); negligence (Count II); negligent supervision (Count III); negligent undertaking (Count IV); tortious interference with the parent-child relationship (Count V); and breach of fiduciary duty (Count VI). (*See id.* ¶¶ 235-72.) As compensation for their claims, *R.J.P.* Plaintiffs each seek damages in the amount of $2,500,000. (*Id.* at 80.)

## II.   <u>LEGAL STANDARD</u>

Defendant moves to dismiss the Complaints for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)[7] and for failure to state a claim under Rule 12(b)(6). A district court may treat a party's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) as either a facial or factual challenge to the court's jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "In reviewing a factual attack, the court may consider evidence outside the

---

[7] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

pleadings." *Id.* (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)); *see also United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). The Government concedes that its Motions present facial challenges except to the extent Plaintiffs' claims are based on the allegedly tortious conduct of an ORR contractor, a point which Plaintiffs deny. (Def.'s Moving Br. 10, *B.Y.C.C.*; Pls.' Opp'n Br. 35 n.71.) The Court, accordingly, construes these Motions as presenting facial challenges.

A district court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "[N]o presumptive truthfulness attaches to [a] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

On the other hand, when analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III.  DISCUSSION

The Government moves to dismiss Plaintiffs' claims both on account of its federal sovereign immunity and because Plaintiffs' factual allegations do not support their claims under

the FTCA. (*See generally* Def.'s Moving Br., *B.Y.C.C.*) The Court will first examine the Government's Rule 12(b)(1) arguments and then analyze its Rule 12(b)(6) arguments.

### A.     Rule 12(b)(1)—Lack of Subject-Matter Jurisdiction

"[T]he United States enjoys sovereign immunity from suits and, accordingly, may be sued only if it has waived that immunity." *Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d 91, 93-94 (3d Cir. 1995). "Waivers of federal sovereign immunity must be unequivocally expressed in the statutory text and any such waiver must be strictly construed in favor of the United States." *Id.* at 94 (alterations and internal quotation marks omitted). As of today, Congress has implemented three major statutory waivers of sovereign immunity: the FTCA, the Tucker Act, and the Administrative Procedure Act. *See* Sarah L. Brinton, *Three-Dimensional Sovereign Immunity*, 54 Santa Clara L. Rev. 237, 249 (2014). "Thus, a suit against the United States must usually fall within the parameters of these three statutory waivers for a federal court to have jurisdiction over it." *C.D.A. v. United States*, No. 21-469, 2023 WL 2666064, at *12 (E.D. Pa. Mar. 28, 2023).

Here, the Government asserts sovereign immunity against Plaintiffs' FTCA claims; while the Government recognizes the FTCA as a limited waiver of federal sovereign immunity, the Government contends that certain exceptions to said waiver apply. (*See* Def.'s Moving Br. 11, *B.Y.C.C.*) The FTCA states that "[t]he United States shall be liable" for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Federal courts "have exclusive jurisdiction of civil actions" raising such claims. 28 U.S.C. § 1346(b)(1). The FTCA therefore acts as an express statutory waiver of sovereign immunity that is needed for an individual to sue the United States. *See Beneficial Consumer Disc. Co.*, 47 F.3d at 94. Nevertheless, the FTCA is not without its exceptions. *See, e.g.*, 28 U.S.C. § 2680 (listing statutory exceptions to FTCA). "Should an exception apply, waiver of federal sovereign immunity

would no longer exist, and a court would lose its subject-matter jurisdiction over the case before it." *C.D.A.*, 2023 WL 2666064, at *13.

Here, the Government points to six FTCA exceptions that it believes invalidates the Court's jurisdiction over Plaintiffs' claims: (1) the discretionary function exception; (2) the "due care" exception; (3) the private analog exception; (4) the constitutional claims exception; (5) the systemic claims exception; and (6) the independent contractor exception. (*See* **Def.'s Moving Br.** 11-37, *B.Y.C.C.*)[8] The Court examines each exception in turn.

### i.    *Discretionary Function Exception*

The first exception raised by the Government is the discretionary function exception. (*Id.* at 11.) Under this exception, courts lack jurisdiction over any FTCA claim that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "In other words, if a government employee had discretion over their actions that resulted in allegedly tortious conduct, a plaintiff may not bring a suit against the United States under the FTCA for said conduct." *C.D.A.*, 2023 WL 2666064, at *13. "The [G]overnment bears the burden of proving that the discretionary function exception applies." *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011).

Courts conduct a two-step inquiry for determining whether to apply the discretionary function exception to an FTCA claim. First, the "court must determine whether the act giving rise to the alleged injury and thus the suit involve[d] an 'element of judgment or choice.'" *Merando v.*

---

[8] The Government raises the same exceptions in each of their Motions to Dismiss for all three cases, except focuses less on the independent contractor exception argument in moving to dismiss *J.A.L.C.* Plaintiffs' claims. (*Compare* **Def.'s Moving Br.** 11-36, *B.Y.C.C.*, *with* **Def.'s Moving Br.** 11-36, *R.J.P.*, ECF No. 14-1, *and* **Def.'s Moving Br.** 11-36, *J.A.L.C.*, ECF No. 15-1.)

*United States*, 517 F.3d 160, 164 (3d Cir. 2008) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). "If a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' the exception does not apply because 'the employee has no rightful option but to adhere to the directive.'" *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir. 2012) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If, however, "a specific course of action is not prescribed, [the court] proceed[s] to the second step, which requires [the court] to determine whether the challenged action or inaction is of the kind that the discretionary function exception was designed to shield." *Id.* (citation and internal quotation marks omitted).

Here, as numerous other courts have similarly held, the Court finds it "unnecessary . . . to go beyond the first step of this inquiry, as the Government's alleged conduct did not an involve an element of judgment or choice." *See C.D.A.*, 2023 WL 2666064, at *14 (rejecting the discretionary function exception under similar circumstances); *see also A.F.P. v. United States*, No. 21-780, 2022 WL 2704570, at *12 (E.D. Cal. July 12, 2022) (finding, in circumstances like those alleged here relating to forced family separation, that the "discretionary function exception does not shield the [G]overnment from liability for unconstitutional conduct"). Indeed, the Government concedes that over fifteen federal district courts have rejected its argument but asks this Court to diverge from those courts' findings. (*See* Def.'s Moving Br. 26 n.7, *B.Y.C.C.*) In the cases at issue, all actions taken against Plaintiffs described in the Complaints—their respective separations, potential prosecutions, detentions, and so forth—stem from the Policy. (*See generally* Compl., *B.Y.C.C.*) Because these actions all stem from the Policy, the Court finds that they were, therefore, all part of the "course of action" prescribed by the Policy. *See S.R.P.*, 676 F.3d at 333 (quoting *Berkovitz*, 486 U.S. at 536); *see also A.P.F. v. United States*, No. 20-65, 492 F. Supp. 3d 989, 996-97 (D.

Ariz. 2020) (explaining that allegations related to conditions of confinement, treatment of the plaintiff children during and after the separations, and the Government's tracking system (or lack thereof) "are factual allegations primarily aimed at demonstrating the harm resulting from the separations"). The Court, accordingly, finds that the Government has failed to prove that the discretionary function exception applies.

### ii.    *Due Care Exception*

Next, the Government contends that the Court cannot hear Plaintiffs' FTCA claims because of the due care exception. (Def.'s Moving Br. 26, *B.Y.C.C.*) The due care exception applies in instances where tort claims raised by a plaintiff are "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). The "*Welch* test" governs a due care analysis. *See A.F.P.*, 2022 WL 2704570, at *14. First, the court must "determine whether the statute or regulation in question specifically pr[e]scribes a course of action for an officer to follow." *Welch v. United States*, No. 04-1863, 409 F.3d 646, 652 (4th Cir. 2005). Second, "if a specific action is mandated, [the court] inquire[s] as to whether the officer exercised due care in following the dictates of that statute or regulation. If due care was exercised, sovereign immunity has not been waived." *Id.*

The Court once again agrees with other federal district courts that "the [C]ourt's analysis need not go further than step one." *See C.D.A.*, 2023 WL 2666064, at *15 (rejecting the due care exception under similar circumstances). Indeed, the Government again acknowledges that at least ten federal district courts have rejected the Government's due care exception argument. (*See* Def.'s Moving Br. 28 n.8, *B.Y.C.C.*) Here, there was no "statute or regulation . . . pr[e]scrib[ing] a course of action" for the federal employees described in the Complaints regarding their actions taken that

resulted in the alleged tortious conduct. *See Welch*, 9 F.3d at 652. "Rather, the employees were conforming with the [Policy], which is neither a statute nor a regulation." *C.D.A.*, 2023 WL 2666064, at *15; *see D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 597-98 (S.D.N.Y. 2022) ("[T]he [due care exception] covers only actions taken pursuant to a 'statute or regulation.' . . . Accordingly, the suit is not barred by this exception." (quoting 28 U.S.C. § 2680(a))); *Wilbur P.G. v. United States*, No. 21-4457, 2022 WL 3024319, at *5 (N.D. Cal. May 10, 2022) ("[T]he separations were conducted pursuant to executive policy, not pursuant to any statute or regulation; such actions are not shielded by the due care exception." (quoting *Nunez Euceda v. United States*, No. 20-10793, 2021 WL 4895748, at *4 (C.D. Cal. Apr. 27, 2021))). Simply put, the Complaints allege that the children were unaccompanied not because of any statutory obligation, but rather because of the Government's fulfilment of the Policy of detaining the children's parents. (*See, e.g.*, Compl., *B.Y.C.C.* ¶¶ 22-23 (explaining that before Defendant began implementing the Policy in 2017, "parents arriving in the United States with their children generally remained together").) *See Wilbur P.G.*, 2022 WL 3024319, at *5 ("In this instance, the unavailability of the parents was due to them being detained for immigration proceedings or prosecution."). The Court, therefore, concludes that the Government has failed to meet its burden to demonstrate that the due care exception applies.

### iii.    *Private Analogs*

The Government asserts that the Court must dismiss Plaintiffs' FTCA claims because they have no private analog. (Def.'s Moving Br. 28, *B.Y.C.C.*) The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Lomando v. United States*, 667 F.3d 363, 372 (3d Cir. 2011). To satisfy the

private analog requirement, a plaintiff does not need to demonstrate that the United States had been under the exact "same circumstances" of that of a private person in committing its allegedly tortious conduct—only that it had been under "like circumstances." *United States v. Olson*, 546 U.S. 43, 46 (2005) (emphases omitted) (quoting 28 U.S.C. § 2674). If the Court finds no private analog to a particular FTCA claim, the Court must dismiss that claim. *See id.*

To begin, the Court notes that numerous federal district courts have rejected the Government's argument that because the Government's prosecutions and detention decisions are decisions that no private actor is empowered to make, the United States is immune from suit. (*See* Def.'s Moving Br. 31, *B.Y.C.C.*; Pls.' Opp'n Br. 60 n.87 (compiling list of courts that have found private analogs for separated families' claims).) *See C.D.A.*, 2023 WL 2666064, at *16 (rejecting Government's same argument). "To say that the challenged action is one that only the federal government does in fact perform does not necessarily mean that no private analog[ ] exists." *Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012). Other courts have found it impossible for the Court to perform a full private analog analysis at this stage because doing so would first require a determination on which state law applies to a plaintiff's claims, and these choice-of-law questions are fact-intensive. *See, e.g.*, *D.J.C.V.*, 605 F. Supp. 3d at 600-02 (discussing whether the complaint properly alleged IIED, NIED, and negligence under New York law to ascertain whether plaintiffs satisfied private analog requirement). This Court similarly finds such an analysis impossible to conduct at this juncture. To the extent that the Court does not believe that any private analog exists under any of the laws of the relevant states—here, Texas or Michigan—for a particular FTCA claim raised by Plaintiffs, the Court will address and dismiss those claims in the Rule 12(b)(6) analysis below. Nevertheless, for those claims that do survive the Court's Rule 12(b)(6) analysis, the Court must hold off on concluding whether a private analog exists until the

Court renders a decision on choice of law after the factual record is developed. *See C.D.A.*, 2023 WL 2666064, at *16 (setting forth this analytical framework to assess whether a private analog existed in a different family separation case).

### iv.   *Constitutional Claims*

The Government contends that in Plaintiffs' efforts to avoid application of the discretionary function exception, Plaintiffs allege that the Government violated their constitutional rights; because the FTCA does not authorize constitutional tort claims, the Government contends that Plaintiffs' claims must fail. (Def.'s Moving Br. 32-33, *B.Y.C.C.*) It is true that the FTCA does not authorize a constitutional tort claim. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994). As the Supreme Court explained in *Meyer*, a claim is actionable under the FTCA only if the United States would be liable as a "'private person' 'in accordance with the law of the place where the act or omission occurred.'" *Id.* at 477 (quoting 28 U.S.C. § 1346(b)). A constitutional tort claim could not contain such an allegation. *Id.* at 477-78.

Here, however, Plaintiffs clearly do not plead constitutional violations but, rather, plead tort claims under Texas and Michigan law arising from the acts and/or omissions of federal employees. (*See, e.g.*, Compl. ¶¶ 212-62, *B.Y.C.C.*; Compl. ¶¶ 200-49, *J.A.L.C.*; Compl. ¶¶ 234-72, *R.J.P.*) As one district court eloquently put it in rejecting the Government's same argument in a different family separation case, the Government:

> conflates the difference between a cause of action and a basis for immunity from a cause of action. Here, Plaintiffs are asserting causes of action based on state tort law[,] not constitutional law. The issue of constitutional rights is relevant only with respect to whether Defendant had discretion to act as it did and, therefore, whether it retains immunity from suit regarding Plaintiffs' state law causes of action.

*D.A. v. United States*, No. 22-295, 2023 WL 2619167, at *9 (W.D. Tex. Mar. 23, 2023). The Court

finds this explanation, and similar findings by other district courts, persuasive. *See Nunez Euceda*,

2021 WL 4895748, at *3-4 (declining to dismiss the plaintiffs' FTCA claims based on same

argument); *A.E.S.E. v. United States*, No. 21-569, 2022 WL 4289930, at *14 (D.N.M. Sept. 16,

2022) (explaining that regardless of the Government's argument, the plaintiffs based their claim

on more than alleged unconstitutional conduct); *Dalal v. Molinelli*, No. 20-1434, 2021 WL

1208901, at *10 n.12 (D.N.J. Mar. 30, 2021) ("The fact that a constitutional tort is not a cognizable

claim [under the FTCA] does not mean that a plaintiff cannot bring a state tort law claim against

the federal government based on identified constitutional defects."). The Court, accordingly,

rejects the Government's argument.

   *v.*  ***Systemic Torts***

   Next, the Government contends that Plaintiffs' claims are barred because they consist of

systemic claims against the Government as a whole and the FTCA does not authorize such

systemic tort claims.[9] (Def.'s Moving Br. 34, *B.Y.C.C.*) "The FTCA limits suits against the

Government to those based on the conduct of government employees." *E.S.M. v. United States*,

No. 21-29, 2022 WL 11729644, at *2 (D. Ariz. Oct. 20, 2022) (citing 28 U.S.C. § 1346(b)). Thus,

"plaintiffs may not assert 'systemic' claims against the Government writ large." *Id.* (citation

omitted).

   The Court does not agree with the Government's assertions that Plaintiffs' FTCA claims

are systemic. The Complaints make numerous references to the actions of individual Government

employees. (*See, e.g.*, Compl. ¶ 98, *B.Y.C.C.* ("Two uniformed and armed officers sat in the front

---

[9] It is not lost on the Court that in making this argument, the Government apparently concedes, in contradiction to the Government's prior argument on constitutional claims, that Plaintiffs are indeed asserting tort claims, not constitutional violations. (*See* Def.'s Moving Br. 35, *B.Y.C.C.*)

of the vehicle, and . . . did not tell [B.Y.C.C.] where they were going or give any indication that they would be separating [B.Y.C.C.] from her three-year-old son."); Compl. ¶ 83, *J.A.L.C.* (explaining the specific actions of one male officer toward J.A.L.C. and L.L.G.).) Insofar as the Government objects to Plaintiffs' failure to name many of the officers the Complaints reference, that issue can and should be resolved through discovery—not on a motion to dismiss. *See Wilbur P.G.*, 2022 WL 3024319, at *6 ("The fact that [plaintiffs] are unable to name the individual [b]order [p]atrol officers who forcibly separated them and detention center employees without the benefit of discovery, should not be fatal to their action, particularly given that none of the [p]laintiffs spoke English at the time of detention . . . ."). Indeed, numerous other courts have rejected the Government's systemic torts argument in similar cases. (*See* Pls.' Opp'n Br. 66 n.92 (compiling cases).) *See, e.g., A.F.P.*, 2022 WL 2704570, at *18; *K.O. by & through E.O. v. United States*, No. 20-12015, 2023 WL 131411, at *12 (D. Mass. Jan. 9, 2023). The Court, accordingly, denies the Government's Motion to Dismiss based on the systemic torts argument.

### *vi.* *Independent Contractor Exception*

In a final attempt to dismiss this action based on jurisdictional grounds, the Government asserts that, at the very least, the Court should dismiss any FTCA claims premised on the conditions that Plaintiffs experienced while housed at "facilities run by contractors," including the ORR-contracted facilities where the minor Plaintiffs were detained, based on the independent contractor exception. (*See* Def.'s Moving Br. 37, *B.Y.C.C.*; Def.'s Moving Br. 7 n.5, *J.A.L.C.*, ECF No. 15-1; Def.'s Moving Br. 36, *R.J.P.*, ECF No. 14-1.) The FTCA's reach typically does not extend to the actions of "any contractor with the United States." 28 U.S.C. § 2671. The Government may still be liable for an independent contractor's tortious conduct, however, if it "control[s] the physical conduct of the contractor in performance of the contract." *Logue v. United*

18

*States*, 412 U.S. 521, 527 (1973). To ascertain this, the court must ask "whether [the contractor's] day-to-day operations [were] supervised by the . . . Government." *United States v. Orleans*, 425 U.S. 807, 815 (1976).

Here, Plaintiffs plead a number of tortious acts that preceded the minor Plaintiffs' placements at ORR-contracted facilities. (*See, e.g.*, Compl. ¶¶ 19-80, 101-06, *B.Y.C.C.*; Compl. ¶¶ 19-90, *J.A.L.C.*; Compl. ¶¶ 21-82, 95-100, 106, *R.J.P.*) The Complaints also detail tortious conduct that occurred after the ORR placements, including the Government's failure to provide information to the separated family members and facilitate communication between them (Compl. ¶¶ 107, 109, 114, 125-29, *B.Y.C.C.*; Compl. ¶¶ 95, 99, 105, 108, 113, *J.A.L.C.*; Compl. ¶¶ 21-82, 95-100, 106, *R.J.P.*), and the mishandling of two reunifications (Compl. ¶¶ 119-20, *J.A.L.C.*; Compl. ¶¶ 137-45, *R.J.P.*). Plaintiffs attribute much of this tortious conduct to federal employees at the facilities housing the separated parents, which were run by ICE, and to federal employees responsible for reunifying separated families, who worked for ICE and ORR. (*See generally* Compl., *B.Y.C.C.*) Indeed, the gravamen of Plaintiffs' Complaints is a challenge to the Policy, and at least one district court has found, when presented with the same argument by the Government, that such a challenge is enough to survive a motion to dismiss. *See A.P.F.*, 492 F. Supp. 3d at 997 (declining to apply the independent contractor exception where the complaint "traces th[e] harm back to CBP officials' separation of [p]laintiff families" because, "[h]ad the families remained intact, no foster-ca[r]e abuse would have occurred"). To the extent the Government raises an argument that contractors caused Plaintiffs' harm, and not the Government, "this raises a fact-intensive issue inappropriate for resolution at this stage." *See id.* at 998. The Court, thus, finds that at this stage, the independent contractor exception does not bar Plaintiffs' claims.

In sum, the Court finds each of the FTCA exceptions raised in the Government's Motions to Dismiss either inapplicable or presently lacking in factual support. *See C.D.A.*, 2023 WL 2666064, at *18 (reaching the same conclusion when presented with all but one of the Government's arguments presented in this case). As such, the Court maintains subject-matter jurisdiction over Plaintiffs' FTCA claims. The Court next addresses the Government's Rule 12(b)(6) arguments regarding Plaintiffs' alleged failure to state a claim.

### B.  Rule 12(b)(6)—Failure to State a Claim

In the alternative to its Rule 12(b)(1) arguments, the Government asks the Court to dismiss Plaintiffs' FTCA claims for failure to state a claim. (*See, e.g.*, Def.'s Moving Br. 36, *B.Y.C.C.*) Before discussing these claims, the Court must address two preliminary matters. *First*, the parties have raised choice-of-law issues that the Court must eventually resolve. While the parties agree that Texas law applies to the FTCA claims in the *B.Y.C.C.* and *R.J.P.* cases, *J.A.L.C.* Plaintiffs contend that Michigan law should apply to their claims, whereas the Government contends that the Court should apply Texas law. (Def.'s Reply Br. 13, *B.Y.C.C.*, ECF No. 28.) "[W]hen confronted with a choice of law issue at the motion to dismiss stage, courts within the Third Circuit have concluded that it is more appropriate to address the issue at a later stage in the proceedings." *Graboff v. The Collern Firm*, No. 10-1710, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010); *see C.D.A.*, 2023 WL 2666064, at *21 (deferring on the choice of law question at the motion to dismiss stage in a similar family separation case). Thus, this Court will defer on the disputed choice of law questions at this stage and will instead assess *J.A.L.C.* Plaintiffs' FTCA claims first under Texas law; if any such claim does not survive under Texas law, the Court will analyze it under Michigan law. *See C.D.A.*, 2023 WL 2666064, at *21 (explaining that "[s]hould a claim be deemed sufficient within any one of these states, the claim will survive"). (*See also* Pls.' Moving Br. 90-91 n.103,

*B.Y.C.C.* (asking the Court to analyze *J.A.L.C.* Plaintiffs' arguments under both Michigan and Texas law should the Court find the choice-of-law analysis premature).)

*Second*, the Government contends that Plaintiffs' FTCA claims are generally barred under Texas law because the claims of detention and separation challenge privileged conduct. (*See* Def.'s Moving Br. 38, *B.Y.C.C.*) The Court agrees with the United States District Court for the Eastern District of Pennsylvania that this argument is "misguided." *See C.D.A.*, 2023 WL 2666064, at *22. It is true that the Government is entitled to invoke state law privileges as a defense against FTCA claims. *See, e.g., Villafranca v. United States*, 587 F.3d 257, 261-62 (5th Cir. 2009) (raising civil privilege defense under Texas law). Here, however, the Government cites no privileges relevant to Plaintiffs' claims. As in *C.D.A.*, the Government simply points to two cases in which it successfully invoked privileges against plaintiffs asserting FTCA claims against the United States Immigration and Naturalization Service. (*See* Def.'s Moving Br. 38-40, *B.Y.C.C.*); *C.D.A.*, 2023 WL 2666064, at *22. "Nevertheless, these cases involved the claim of false imprisonment, which contains elements that, while slightly varied by state, generally privilege the conduct of immigration officers acting under the authority of law." *C.D.A.*, 2023 WL 2666064, at *22. Plaintiffs in these related matters raise no false imprisonment claims, nor do the claims they raise, like those in *C.D.A.*, contain elements that would grant comparable privileges to those employees of the Government whose conduct is in question. *See id.* (rejecting the Government's identical argument). The Court, therefore, finds that Plaintiffs' claims do not fail under Texas law because of the existence of privileged conduct.

The Court now turns to the question of whether Plaintiffs have plausibly pled their FTCA claims. The Court begins by assessing the allegations of Plaintiffs under Texas law, before additionally analyzing certain allegations in the *J.A.L.C.* Complaint under Michigan law.

### i.   *Texas Law*

#### a.   **IIED and NIED**

Defendant first contends that applicable state law bars Plaintiffs' claims for IIED. (Def.'s Moving Br. 40, *B.Y.C.C.*)[10] In Texas, a plaintiff must establish the following for an IIED claim: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

Defendant's sole challenge to Plaintiffs' IIED claims rests on whether the conduct in question was "extreme or outrageous." (Def.'s Moving Br. 40-41, *B.Y.C.C.*) Texas courts evaluating this standard consider "the entire set of circumstances surrounding the conduct, such as the defendant's course of conduct, the context of the parties' relationship, whether the defendant knew the plaintiff was particularly susceptible to emotional distress, and the defendant's motive or intent." *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 203 (Tex. App. 2017). "If reasonable minds could differ on whether the acts in question . . . were so extreme and outrageous as to go beyond all possible bounds of decency and were atrocious and utterly intolerable in a civilized community," then the issue must be submitted to the trier of fact. *Motsenbocker v. Potts*, 863 S.W.2d 126, 133 (Tex. App. 1993) (holding that increase in plaintiff's health insurance

---

[10] When moving to dismiss, the Government generally assumes Texas law applies to Plaintiffs' claims (including those of *J.A.L.C.* Plaintiffs) and, thus, asserts several of the same collective arguments against Plaintiffs, with separate arguments in footnotes under Michigan law in its Motion to Dismiss *J.A.L.C.* Plaintiffs' claims. (*See, e.g.*, Def.'s Moving Br. 40, *B.Y.C.C.*; Def.'s Moving Br. 47 n.17, *J.A.L.C.*) The Court, accordingly, uses "Plaintiffs" when addressing the arguments contained within the Government's briefing, but as mentioned, the Court will also separately conduct an analysis of certain claims as they pertain to *J.A.L.C.* Plaintiffs under Michigan law below.

deductible from $300 to $50,000 after employer learned plaintiff had terminal cancer presents triable IIED claim).

The Court agrees with numerous other courts across the country that the conduct alleged in these matters more than satisfies this requirement. (*See* Pls.' Opp'n Br. 74-75 n.98 (compiling cases).). *See, e.g.*, *Ms. L. v. U.S. Immigr. and Customs Enf't*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018) (finding the alleged practices "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience"); *A.I.I.L. v. Sessions*, No. 19-481, 2022 WL 992543, at *7 (D. Ariz. Mar. 31, 2022) ("[A] jury could find the [G]overnment's conduct extreme and outrageous and that such emotional distress resulted from the [G]overnment's conduct."). Here, Plaintiffs plausibly allege that the purpose of the Policy was to terrorize children and their parents so that other Central American families would not come to the United States. (Compl. ¶¶ 19, 65, 179-81, *B.Y.C.C.*) Plaintiffs further plead that executive officials set the Policy in motion knowing that the relevant agencies lacked systems for tracking and reuniting the separated families. (*Id.* ¶¶ 4, 37, 42, 49, 58.) Further, Plaintiffs allege that they were migrants fleeing life-threatening persecution, so they were already susceptible to emotional distress exacerbated intentionally by the Policy. (*Id.* ¶¶ 92, 179, 222; Compl. ¶¶ 83, 244, *R.J.P.*; Compl. ¶ 101, *J.A.L.C.*) And Plaintiffs plead specific facts of extreme and outrageous conduct that gave rise to emotional distress based on their own circumstances. (*See, e.g.*, Compl. ¶ 7, *R.J.P.* (*R.J.P.* Plaintiffs alleging that when R.J.P.'s misdemeanor criminal case concluded, the Government did not reunify him with his son who was only a few miles away but rather, transported the two to facilities almost 1,000 miles apart, where they were separated for approximately thirty-seven days); Compl. ¶¶ 133-36, *J.A.L.C.* (describing the intense emotional distress experienced by J.A.L.C. for the ninety-three days he was separated from L.L.G.—the effects of which J.A.L.C. allegedly continues to suffer).) Such facts are plainly

enough for a jury to potentially find extreme and outrageous conduct. For these reasons, several district courts applying Texas law in other family separation cases, including those in which an adult was prosecuted for illegal entry, have allowed IIED claims to proceed past the pleading stage. *E.g.*, *A.F.P.*, 2022 WL 2704570, at *17-18.

The Government also contends that Plaintiffs' IIED claims fail because Texas prohibits "a person convicted of a crime from suing another for damages caused by [the] conviction." (Def.'s Moving Br. 40-41, *B.Y.C.C.* (citing *Jones v. Hyman*, 107 S.W.3d 830, 831-32 (Tex. App. 2003)).) Based on this, the Government contends that Plaintiffs' claims for IIED must fail because they are based on law enforcement separating parents from their children due to the parent's criminal detention for potential prosecution. (Def.'s Moving Br. 40-41, *B.Y.C.C.*) But Plaintiffs are not suing the Government "for damages caused by [a] conviction." (*See id.*) Neither B.Y.C.C. nor J.A.L.C. was convicted of a crime. (Compl. ¶¶ 5, 54, *B.Y.C.C.*; Compl. ¶ 150, *J.A.L.C.*) And, by Plaintiffs' own admission, R.J.P. challenges neither the Government's decision to refer him for prosecution nor his misdemeanor conviction but rather, CBP's engineering of a prolonged separation by transporting him and O.R.J.J. to facilities a thousand miles apart after R.J.P. had been released from criminal custody. (Pls.' Opp'n Br. 75; Compl. ¶ 106, *R.J.P.*) The Court, thus, finds that Plaintiffs have plausibly alleged IIED claims.

The Court briefly turns to *J.A.L.C.* Plaintiffs' NIED claim, brought on J.A.L.C.'s behalf, which the Government moves to dismiss on the grounds that Texas does not recognize such a claim, regardless of the severity of the alleged emotional distress suffered. (Def.'s Moving Br. 42, *J.A.L.C.*) J.A.L.C. Plaintiffs do not dispute that under Texas law there is no independent cause of action for NIED; instead, they simply contend that such a claim is permitted under Michigan law. (*See* Pls.' Opp'n Br. 94.) The Court, accordingly, addresses this claim below in its analysis of

24

*J.A.L.C.* Plaintiffs' claims under Michigan law. Should the Court find that *J.A.L.C.* Plaintiffs cannot state a claim under Michigan law, the NIED claim shall be dismissed. *See C.D.A.*, 2023 WL 2666064, at *23 (dismissing NIED claim under Texas law because such a claim is not recognized in Texas).

> **b.   Negligence, Negligent Undertaking, and Breach of Fiduciary Duty**

Next, Defendant contends that applicable state law bars Plaintiffs' claims for negligence and negligent undertaking. (Def.'s Moving Br. 41, *B.Y.C.C.*; Def.'s Moving Br. 41, *R.J.P.*; Def.'s Moving Br. 43, *J.A.L.C.*) Because these claims involve an analysis of the existence of a duty, the Court also addresses Defendant's argument for the dismissal of Plaintiffs' breach of fiduciary duty claims. (Def.'s Moving Br. 55, *B.Y.C.C.* ("The Court should dismiss Plaintiffs' breach of fiduciary duty claim[s] because they, again, have failed to plausibly plead the breach of any duty.").)

A plaintiff bringing a claim for negligence must show: (1) a legal duty; (2) a breach of that duty; and (3) damage proximately caused by the breach. *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App. 2012). To establish a claim of negligent undertaking, a plaintiff must show that: (1) a defendant undertook to perform services that it should have known were necessary for the protection of the plaintiffs; (2) defendant failed to exercise reasonable care in performing those services; (3) plaintiff relied upon defendant's performance; or (4) defendant's performance increased plaintiff's risk of harm. *Kristensen v. United States*, 372 F. Supp. 3d 461, 469 (W.D. Tex. 2019). A plaintiff asserting a breach of fiduciary duty claim must establish a fiduciary relationship. *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App. 2009).

To begin, Defendant contends that Plaintiffs fail to identify a duty that was breached. (*See, e.g.*, Def.'s Moving Br. 42, *B.Y.C.C.*; Def.'s Moving Br. 43, 47, *R.J.P.*) Because the negligence, negligent undertaking, and breach of fiduciary claims all rest on different iterations of the duty a

defendant owes to a plaintiff, the Court starts with the question of whether a duty exists. Whether a defendant owes a duty in the first place requires the court "to balance a number of factors." *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002). "Although the formulation and emphasis var[y] with the facts of each case, three categories of factors have emerged: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations." *Id.* at 34. "The existence of [a] duty is a question of law when all of the essential facts are undisputed, but when the evidence does not conclusively establish the pertinent facts or the reasonable inferences to be drawn therefrom, the question becomes one of fact for the jury." *Helbing v. Hunt*, 402 S.W.3d 699, 703 (Tex. App. 2012) (quoting *Mitchell v. Missouri-Kansas-Texas R. Co.*, 786 S.W.2d 659, 662 (Tex. 1990), *overruled on other grounds by Union Pac. R. Co. v. Williams*, 85 S.W.3d 162 (Tex. 2002)).

The Supreme Court of Texas has recognized "that a duty to use reasonable care may arise when a person undertakes to provide services to another, either gratuitously or for compensation." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *see also* Restatement (Second) of Torts §§ 323, 324A. "Of all the[] factors" relevant to assessing whether an undertaking gives rise to a duty, "foreseeability of the risk is the foremost and dominant consideration." *Davis v. Dallas Cnty., Tex.*, 541 F. Supp. 2d 844, 850 (N.D. Tex. 2008) (*quoting Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). "[A] special relationship may [also] give rise to the duty to aid or protect." *Howell v. City Towing Assocs., Inc.*, 717 S.W.2d 729, 732 (Tex. App. 1986); *Tex. Home Mgmt.*, 89 S.W.3d at 34-36 (mental health facility had "right to control" its residents, which created a "special relationship" giving rise to a duty to supervise them). Similarly, "[a]n informal fiduciary relationship . . . may arise in the context of informal moral, social, domestic, or personal relationships in which one person trusts and relies on another." *Wellogix,*

*Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 544 (S.D. Tex. 2011); *see also D.A.*, 2023 WL 2619167, at *18 (rejecting the Government's argument that the court did not have subject-matter jurisdiction over the plaintiff's breach of fiduciary duty claim).

Here, the essential facts of the child separation cases remain undisputed, and the Court finds that a duty arose when CBP officers took Plaintiffs into custody and assumed control over them. Texas courts have imposed duties of care on individuals and entities that assume custody and control of others. *See, e.g.*, *Applebaum v. Nemon*, 678 S.W.2d 533, 535-36 (Tex. App. 1984) (holding that day care facility's agreement to protect child from harm created a special relationship triggering the duty to render aid to a child who died on playground equipment while in day care's custody); *Helbing*, 402 S.W.3d at 705 (holding that jury could find that defendant college mentors breached a duty of care when they invited plaintiff and others on a hiking trip and purported to give a "safety briefing," thereby "undert[aking] to perform [a service]," before plaintiff was injured). Relying on Texas jurisprudence, federal courts in family separation cases have found a private analog for negligence claims under the FTCA because "[f]ederal immigration officials, like employees at a private facility for the mentally impaired tasked with the care and custody of facility residents, also have a 'special relationship' with detainees in that they are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care." *A.F.P.*, 2022 WL 2704570, at *10 (internal quotation marks omitted). In coming to this conclusion, the *A.F.P.* court relied on *Salazar v. Collins*, 255 S.W.3d 191, 203 (Tex. App. 2008), a case in which the court found that officials and employees who exercise supervisory authority in the state's prisons have a special relationship with incarcerated individuals and, thus, owe a duty of

reasonable care to protect them from reasonably foreseeable harm.[11] So too, here, does the Court find that such a special relationship created a duty.

The Government next contends that there could have been no breach under state law because federal law enforcement officers have no duty to refrain from enforcing federal law, and here, R.J.P. was criminally prosecuted for a misdemeanor charge of illegal entry, and B.Y.C.C. and J.A.L.C. were detained for potential criminal prosecution. (Def.'s Moving Br. 42, *B.Y.C.C.*; Def.'s Moving Br. 42, *R.J.P.*; Def.'s Moving Br. 44, *J.A.L.C.*) As discussed earlier, however, Plaintiffs do not challenge their apprehension, detention, and/or prosecution, but rather, their forcible separation and the Government's denial of information, obstruction of communication, and recklessness with regard to reunification. (*See* Compl. ¶ 22 & n.4., *B.Y.C.C.* (explaining that before the Policy, families would generally be detained together during removal proceedings or released on their recognizance).) The Court, thus, finds this argument unavailing.

The Government additionally argues that Plaintiffs' negligence and negligent undertaking claims fail because Plaintiffs allege no physical injuries, as required under Texas law. (Def.'s Moving Br. 42-43, *B.Y.C.C.*; Def.'s Moving Br. 42-43, *R.J.P.*; Def.'s Moving Br. 44-45, *J.A.L.C.*)

---

[11] The Government points out in reply that the only district court in this Circuit to address the question of duty in the family separation context expressly rejected the existence of a special relationship in these cases based on *Salazar*. (Def.'s Reply Br. 20 (citing *C.D.A.*, 2023 WL 2666064, at *24).) In *C.D.A.*, the Eastern District of Pennsylvania found that *Salazar*, the only case to which the plaintiffs there cited, was inapplicable to the matter at issue because *Salazar* discussed the duty of a prison to reasonably prevent third persons from physically harming incarcerated individuals, whereas the plaintiffs in *C.D.A.* did not claim that any third persons harmed them in detention. After reviewing the facts of *Salazar*, the Court finds that it stands for more than just the prevention of physical harm, but rather, other sorts of harm as well—like the emotional distress alleged here. And, as mentioned, at least one other federal district court applying Texas law has similarly relied upon *Salazar* to find a special relationship between similarly situated plaintiffs and the Government. *A.F.P.*, 2022 WL 2704570, at *10. In any event, Plaintiffs here rely on additional theories to demonstrate the requisite duty. (*See* Pls.' Opp'n Br. 78 (citing *Applebaum*, 678 S.W.2d at 535-36; *Helbing*, 402 S.W.3d at 701).)

Texas allows "mental anguish damages" for negligence-based claims where (1) "they are the foreseeable result of a breach of duty arising from some special relationship," or (2) they involve "injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *Fitzpatrick v. Copeland*, 80 S.W.3d 297, 303 (Tex. App. 2002).

The Court rejects the Government's argument. The Government primarily relies upon *Villafuerte v. United States*, No. 16-619, 2017 WL 8793751 (S.D. Tex. Oct. 11, 2017), to support its argument that Texas law requires physical injury to sustain a negligence and negligent undertaking claim. (*See, e.g.*, Def.'s Moving Br. 42-43, *B.Y.C.C.*) That case recites the black letter law in Texas foreclosing recovery for emotional damages unless there is a valid basis, "such as when there is a special relationship between the parties." *Villafuerte*, 2017 WL 8793751, at *11. The court there found that there was no special relationship exception because the plaintiff did not allege that she was harmed by a third person or that Texas law recognizes a duty under the circumstances. *See id.* at *12. Here, as mentioned, Plaintiffs sufficiently allege facts supporting the existence of a special relationship. (*See* Compl. ¶¶ 222, 229, 236, *B.Y.C.C.*; Compl. ¶¶ 244, 251, 258, *R.J.P.*; Compl. ¶¶ 222-23, *J.A.L.C.*) And Plaintiffs' claims involve "injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *City of Tyler v. Likes*, 962 S.W.2d 489, 495-96 (Tex. 1997) (explaining that mental anguish damages may be recoverable absent physical injury when mental anguish is the foreseeable result of a breach of duty arising out of certain special relationships); *see D.A.*, 2023 WL 2619167, at *9. In any event, Plaintiffs allege facts demonstrating how the separation led to their suffering of physical harm. (*See, e.g.*, Compl. ¶¶ 96 n.115, 101-32, 144-58, *B.Y.C.C.*; Compl. ¶¶ 155-56, 159-62, *R.J.P.*; Compl. ¶¶ 88-96, 102, 112, 133-36, *J.A.L.C.*)

The Court, thus, finds that Plaintiffs have sufficiently pleaded claims for negligence, negligent undertaking, and breach of fiduciary duty.

### c.      Negligent Supervision

Defendant moves to dismiss the negligent supervision claims brought by *B.Y.C.C.* Plaintiffs and *R.J.P.* Plaintiffs. (Def.'s Moving Br. 43, *B.Y.C.C.*; Def.'s Moving Br. 43, *R.J.P.*) The tort of negligent supervision imposes liability if: (1) an employer had a duty to supervise competent employees; (2) the employer breached that duty; and (3) the breach proximately caused the plaintiffs' injuries. *THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 573 (Tex. App. 2010). The plaintiff must also establish that the employee committed an actionable tort against the plaintiff. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 800 n.2 (Tex. 2010). The duty requirement for negligent supervision mirrors that for a negligence claim. *Holcombe v. United States*, 388 F. Supp. 3d 777, 806 (W.D. Tex. 2019), No. 18-555, 2021 WL 67217, at *19 (W.D. Tex. Jan. 6, 2021).

The Court begins with the Government's argument that *B.Y.C.C.* Plaintiffs' and *R.J.P.* Plaintiffs' negligent supervision claims should be dismissed because the pleadings fall short of alleging Defendant's precise supervisory failures. (Def.'s Moving Br. 47, *BY.C.C.* Def.'s Moving Br. 45, *R.J.P.*) As for this point, the Court agrees in part. The Complaints in *B.Y.C.C.* and *R.J.P.* center on the fact that the separation of the parents and children was ordered—that is, that the Government ordered officials to follow the Policy, which officials duly executed. *B.Y.C.C.* Plaintiffs and *R.J.P.* Plaintiffs only allege in a conclusory fashion that the United States "negligently supervised" its employees because it "knew or should have known" that its failure to "appropriately" do so "would likely result in harm." (*See, e.g.*, Compl. ¶ 226, *B.Y.C.C.*) Other than the "cause of action" section of the two Complaints, there are no allegations concerning any federal

employee's negligent supervision of subordinate employees. (*See generally* Compl., *R.J.P.*; Compl., *B.Y.C.C.*) Indeed, in response to Defendant's argument in moving to dismiss, Plaintiffs do not cite to specific examples of negligent supervision within the Complaints, but rather, contend generally that "[d]etails regarding Defendant's breaches can be known only after discovery is underway." (Pls.' Opp'n Br. 83.) The Court, thus, finds dismissal of the negligent supervision claims warranted to the extent they rely upon the theory that the Government was generally negligent in allowing families to be separated; the Court, however, allows the claims to remain to the extent they are based on the assault and battery claims detailed below. *See K.O.*, 2023 WL 131411, at *12 (bifurcating the negligent supervision claim in this way on a motion to dismiss).

### d.    Child Abduction and Tortious Interference with the Parent-Child Relationship

Next, Defendant moves to dismiss the tortious interference with the parent-child relationship claims brought by *B.Y.C.C.* Plaintiffs and *R.J.P.* Plaintiffs (Def.'s Moving Br. 47, *B.Y.C.C.*; Def.'s Moving Br. 47, *R.J.P.*) and the child abduction claim brought by *J.A.L.C.* Plaintiffs (Def.'s Moving Br. 47, *J.A.L.C.*). Defendant's sole argument is that Texas law does not recognize a cause of action for tortious interference with the parent-child relationship or child abduction. (*See, e.g.*, Def.'s Moving Br. 48, *B.Y.C.C.*; Def.'s Moving Br. 48, *J.A.L.C.*)

The Government is correct that Texas does not recognize a general "tortious interference with familial relationships" cause of action. *Hardy v. Mitchell*, 195 S.W.3d 862, 864 (Tex. App. 2006); *see also Helena Lab'ys Corp. v. Snyder*, 886 S.W.2d 767, 768 (Tex. 1994) (declining to recognize a "negligent interference with the familial relationships" cause of action). But, as one court noted in the family separation context, and as Defendant concedes (Def.'s Moving Br. 48 n.16, *B.Y.C.C.*), regardless of the exact terminology of the cause of action, "Texas does recognize a cause of action when children are abducted from their rightful custodian." *K.O.*, 2023 WL

131411, at *11; *see Silcott v. Oglesby*, 721 S.W.2d 290, 292-93 (Tex. 1986). Another district court analyzing a motion to dismiss in a family separation case relied on *Silcott* in finding that "Texas courts recognize a tort cause of action for interruption of the parent-child relationship when someone abducts, entices away, or harbors a parent's minor child." *D.A.*, 2023 WL 2619167, at *10; *see also A.E.S.E.*, 2022 WL 4289930, at *14 (rejecting motion to dismiss where plaintiffs alleged that the Government's forced separation and interference with parent-child relationship supported IIED claim). Here, Plaintiffs plead that CBP officers removed the children from their parents' care and custody without their parents' consent and without legal authority to do so. (*See, e.g.*, Compl. ¶¶ 238-44, *B.Y.C.C.*; Compl. ¶¶ 260-66, *R.J.P.*) Based on these alleged facts, and following the lead of other courts in this context, the Court declines to dismiss Plaintiffs' claims for tortious interference with the parent-child relationship and child abduction under Texas law.

### e.    Abuse of Process

The Government moves to dismiss the abuse of process claims brought by *B.Y.C.C.* Plaintiffs and *J.A.L.C.* Plaintiffs. (Def.'s Moving Br. 49, *B.Y.C.C.*; Def.'s Moving Br. 48, *J.A.L.C.*) Specifically, the Government contends that applicable state law bars *B.Y.C.C.* Plaintiffs' and *J.A.L.C.* Plaintiffs' claims for abuse of process because they do not plead facts sufficient to support the first two elements of such a claim. (Def.'s Moving Br. 49-52, *B.Y.C.C.*)

Under Texas law, "[a]buse of process is the malicious use or misapplication of process in order to accomplish an ulterior purpose." *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App. 2001). To show abuse of process, a plaintiff must allege:

> (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process; and (3) damage resulted to the plaintiff as a result of such illegal act.

*Moore v. Bushman*, 559 S.W.3d 645, 653 (Tex. App. 2018); *D.A.*, 2023 WL 2619167, at *17.

The Court finds that *B.Y.C.C.* Plaintiffs and *J.A.L.C.* Plaintiffs sufficiently allege every element of their abuse of process claims. "An action for abuse of process presupposes an originally valid and regular process, duly and properly issued." *Tandy Corp. v. McGregor*, 527 S.W.2d 246, 249 (Tex. Civ. App. 1975). The term "process" encompasses a broad range of procedures incident to civil and criminal proceedings. *Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex. Civ. App. 1979). Here, the Court finds that the Government's detention of B.Y.C.C. and J.A.L.C. and the institution of removal proceedings against them constitute process. *B.Y.C.C.* Plaintiffs and *J.A.L.C.* Plaintiffs do not contest that the Government had the authority to enforce the immigration process against them in this way. (*See* Pls.' Opp'n Br. 87, 97.) *C.f. C.D.A.*, 2023 WL 2666064, at *25 (dismissing the plaintiffs' abuse of process claim under Texas law because plaintiffs alleged that the Government "*improperly* used . . . . prosecution" (citation omitted)). They do contend, however, that "illegal, improper, or perverted use of the process," *Moore*, 559 S.W.3d at 653, occurred when CBP officers designated M.S.C.C. and L.L.G. as "unaccompanied alien child[ren]," even though the children crossed the border with their parents, who were available to care for them. (Compl. ¶¶ 54-55, 92-99, *B.Y.C.C.*; Compl. ¶¶ 163-64, 235-36, *J.A.L.C.*) This decision "changed the process by which the Government would seek to establish immigration violations, including by subjecting [M.S.C.C. and L.L.G.] to immigration proceedings independent [of their parents' proceedings]." (Pls.' Opp'n Br. 87; *see also, e.g.*, Compl. ¶ 236, *J.A.L.C.* (explaining that officers used the "unaccompanied alien child" ["UAC"] designation to effectuate the separation of J.A.L.C. and L.L.G.).)

Relatedly, *B.Y.C.C.* Plaintiffs and *J.A.L.C.* Plaintiffs sufficiently allege that the Government had an ulterior motive by misusing the UAC designation for the purpose of separating

the parents from their children in these cases to deter other Central American families from seeking humanitarian relief; this deterrence effort was allegedly part of ethnic and racial animus towards this group. (*See, e.g.*, Compl. ¶¶ 29, 39, 40, 55, 60, 63, 64, 182, 189, *B.Y.C.C.*); *See also A.F.P.*, 2022 WL 2704570, at \*10 (upholding abuse of process claim where plaintiffs alleged "defendant maliciously used plaintiff A.F.P[.]'s prosecution for illegal entry as a pretext for separating him from his minor son in pursuit of an ulterior purpose of deterring other asylum seekers from entering the United States"); *D.A.*, 2023 WL 2619167, at \*17 (upholding abuse of process claim where plaintiffs alleged, in part, that parent was taken from her children due to "discriminatory animus toward Central American immigrants"). The Court, accordingly, finds that *B.Y.C.C.* Plaintiffs and *J.A.L.C.* Plaintiffs have adequately pleaded their abuse of process claims.

### f.      Assault and Battery

The Government moves to dismiss the assault and battery claims brought by *B.Y.C.C.* Plaintiffs and *J.A.L.C.* Plaintiffs on the basis that they fail to state a claim under Texas law. (Def.'s Moving Br. 53, *B.Y.C.C.*; Def.'s Moving Br. 52, *J.A.L.C.*) Specifically, the Government contends that it was privileged under Texas law to separate the parents from their children as part of the detention process. (Def.'s Moving Br. 54, *J.A.L.C.*; Def.'s Moving Br. 54-55, *B.Y.C.C.*) The Court disagrees that any such privilege applies here.

In Texas, assault and battery are combined under the offense of "assault." Tex. Penal Code Ann. § 22.01(a) (West 2021); *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014).

> A person commits assault under the Texas Penal Code if the person intentionally, knowingly, or recklessly causes bodily injury to another, intentionally or knowingly threatens another with imminent bodily injury, or intentionally or knowingly causes physical contact when the person knows or should reasonably believe the other will regard such contact as offensive or provocative.

*Culver v. Culver*, 360 S.W.3d 526, 533 (Tex. App. 2011) (citing Tex. Penal Code Ann. § 22.01). The elements for assault are the same in civil and criminal cases. *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). Texas courts recognize that, while the actions when detaining someone "necessarily involve a battery," a claim for battery may not be actionable due to the invocation of privilege, such as Texas law's authorization of force by peace offers. *See Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 741 (S.D. Tex. 2016) (citations omitted).

Here, *B.Y.C.C.* Plaintiffs and *J.A.L.C.* Plaintiffs allege that investigative or law enforcement officers committed assault and battery when they detained the parents and separated them from their children, causing the children injury. (*See* Compl. ¶¶ 251-56, *B.Y.C.C.*; Compl. ¶ 242, *J.A.L.C.*) *J.A.L.C.* Plaintiffs further allege that by "executing cross-gender searches" of L.L.G. and "ripping her away from her father and carrying her off while she screamed" and while J.A.L.C. "begged on his knees to keep her," the "investigative or law enforcement officers" committed assault and battery. (Compl. ¶¶ 83-84, 190, 242-45, *J.A.L.C.*) The Government contends it is entitled to the protections of Texas Penal Code § 9.51(a), which provides that a peace officer "is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest . . . ." (Def.'s Moving Br. 54, *B.Y.C.C.* (citing Tex. Penal Code Ann. § 9.51(a).) But federal agents were not making an arrest when they took M.S.C.C. and L.L.G. from their parents—they were separating families (and searching L.L.G.) when they were already in custody. (Compl. ¶¶ 5, 100-06, 251-56, *B.Y.C.C.*; Compl. ¶¶ 87-92, *J.A.L.C.*) The Court, accordingly, rejects the Government's argument for dismissal of the assault and battery claims.

### g.      Loss of Consortium

The Government contends that the *J.A.L.C.* Plaintiffs' loss of consortium claim must fail because Texas does not recognize such a claim based on purely emotional harm. (Def.'s Moving Br. 55, J.A.L.C.) *J.A.L.C.* Plaintiffs do not rebut this argument; instead, they simply contend that such a claim is permitted under Michigan law. (*See* Pls.' Opp'n Br. 99.) The Court, accordingly, addresses this claim below in its analysis under Michigan law. Should the Court find that *J.A.L.C.* Plaintiffs cannot state a claim under Michigan law, the loss of consortium claim shall be dismissed. *See C.D.A.*, 2023 WL 2666064, at *26 (dismissing loss of consortium claim under Texas law for plaintiffs' failure to allege a serious permanent injury).

In sum, the Court denies the Government's motion to dismiss the Plaintiffs' FTCA claims when analyzed under Texas Law pursuant to Rule 12(b)(6), except for the negligent supervision claims brought by *B.Y.C.C.* Plaintiffs and *R.J.P.* Plaintiffs and the loss of consortium and NIED claims brought by *J.A.L.C.* Plaintiffs. As for the negligent supervision claims, the Court finds dismissal warranted to the extent these claims rely upon the theory that the Government was generally negligent in allowing families to be separated but allows the claims to remain to the extent they are based on the assault and battery claims detailed above. *See K.O.*, 2023 WL 131411, at *12. As for the loss of consortium and NIED claims, the Court will dismiss them entirely should *J.A.L.C.* Plaintiffs fail to state these claims under Michigan law.

### ii.      *Michigan Law*

The Court now turns to an analysis of *J.A.L.C.* Plaintiffs' claims under Michigan law. Because the Court has found that *J.A.L.C.* Plaintiffs could state all but the NIED and loss of consortium claim under Texas law, the Court need only examine these claims under Michigan law. *See C.D.A.*, 2023 WL 2666064, at *21.

36

### a.   NIED

As for the NIED claim, the Government concedes that unlike Texas, Michigan law does recognize such a claim, but "only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbances as a result." (Def.'s Moving Br. 42 n.15, *J.A.L.C.* (quoting *Teadt v. Lutheran Church Mo. Synod*, 603 N.W.2d 816, 823 n.6 (Mich. Ct. App. 1999).) Michigan law recognizes NIED when a parent "witnesses the negligent infliction of injury to his or her child and suffers emotional distress as a consequence." *Wargelin v. Sisters of Mercy Health Corp.*, 385 N.W.2d 732, 734 (Mich. Ct. App. 1986). To plead a prima facie case of NIED, a plaintiff must adequately allege that: (1) "the injury threatened or inflicted on the third person" was serious enough "to cause severe mental disturbance to the plaintiff"; (2) the shock resulted in physical harm; (3) the plaintiff is a member of the immediate family; and (4) the plaintiff was present at the time of the accident. *Id.* at 735 (citation omitted).

Here, the Court finds that *J.A.L.C.* Plaintiffs fail to meet their burden. Simply put, the gravamen of J.A.L.C.'s Complaint is not that emotional distress resulted from witnessing injury to a third person, but rather, that J.A.L.C.'s emotional distress resulted from the separation itself. (*See, e.g.*, Pls.' Opp'n Br. 94 ("The separation seriously harmed [L.L.G.], and the resulting shock to [J.A.L.C.] caused him physical harm . . . .").) Because *J.A.L.C.* Plaintiffs cannot satisfy the elements of the NIED test under Michigan law requiring that J.A.L.C. witnessed injury to L.L.G., and because Texas does not recognize such a claim, the Court dismisses the NIED claim entirely. *See C.D.A.*, 2023 WL 2666064, at *23 (dismissing similar NIED claim under Texas, New Mexico, Illinois, and Pennsylvania law).

### b.    Loss of Consortium

As for the loss of consortium claim, the Government concedes that "[u]nder Michigan law, a child may maintain a loss of consortium cause of action for her 'loss of a parent's society and companionship caused by tortious injury to the parent.'" (Def.'s Moving Br. 55-56 n.23, *J.A.L.C.* (quoting *Berger v. Weber*, 303 N.W.2d 424, 427 (Mich. 1981).) The Government contends, however, that because J.A.L.C. only claims emotional harm, not physical injury, resulting from the separation and detention, L.L.G. cannot sufficiently allege tortious harm as required to state a loss of consortium claim. (*Id.* at 55-56 n.23.) Yet the Government cites no case law in its moving brief for its argument that a loss of consortium claim under Michigan law requires physical injury; similarly, the Government only asserts in a conclusory manner that even assuming J.A.L.C. pled sufficient harm, such a claim must fail under Michigan law because it was not "tortious." (*See id.* ("Even if [J.A.L.C.] had pled a sufficient harm, because any such alleged injury occurred during his legal detention and separation from L.L.G., such an injury was not 'tortious.'").) Here, the Government failed to meet its burden to demonstrate that dismissal is appropriate. And, in any event, J.A.L.C. pleads that the separation caused him physical harm, including persistent "piercing headaches," insomnia, loss of appetite and accompanying weight loss, and extreme fear and anxiety. (Compl. ¶¶ 88-96, 102, 112, 133-36, *J.A.L.C.*) The Court, accordingly, finds that *J.A.L.C.* Plaintiffs sufficiently state a claim for loss of consortium under Michigan law at this stage of the proceedings.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court grants dismissal of the negligent supervision claims brought by *B.Y.C.C.* Plaintiffs and *R.J.P.* Plaintiffs to the extent that they rely upon the theory that the Government was generally negligent in allowing families to be separated; the Court allows

such claims to remain to the extent they are based on the assault and battery claims detailed above.

The Court also grants dismissal of the NIED claim brought by *J.A.L.C.* Plaintiffs. The Court denies

the remainder of the Motions to Dismiss.


/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE