Natalie J. Kraner
(nkraner@lowenstein.com)
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
973-597-2500
*Pro Bono Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| B.Y.C.C., on behalf of herself and on behalf of her minor child, M.S.C.C.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendants. | Civil Action No.<br>3:22-cv-06586-MAS-DEA<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF MINOR'S SETTLEMENT** |

Plaintiffs B.Y.C.C. ("Beatriz"), on her own behalf and on behalf of her minor child M.S.C.C. ("Manuel") (collectively "Plaintiffs"),[1] respectfully request

[1] This Court granted Plaintiff B.Y.C.C.'s motion to proceed under pseudonym by Order dated May 24, 2023. ECF No. 24. Plaintiff M.S.C.C. did not join this motion, as Federal Rule of Civil Procedure 5.2 and Local Rule 5.2(17) already provide that minors shall proceed using their initials.

that the Court approve the settlement of Manuel's claims against the United States of America ("Defendant"). Defendant does not oppose this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs brought this case under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671–2680 ("FTCA"), for the alleged mistreatment of Manuel, a minor, and his mother, Beatriz, while in the custody of the United States in 2018. Plaintiffs allege that they were detained and forcibly and unlawfully separated by Defendant for forty-two days, which caused them significant emotional and physical harm. Compl. ¶¶ 81–158, ECF No. 1. Plaintiffs sought damages for these harms, bringing claims under the FTCA for intentional infliction of emotional distress, negligence, negligent supervision, negligent undertaking, tortious interference with the parent-child relationship, abuse of process, assault and battery, and breach of fiduciary duty. *Id.* ¶¶ 213–262. On August 15, 2023, the Court largely denied Defendant's Motion to Dismiss, allowing Plaintiffs to proceed on all their claims other than their negligent supervision claim insofar as it related to general negligence. *See* Mem. Op. at 31 (preserving claim insofar as it related to alleged assault and battery), ECF No. 29. The Parties then initiated discovery in accordance with the Joint Discovery Plan they submitted to Magistrate Judge Douglas E. Arpert on November 7, 2023.

## I. The Settlement

On February 27, 2024, the Parties participated in a settlement conference with Judge Arpert. *See* ECF No. 45. On April 10, 2024, the Parties reached a settlement in principle. On April 15, 2024, the Court entered a 60-Day Order administratively terminating the action to allow time for the settlement to be consummated. ECF No. 49.

Pursuant to the proposed settlement agreement, Defendant will pay Plaintiffs $300,000 (hereinafter, the "Settlement Amount") in settlement of all claims. Stipulation for Compromise Settlement and Release ("Stipulation of Settlement") ¶ 3, attached as **Ex. A**. Plaintiffs have agreed to the terms, conditions, and requirements of the Stipulation of Settlement. Settlement is now contingent upon: (1) this Court's approval of the minor's portion of the Settlement Amount; (2) final approval of the Stipulation of Settlement by the United States; and (3) this Court's dismissal of the action with prejudice, with each side bearing its own costs, expenses, and fees, and without retaining jurisdiction. Stip. of Settlement ¶ 5.

Plaintiffs request apportionment of the settlement between the two Plaintiffs as follows: Plaintiff Beatriz will receive $200,000, two-thirds of the Settlement Amount, and Plaintiff Manuel, now nine years old, will receive $100,000, one-third of the Settlement Amount. Plaintiffs' attorneys in this matter represent

Plaintiffs pro bono and will not take payment or recoup any costs from the Settlement Amount.

Consistent with New Jersey law, the minor's portion of the Settlement Amount will be deposited in a Surrogate's Intermingled Trust Fund ("SITF") administered by the Surrogate's Office in Ocean County, New Jersey, where Plaintiffs reside. The Surrogate's Office will release the settlement proceeds in their entirety to Manuel when he reaches eighteen years of age.

## II. The "Friendly" Hearing

Plaintiffs ask this Court to conduct a reasonableness or "friendly" hearing to approve Manuel's settlement. In New Jersey, "[a]ll proceedings to enter a judgment to consummate a settlement in matters involving minors and mentally incapacitated persons shall be heard by the court without a jury." N.J. Ct. R. 4:44-3. Although Rule 4:44-3 is a state court rule, the District of New Jersey routinely follows it, requiring friendly hearings when a minor plaintiff settles claims in federal court. *See Reo v. U.S. Postal Serv.*, 98 F.3d 73, 76, 78 (3d Cir. 1996) (noting that "[c]ourts uniformly look to state law to determine the validity of settlements entered between the government and the claimant" and holding that a minor's administrative settlement under the FTCA was not final because it was never "judicially approved"); *M.K. ex rel. O.K. v. New Jersey*, No. 19-9506 (LDW), 2020 WL 2319313, at *1 (D.N.J. May 8, 2020) (citing Rule 4:44-3 and

noting that a friendly hearing was "necessary" because the plaintiff was a minor); *A.S. v. Harrison Twp. Bd. of Educ.*, No. 14-147 (NLH/KMW), 2017 WL 1362025, at *1 (D.N.J. Apr. 12, 2017) (conducting a friendly hearing to approve a minor's settlement); *Parker v. Gen. Elec. Co.*, No. 96-3774 (HAA), 2006 WL 2772556, at *3 (D.N.J. Sept. 25, 2006) (same).

Accordingly, Plaintiffs request that this Court conduct a friendly hearing pursuant to Rule 4:44-3 to approve Manuel's settlement.

## III. The Proposed Settlement Is Fair and Reasonable.

During the friendly hearing, the court must "determine whether the settlement is fair and reasonable as to its amount and terms." N.J. Ct. R. 4:44-3. The court must first decide "whether the proffered settlement is commensurate with the settling defendant's liability and, if so, whether it adequately compensates the infant for his past, present and future losses attributable to that defendant." *Impink ex rel. Baldi v. Reynes*, 396 N.J. Super. 553, 562 (App. Div. 2007) (quoting *Riemer v. St. Clare's Riverside Med. Ctr.*, 300 N.J. Super. 101, 111 (App. Div. 1997)). Next, the court must determine whether the proposed settlement is fair and reasonable. *Impink*, 396 N.J. Super. at 562. This second inquiry is broader than the first, requiring the judge to consider future implications that a settlement may have for the minor, such as the existence of unfiled claims that might be precluded by the entire controversy doctrine. *Riemer*, 300 N.J. Super. at 111–12.

Here, the proposed settlement and its allocation are fair and reasonable because they reflect Plaintiffs' wishes, otherwise serve Manuel's best interests, and ensure that Manuel's proceeds will be held securely for him until he reaches the age of majority.

To ensure full consideration of the reasonableness of the proposed settlement and its allocation, Plaintiffs sought the appointment of the Young Center for Immigrant Children's Rights ("Young Center"), the organization authorized by the Office of Refugee Resettlement in the U.S. Department of Health and Human Services, to serve as the federally-appointed independent Child Advocate for vulnerable unaccompanied children, in accordance with the William Wilberforce Trafficking Victims Protection Reauthorization Act, 8 U.S.C. § 1232(c)(6)(A). The Young Center agreed to serve as Child Advocate for Manuel to advise the Court on his best interests regarding the settlement. The Young Center Report concludes that the settlement is in Manuel's best interests. *See generally* Young Center Rep. ("YC Rep.") at 9, attached as **Ex. B**.

### A. The Proposed Division of the Settlement Reflects Plaintiffs' Wishes.

Plaintiffs' wishes regarding division of the Settlement Amount have primary importance in this case despite Manuel's minority. New Jersey's Model Rules of Professional Conduct require that counsel "as far as reasonably possible, maintain a normal client-lawyer relationship," even when their client's capacity to make

decisions with respect to their case may be "diminished . . . because of minority." N.J. RPC 1.14(a). When an aggregate settlement is at issue, an attorney representing two or more clients must disclose the terms of the settlement to each client, and each client must independently agree to the terms of the settlement. *See Tax Auth., Inc. v. Jackson Hewitt, Inc.*, 187 N.J. 4, 21 (2006) (citing N.J. RPC 1.8(g)).

The allocation proposed here—two-thirds to Beatriz, one-third to Manuel—reflects the division that Plaintiffs independently agreed upon after discussing the matter with their attorneys. Counsel met with each Plaintiff independently numerous times to discuss the settlement. With regard to Manuel, counsel used a variety of methods to ensure that he could participate meaningfully in these conversations. For example, counsel mounted cutout images of the parties with an interest in the settlement, including Manuel, Beatriz, and the U.S. Department of Treasury, which counsel explained will collect taxes on the Settlement Amount. Counsel then asked Manuel to demonstrate what he thought would be a fair allocation by dividing up a pile of beans, with roughly a quarter going to the U.S. Treasury and the remainder for Manuel to divide between himself and his mother. Manuel gave his mother more than he took for himself, explaining that his mother has to support herself and him. He also indicated that Beatriz would need more

money so that she could buy a house for the two of them so that they would not have to move so often.

Manuel's expressed wishes are equally important in the Child Advocate's assessment of his best interests. The Young Center report notes that, as Child Advocate, it has a duty to "[z]ealously advocate for and ensure that children's express wishes are communicated to the court and decision makers." YC Rep. at 7 (alteration in original) (citing Subcomm. on Best Ints., Interagency Working Grp. on Unaccompanied and Separated Child., *Framework for Considering the Best Interests of Unaccompanied Children* 5 (2016)[2]). As in his meetings with counsel,

> Manuel expressly stated to the Child Advocate that he wishes to accept the proposed settlement agreement. He understands the purpose of the payment, specifically the division of the payment into a two-third payment to Beatriz and one-third to him personally. Manuel is looking forward to both receiving the funds but also closing this chapter in the family's life.

YC Rep. at 7.

Plaintiffs' decisions to split the settlement proceeds as described above are the result of thoughtful consideration. When deciding on the allocation, Beatriz emphasized her obligation to continue to provide for Manuel. The Young Center

---

[2] Available at https://static1.squarespace.com/static/597ab5f3bebafb0a625aaf45/t/5c19cb386d2a738d43742361/1545194298896/Best-Interests-Framework.pdf.

observes that "Manuel and his mother are kind and gentle with each other," and "she was clearly responsive to his needs." *Id.* at 3. Beatriz did not want to take too much of the settlement for herself, acknowledging that Manuel deserves to be compensated for the trauma he suffered during their separation. At the same time, she wanted enough to allow her to avoid the significant difficulties she has experienced in recent years keeping Manuel and herself adequately housed, fed, clothed, and educated as they adjust to life in the United States. In particular, she would like to use her portion of the proceeds to place a down payment on a home so that she could provide Manuel with stable housing. As the Young Center remarked, "Manuel's mother is aware and mindful of the need to manage these funds judiciously and to prioritize her son's needs in so doing." *Id.* at 9.

Manuel's decision is a testament to his forethought. Manuel put more beans in his mother's pile because he understands that she has responsibilities he does not yet have. Still, he wanted to understand how and when he could use the proceeds. After his attorneys explained that he would be able to access the funds once he turned eighteen, he immediately asked at what age do people go to college and whether his one-third share would be enough to pay for college. His attorneys explained that he could use the money for college and that the funds would help with the cost, but that they did not know if the funds would cover the full cost because that would depend on what college he chooses to attend. He then asked

whether he could use the money to take art classes because he liked to draw. His attorneys explained that there are no restrictions on how he can use the money; that he did not have to decide right now how he will use the funds; and that only he would be able to access the funds once he turns eighteen. Manuel was pleased and continued to explore different possibilities for his future. Once he understood how much he would receive, and that it would be held for him in a special court account until he turns eighteen, he readily "agree[d] that his mother should receive two-thirds of the funds from the Settlement to do with as she decides is best." *Id.*

Thus, the wishes of both Plaintiffs align to produce an allocation that is fair and reasonable.

**B. The Settlement Is in Manuel's Best Interest in Other Ways as Well.**

In addition to reflecting his wishes—an integral part of the best interests determination, *see id.* at 7–8—the proposed settlement serves Manuel's best interests in other ways. First, the settlement allows Manuel to avoid the potential harm of retraumatization through continuing litigation. Manuel understands that the settlement will end the case, and he will not have to undergo further forensic psychological evaluations or offer testimony about the separation. He does not want to relive the events of 2018 through continuing litigation. The Young Center confirms that "having to repeatedly describe traumatic experiences can be extremely damaging to a child's wellbeing," *id.* at 6, and this is especially so in a

non-therapeutic setting, such as a deposition or courtroom, *see id.* In contrast, the settlement offers some closure, "indicat[ing] to Manuel and his mother that their pain and suffering are acknowledged, although not absolved nor justified." *Id.* at 5.

Second, the settlement offers "at least some level of financial stability" that may enable Manuel and Beatriz "to accomplish other life goals without the barrier of struggling to meet the most basic of needs." *Id.* The settlement may help reduce the "stress caused by living under impoverished conditions" and allow Manuel and Beatriz to focus on the unfinished business of "healing and recovery." *Id.* This work is especially important to them because Manuel's "journey to overcome the trauma of separation continues." *Id.* "While Manuel is now showing fewer signs of anger and fear of abandonment . . . mother and son are still learning how to communicate with each other and process their trauma together." *Id.* With the settlement, "the family unit is more likely to have the mental and emotional bandwidth to continue on a pathway of healing." *Id.* at 8.

Third, the settlement reflects Beatriz's wishes for herself and Manuel, and "[i]t ultimately serves the wellbeing of children for their parents to be resourced and empowered to care for their children." *Id.* Having "nurtured her son through an extraordinary ordeal," Beatriz has "demonstrat[ed] her ability to act in Manuel's best interests." *Id.* For his part, Manuel wants his mother to be able to support

herself and him. He "openly acknowledges the support he receives from his mother. He understands that his mother has a duty to care for and provide for him now and in the future." *Id.* at 9.

### C. Manuel's Settlement Proceeds Will Be Safeguarded for Him.

In New Jersey, when a minor obtains settlement proceeds in excess of $5,000, N.J. Court Rule 4:48A(a) requires that the minor's settlement proceeds be deposited in court, unless the court orders a different disposition of the funds.

> In the event of a judgment for a minor after trial or settlement, the court shall dispense with the giving of a bond and, except as otherwise ordered by the court, shall direct the proceeds of the judgment . . . if it exceeds [$5,000] . . . to be deposited in court pursuant to N.J.S.A. 3B:15-16 and 17. A copy of the order directing deposit of the proceeds shall be furnished by the court to the surrogate on its entry.

N.J. Ct. R. 4:48A(a). The county surrogate oversees a minor's funds deposited in court. *See generally* N.J. Stat. Ann. §§ 3B:15-16 to -17.

On application of a guardian or a person entitled to be appointed as a guardian, the state court may direct that a minor's settlement proceeds be deposited in an interest-bearing account, such as a SITF(or a Surrogate's Intermingled Minor's Account ("SIMA")).[3] *See* N.J. Stat. Ann. § 3B:15-16. This is the preferred method of safeguarding a minor's funds in this State. *See* Report of the

[3] The terms "SITF" and "SIMA" are used interchangeably in this State.

Supreme Court's Special Committee on Minors' Funds, 123 N.J.L.J. 1525, 1527 (1989) (concluding that there should be no change "in the emphasis or preference" of placing minors' funds in SITF/SIMAs over other available statutory alternatives).

The Chancery Division, Probate Part, has broad authority over a minor's estate: "[T]he court retains a great deal of oversight and control as to how the guardians proceed" and stands as "the final arbiter in these matters." *In re Mason*, 305 N.J. Super. 120, 129 (Ch. Div. 1997); *see also* N.J. Stat. Ann. § 3B:12-36 ("[I]f a guardian has been appointed to the estate of a minor or an incapacitated person, the court shall have authority over the ward's estate, and all matters relating thereto."). Withdrawals are typically granted sparingly and in limited circumstances. *See generally* N.J. Stat. Ann. §§ 3B:12-43 to -47 (providing examples of permissible withdrawals from a minors' funds, including factors a court must evaluate before granting a withdrawal application).

Should this Court approve Manuel's settlement, Plaintiffs are prepared to present this Court's order to the Ocean County Surrogate's Office to set up Manuel's SITF/SIMA account. Beatriz plans to file the necessary accompanying petition for appointment as guardian over Manuel's property. Counsel advised Plaintiffs regarding the requirements and limitations of guardianship. The Plaintiffs are aware that Manuel's settlement funds will be placed in an interest-

bearing account under the supervision of the Ocean County Surrogate. Plaintiffs understand that any requests to withdraw funds from Manuel's SITF/SIMA account are contingent upon approval of the Chancery Division judge. Plaintiffs also understand that such requests are granted sparingly and in limited circumstances.

Placing Manuel's funds into a SITF/SIMA not only ensures appropriate statutory protection for his assets but also aligns with Plaintiffs' wishes. Both Beatriz and Manuel want to ensure that his portion of the Settlement Amount is reserved for his use when he turns eighteen. At that age, "Manuel will be more capable of making life decisions" and better prepared to "decide how best to apportion these funds to advance his educational and/or career goals." YC Rep. at 9.

**Conclusion**

Plaintiffs ask the Court to enter the proposed Order submitted with this Motion:

1) Approving settlement of this action in accordance with the terms set out in the attached Stipulation of Settlement;

2) Approving the allocation of two-thirds of the Settlement Amount ($200,000) to Plaintiff B.Y.C.C. and one-third ($100,000) to minor Plaintiff M.S.C.C.; and

3) Approving the placement of the minor's share of the settlement into the Ocean County Surrogate's Intermingled Trust Fund.

Plaintiffs' counsel will work with Plaintiffs and the Ocean County Surrogate's Court on the execution of all necessary paperwork to effectuate the transfer of the minor's settlement share into the Ocean County Surrogate's Intermingled Trust Fund.

June 7, 2024

Respectfully submitted,

/s/ *Natalie J. Kraner*

Natalie J. Kraner
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, NJ 07068
nkraner@lowenstein.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2024, I caused the Plaintiffs' Motion for Approval of Minor's Settlement and its exhibits to be electronically filed with the Clerk's Office using the CM/ECF System, resulting in a Notice of Electronic Filing to the following CM/ECF registrants:

John F. Basiak, Jr.
Angela E. Juneau
Samantha R. D'Aversa
David W. Inkeles
Assistant United States Attorneys
*Attorneys for the United States*

/s/ *Natalie J. Kraner*
Natalie Kraner