# EXHIBIT B

YOUNG CENTER FOR IMMIGRANT CHILDREN'S RIGHTS

www.theyoungcenter.org
Chicago, IL | Harlingen, TX | Houston, TX | Los Angeles, CA
New York, NY | Phoenix, AZ | San Antonio, TX | Washington, DC

*Via Electronic Filing*

May 29, 2024

Honorable Michael A. Shipp
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, NJ 08608

**RE: Federally Appointed Child Advocate's Best Interests Determination in Support of Settlement Agreement in MSCC's Federal Tort Claims Act Claim**

Dear Judge Shipp,

The Young Center for Immigrant Children's Rights ("Young Center") is the only organization authorized by the Office of Refugee Resettlement ("ORR")—an office of the Administration for Children & Families under the U.S. Department of Health and Human Services ("HHS")—to serve as the federally appointed independent Child Advocate for trafficking victims and other vulnerable unaccompanied children in federal government custody. In that role, the Young Center advocates for the best interests of the child, akin to guardian ad litem, pursuant to the Convention on the Rights of the Child ("CRC") and federal and state law. Since 2004, ORR has appointed Young Center Child Advocates for thousands of separated and unaccompanied children in ORR custody. In that capacity, the Young Center has developed best interests determinations regarding the children's custody, detention, release, legal representation, relief from removal and safe repatriation. From fall 2017 through fall 2018, the Young Center was appointed as Child Advocate for hundreds of children separated from their parents at the U.S.-Mexico border before and during the family separation policy.

MSCC ("Manuel") traveled to the United States with his mother ("BYCC" or "Beatriz") in the spring of 2018. On May 28, 2018, U.S. Customs and Border Protection ("CBP") officials apprehended them, detained them for a day or two with limited food and water, and then separated Manuel from his mother (without any warning) pursuant to the family separation policy. CBP then transferred Manuel to the custody of ORR. Manuel remained separated from his mother for forty-two days, during which time they were not able to communicate because telephone calls were the only means of communication made available to the family and Manuel. Given Manuel's speech delay, he was unable to converse with his mother via telephone calls.

Manuel and his mother have agreed to enter into a Settlement Agreement ("the Settlement") of a Federal Tort Claims Act claim. On March 29, 2024, ORR appointed the Young Center to serve as Child Advocate to Manuel pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA").[1] The Young Center has determined that the agreed-upon

[1] 8 U.S.C.A. § 1232(c)(6)(A).

Settlement is in Manuel's best interests, including his wellbeing, expressed wishes, health, and development. The Settlement honors Manuel's expressed wishes to receive closure in this matter, avoids Manuel's potential re-traumatization in a future trial, and supports Beatriz's parental rights to care and provide for her son now and in the future.

## I. PERSONAL HISTORY:[2] Three-year-old Manuel and His Mother Came to the United States in Search of Safety Only To Be Violently and Abruptly Separated at the Border by the U.S. Government, a Separation That Impacted Manuel's Wellbeing and Lasted Forty-two Days.

Manuel is a nine-year-old boy who was born on October 6, 2014, in Ahuachapán, El Salvador. In the spring of 2018, when Manuel was only three, Manuel and his mother, Beatriz, left their home country in search of safety and made the journey to this country.

On May 28, 2018, Beatriz and Manuel presented themselves at an authorized entry point at the southern border, where they sought entry into the United States as potential asylees. CBP took them into custody and held them at the Rio Grande City Port of Entry for two days while it initiated the process of separating mother and son, pursuant to the family separation policy. Two days later, Manuel was forcibly removed from his mother, without any notice or process. Manuel was flown thousands of miles away to the Abbott House shelter in New York City, and Beatriz was taken to a detention facility in Texas operated by Immigration and Customs Enforcement ("ICE").

At the time, program staff reported that "Manuel has trouble adapting to the program, is scared of everyone who comes near him, cries continuously . . . has signs of distress . . . and tantrums." The clinician at Abbott House wrote that Manuel had "a laid-back personality and a quiet disposition . . . but asked repeatedly for his mother." This staff noted that Manuel in the future will likely be "more vulnerable to stress and trauma, depression and anxiety" due to the separation from his mother. During Manuel's forty-two days in ORR custody, Abbott House staff confirmed with his family that Manuel and his mom received threats in El Salvador. They also learned that Beatriz did not want Manuel to be released to anyone but her, even if she were ultimately deported back to El Salvador.

On June 26, 2018, the *Ms. L.* court ordered the Government to reunite all separated parents and children under the age of five by July 10, 2018.[3] On July 9, 2018, DNA testing confirmed the parent-child relationship between Manuel and his mother, who was still detained at an ICE facility

---

[2] To develop this Personal History, Young Center staff gathered information from various stakeholders, including Manuel, his mother and his attorneys, as well as from a review of his ORR file.

[3] *Ms. L. v. U.S. Immigr. and Customs Enf't*, 310 F. Supp. 3d 1133, 1149 (S.D. Cal. 2018).

in Texas. Pursuant to the injunction issued in the *Ms. L v. ICE* litigation, Beatriz was released on parole and flown to New York to be reunified with Manuel.

On July 11, 2018, Manuel was released to his mother and the two traveled to New Jersey to live with family members. Manuel continues to live with his mother to this day, along with his aunt and two of the aunt's older children. Manuel attends public school and is in the fourth grade, where he enjoys art and outdoor play.

## II. CHILD ADVOCATE ASSESSMENT: Despite the Trauma of Being Separated at a Young Age, Manuel Is a Resilient, Thoughtful Child Who Cares Deeply For His Family.

The Young Center aims to build trust and rapport with the children they are serving to learn their story, their wishes, and inform any best interests advocacy on their behalf. Child Advocates do not approach the children with a list of questions or an agenda. Their primary aim is to create a child-led space. During their visits with children, Child Advocates inquire about the children's interests and then offer to play games, make crafts, or engage in activities that speak to their interests.

Manuel's Child Advocate has observed that his home is small and located in a remote area. We also observed that Manuel and his mother are kind and gentle with each other. Manuel comfortably seeks the support and validation of his mother, and she was clearly responsive to his needs.

Manuel appeared calm during his interactions with the Child Advocate. Manuel and the Child Advocate have spent time drawing, and Manuel happily engaged in this activity. He was proud of some previous artwork he had done and how his work came out. Manuel confirmed to the Child Advocate that he is sleeping well and does not currently have nightmares. His friends from school are close by, but he does not spend much time with them. Manuel said he does not enjoy school that much but does love gym class. Manuel is soft-spoken and somewhat timid but also seemed thoughtful. Despite undergoing a perilous journey to the United States and being subjected to a traumatic separation from his mother upon arrival in the United States, Manuel is caring towards others and has a warm demeanor.

Manuel understands a monetary payment will be made by the United States Government in response to the FTCA claims as an acknowledgement of the emotional harm that he and Beatriz suffered when they were separated in 2018. Manuel also confirmed that he understands that part of the funds coming from the Settlement would be for him and that he would have to wait until he is eighteen years old to use it. Manuel mentioned that housing is a concern for his future, but he had trouble talking about his desires as far as what he would like to do when he is older. He did mention his family back in home country and how he would like to someday return there to see his grandparents and other family members he left behind. He mentioned missing them very much.

## III. BEST INTERESTS DETERMINATION: The Settlement Agreement Upholds Manuel's Wellbeing, His Expressed Wishes, Health, and Development.

As Manuel's Child Advocate, we are charged with determining a course of action that will safeguard his best interests. The Young Center grounds its best interests advocacy in state, federal and international law. We draw upon the United Nations Convention on the Rights of the Child (CRC) and its proclamation that "[i]n all actions concerning children, . . . the best interests of the child shall be a primary consideration."[4] The Interagency Working Group on Unaccompanied Children's 2016 *Framework for Considering the Best Interests of Unaccompanied Children* ("*Framework*") lists the best interests factors as safety and wellbeing, child's expressed interests, health, family integrity, liberty, development, and identity.[5] Young Center's best interests paradigm builds its advocacy upon these guiding principles centering on the child's wishes and safety.

Manuel and his mother, through their FTCA claim, have been seeking a remedy for the wrong the federal government inflicted upon them six years ago. They, with the support of their attorneys, have reviewed and signed the Settlement Agreement. Manuel and his mother have determined that they wish to move forward by focusing on their healing and wellbeing. With their express wishes in mind, the Young Center has thus determined that the Settlement Agreement awarding $300,000 to Manuel and his family is in Manuel's best interests, including the division of the funds whereby two-thirds is allocated to Beatriz and one-third to Manuel himself.

### A. The Settlement Is in Manuel's Best Interests Because It Provides Closure and Avoids Manuel's Potential Retraumatization in Future Litigation.

Young Center has determined that the Settlement is in Manuel's best interests because it would provide closure for Manuel and his mother and would prevent Manuel from being subjected to the potential trauma of having to participate in a future trial.

---

[4] Convention on the Rights of the Child, art. 3, Nov. 20, 1989, 1577 U.N.T.S. 3 [hereinafter CRC]. Though the United States has not yet ratified the CRC, the U.S. Supreme Court has recognized its near universal acceptance and persuasive authority. *See Roper v. Simmons*, 543 U.S. 551, 578 (2005) ("The opinion of the world community, while not controlling . . . does provide respected and significant confirmation."). Moreover, as a signatory to the CRC, the U.S. government may not act in contravention of the principles articulated in the CRC. Refugee, Asylum, and Int'l Operations Dir., U.S. Citizenship & Immigration Serv., U.S. Dep't of Homeland Sec., RAIO Combined Training Program: Children's Claims 13 (2019) ("[H]aving signed the CRC, the United States is obliged under international treaty to refrain from acts which would defeat the object and purpose of the Convention.").

[5] Subcomm. on Best Interests, Interagency Working Grp. on Unaccompanied and Separated Children, *Framework for Considering the Best Interests of Unaccompanied Children* 5 (2016), https://static1.squarespace.com/static/597ab5f3bebafb0a625aaf45/t/5c19cb386d2a738d43742361/1545194298896/Best-Interests-Framework.pdf.

**i. The Settlement Offers an Acknowledgement of Manuel and His Mother's Pain and Suffering and an Opportunity for Them To Finally Focus on Healing and Recovery.**

Experts on pediatrics, psychology, and trauma have recognized that early mother-child separation not only has immediate negative effects but could also "result in distress for a young child who lacks the cognitive abilities to understand the continuity of maternal availability."[6] Manuel demonstrated the immediate effects of the separation during his stay in ORR custody, and his distress continued after the reunification. When Manuel was first reunited with his mother, he exhibited anger at her for leaving him alone. Manuel would become distressed by any separation from Beatriz in the months and years that followed, often begging his mother not to leave the home. While Manuel is now showing fewer signs of anger and fear of abandonment, his journey to overcome the trauma of separation continues. He still has intrusive thoughts about the separation, and mother and son are still learning how to communicate with each other and process their trauma together.

A payment by the government indicates to Manuel and his mother that their pain and suffering is acknowledged, although not absolved nor justified. Manuel and his family can continue their lives without constantly needing to revisit the extremely difficult experiences they endured after being abruptly separated six years ago in 2018.

Moreover, the Settlement payment provides Manuel and his mother with at least some level of financial stability that may allow them to accomplish other life goals without the barrier of struggling to meet the most basic of needs. Poverty can impact one's mental health due to stress, lack of resources, and financial struggles.[7] Child poverty can limit a child's access to services, and opportunities, thus affecting their future chances of success.[8] The stress caused by living in impoverished conditions can perpetuate the cycle of poverty into adulthood.[9] The funds received through the Settlement will alleviate some of the family's financial pressure and enable them to focus on their healing and recovery.

---

[6] Kimberly Howard et al., *Early Mother-Child Separation, Parenting, and Child Well-Being in Early Head Start Families*, 13 Attachment & Human Development 5 (2011), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3115616/; *see also* Sara Goudarzi, *Separating Families May Cause Lifelong Health Damage,* June 20, 2018, https://www.scientificamerican.com/article/separating-families-may-cause-lifelong-health-damage/.

[7] Robert Hinajosa, LCSW, *The Impact of Poverty on Mental Health,* Choosing Therapy, October 5, 2023, https://www.choosingtherapy.com/poverty-mental-health

[8] *Id.*

[9] *Id.*

**ii. The Settlement Allows Manuel To Avoid the Harmful Effects of Retraumatization at a Future Trial.**

If a trial were to take place instead of the Settlement, Manuel and his mother might be required to undergo additional psychological evaluations by Government experts, participate in depositions, and/or testify at trial. These experiences could force Manuel to relive the harm he endured while separated from his mother. Indeed, childhood trauma experts believe that participating in litigation and having to repeatedly describe traumatic experiences can be extremely damaging to a child's wellbeing.

Experts at the Center on Child Wellbeing and Trauma have issued guidance on how to avoid retraumatization in children and have stated that:

> Retraumatizing a child may cause them emotional turmoil. In this state, it can be difficult for them to self-regulate. Retraumatization symptoms can manifest in children who are reminded of past traumas. Something as simple as a smell or a tone of voice can take them back to a difficult time in their lives. Sensitive subject matter can also be challenging to navigate without upsetting traumatized children. . . . Retraumatization makes it difficult to stay present and engaged in a healthy way. To learn, heal, and relate to others, children need to stay in the present moment. If they perceive a threat, real or imagined, they may get stuck in a past event.[10]

In addition, research published in the International Journal of Law and Psychiatry examined the experience of children in the courtroom and the challenges that are not typical for most adult witnesses.[11] In particular, the author discusses the concern that that the experience of testifying might re-traumatize child witnesses who are also victims."[12] The author referred to

> a growing body of multidisciplinary research that continues to address the legal and clinical implications of permitting children to testify in open court, particularly with respect to the possibility of exacerbating the trauma and psychological harm the

[10] Center on Child Wellbeing & Trauma, *How to Avoid Retraumatizing Children When Dealing With Sensitive Issues* (2024), https://childwellbeingandtrauma.org/how-to-avoid-retraumatizing-children-when-dealing-with-sensitive-issues/.

[11] Jana Robinson, *The Experience of the Child Witness: Legal and Psychological Issues*, International Journal of Law and Psychiatry Volumes 42–43, 2015, pages 168–76, https://www.sciencedirect.com/science/article/pii/S0160252715001326.

[12] *Id.*

child may have already incurred (Goodman et al., 1992, Martin, 1992, Whitcomb, 2003).[13]

If Manuel and his mother were to go to trial, Manuel would likely have to undergo a forensic evaluation. This, too, can inadvertently retraumatize a child. As the treatment director of an Intensive Residential Treatment Services facility operated by the Minnesota Department of Human Services has stated: "In a forensic setting," he has "to be careful to not put [the client] back into the physiological realm of their traumatic experience . . . [and make] sure they're safe."[14]

Therefore, by shielding Manuel's mental and emotional wellbeing from the potential harmful effects of litigation, the Settlement promotes Manuel's best interests.

**B. The Proposed Division of the Settlement Funds Is in Manuel's Best Interests Because It Aligns with His Expressed Wishes and Upholds Beatriz's Parental Rights To Care and Provide for Her Son.**

Manuel signed the Settlement Agreement willingly and as an expression of his wishes. The Settlement Agreement is also an acknowledgement of Beatriz's right to determine how best to care for her son and distribute the resources available to the family toward their joint wellbeing.

**i. Manuel's Signature of the Settlement Is an Expression of His Wishes and Desire To Close a Deeply Traumatic Chapter in His and His Mother's Life.**

Manuel expressly stated to the Child Advocate that he wishes to accept the proposed settlement agreement. He understands the purpose of the payment, specifically the division of the payment into a two-third payment to Beatriz and one-third to him personally. Manuel is looking forward to both receiving the funds but also closing this chapter in the family's life.

The *Framework* states that it is the strict responsibility of attorneys and advocates of unaccompanied children to "[z]ealously advocate for and ensure that children's express wishes are communicated to the court and decision makers."[15] We interpret this to include separated children in addition to unaccompanied children. Therefore, as Manuel's Child Advocate, it is our duty to communicate Manuel's express agreement with the Settlement.

It is worth noting that the *Ms. L.* class action filed on behalf of separated families does not include monetary compensation or a guarantee of permanent immigration status to its class members—

---

[13] *Id.*

[14] Online MSW Programs/Resources for Social Work Students, *Supporting Survivors of Trauma: How to Avoid Re-Traumatization*, https://www.onlinemswprograms.com/resources/how-to-be-mindful-re-traumatization/.

[15] *Framework, supra* note 5, at 22.

both forms of relief that could offer some stability to an undocumented family recovering from the harm of the family separation policy. [16] At the Young Center, we have seen how many separated families are not able to meaningfully engage in mental health services that might help them heal from the trauma they experienced if, for example, their basic needs (housing, food, clothing) are not met or if they are consumed by the stress of navigating the U.S. immigration system on their own.

Access to additional financial resources serves the children's wellbeing by ensuring those basic needs are met and that they will be able to connect to immigration legal services as they continue to navigate that court system. Therefore, the family unit is more likely to have the mental and emotional bandwidth to continue on a pathway of healing. Moreover, settling the FTCA claim brings an end to a court process which has been pending for years and further enables closure on this chapter—six years after their traumatic separation.

**ii. The Settlement Upholds Beatriz's Parental Rights to Care and Provide for Her Son.**

From the Young Center's observations of the parent-child relationship and their home environment, Beatriz is a loving caregiver who has nurtured her son through an extraordinary ordeal, thereby demonstrating her ability to act in Manuel's best interests. It ultimately serves the wellbeing of children for their parents to be resourced and empowered to care for their children.

Additionally, courts at the federal and state levels have affirmed that parents should be given the right to raise their children as they see fit. This means that the state cannot and should not interfere unless the parent is found to be harmful to the child.[17] The United States Supreme Court has consistently recognized the importance of the family unit and the right of parents to care for their children.[18] Specifically, the Supreme Court has declared that the Due Process Clause of the Fourteenth Amendment "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."[19] Indeed, the fundamental right to care for one's child is "perhaps the oldest of the fundamental liberty interests recognized by [the] Court."[20] This

---

[16] *Ms. L.*, 310 F. Supp. 3d at 1149–50.

[17] The United States Supreme Court and the New Jersey Supreme Court have held that parents have a fundamental constitutional right to raise their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *N.J. Div. of Youth and Family Servs. v. G.L.*, 191 N.J. 596 (2007).

[18] *Santosky v. Kramer*, 455 U.S. 745, 767 (1982) (declaring that a state "registers no gain toward its declared goals when it separates children from the custody of fit parents") (quoting *Stanley v. Illinois*, 405 U.S. 645, 652 (1972)).

[19] *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

[20] *Id.* at 65. Undocumented immigrant parents also enjoy the fundamental right to care for their children— to the same extent as parents who are citizens or lawful immigrants. As the Supreme

fundamental right was affirmed on June 26, 2018 in *Ms. L. v. ICE*, when the United States District Court for the Southern District of California issued a preliminary injunction ordering the federal government to stop all parent-child separations "absent a determination that the parent is unfit or presents a danger to the child."[21]

Manuel openly acknowledges the support he receives from his mother. He understands that his mother has a duty to care for and provide for him now and in the future. He agrees that his mother should receive two-thirds of the funds from the Settlement to do with as she decides is best. It is important to note that Manuel's mother is aware and mindful of the need to manage these funds judiciously and to prioritize her son's needs in so doing.

In addition, the safeguarding of funds for Manuel's future in a trust is also in his best interests, as Manuel will be more capable of making life decisions, and associated financial decisions, as he reaches a more mature age. At eighteen years of age, Manuel will be able to access the portion (one-third) of the settlement allocated for his personal use and can then decide how best to apportion these funds to advance his educational and/or career goals.

## IV. CONCLUSION

Three-year-old Manuel should not have experienced the trauma of being separated from his mother, the adult he relied on for care and protection. Manuel and his mother decided to seek some form of relief that could aid their healing journey. While nothing will undo the harm they've experienced, Manuel and his mother wish to have this court approve the Settlement Agreement. Based on our interactions with Manuel and the information we have gathered, we have determined that the Settlement Agreement is in M's best interests as it centers his wellbeing, expressed wishes, and development.

Please do not hesitate to contact us at (832) 457-1354 or jbeecherbell@theyoungcenter.org with questions or concerns.

---

Court has made clear: "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

[21] *Ms. L.*, 310 F. Supp. 3d at 1149. The Court further ordered the government to reunify all separated children under the age of five within fourteen days and all other separated children within thirty days.

Sincerely,

Jessie Beecher-Bell
TVPRA-Appointed Child Advocate

Sondra Furcajg, Esq.
Deputy Program Director

cc: Natalie J. Kraner, Partner
Legal Director, Lowenstein Center for the Public Interest
Lowenstein Sandler LLP

Olivia Peña, Co-Director
Child Advocate Program
Young Center for Immigrant Children's Rights